**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DIGITAL MEDIA TECHNOLOGY
HOLDINGS, LLC,

        Plaintiff,

   v.

DISNEY MEDIA & ENTERTAINMENT
DISTRIBUTION LLC,

        Defendant.

C.A. No. 22-1642-CJB

<u>**JOINT CLAIM CONSTRUCTION BRIEF
U.S. PATENT NO. 7,574,725**</u>

SMITH KATZENSTEIN JENKINS LLP
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Of Counsel:*

CAREY RODRIGUEZ LLP
John C. Carey
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 372-7474
jcarey@careyrodriguez.com

*Attorneys for Plaintiff*

RICHARDS, LAYTON & FINGER, P.A.
Jason J. Rawnsley
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
rawnsley@rlf.com

*Of Counsel:*

O'MELVENY & MYERS LLP
Xin-Yi Zhou
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
vzhou@omm.com

O'MELVENY & MYERS LLP
Patric Reinbold
1625 Eye Street, NW
Washington, DC  20006
preinbold@omm.com

*Attorneys for Defendant*

Date: August 14, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................... iii

I.   AGREED-UPON CONSTRUCTIONS ......................................................................... 1

II.  DISPUTED CONSTRUCTIONS .................................................................................. 1

    A.   "correlated information"                                                                1

        1.   Plaintiff's Opening Position                                            1

        2.   Defendant's Answering Position                                          5

        3.   Plaintiff's Reply Position                                             10

        4.   Defendant's Sur-Reply Position                                         15

    B.   "said purchasers"                                                                      19

        1.   Plaintiff's Opening Position                                           19

        2.   Defendant's Answering Position                                         22

        3.   Plaintiff's Reply Position                                             26

        4.   Defendant's Sur-Reply Position                                         29

    C.   "said purchasers storing …" / "said purchasers downloading …" / "said purchasers storing …"                                                31

        1.   Plaintiff's Opening Position                                           31

        2.   Defendant's Answering Position                                         34

        3.   Plaintiff's Reply Position                                             39

        4.   Defendant's Sur-Reply Position                                         42

    D.   "wherein the exhibition of multimedia material …"                                      46

        1.   Plaintiff's Opening Position                                           46

        2.   Defendant's Answering Position                                         48

        3.   Plaintiff's Reply Position                                             49

        4.   Defendant's Sur-Reply Position                                         50

    E.   "automatically collecting sales information from exhibitor recipients …"               51

        1.   Plaintiff's Opening Position                                           51

        2.   Defendant's Answering Position                                         54

        3.   Plaintiff's Reply Position                                             59

        4.   Defendant's Sur-Reply Position                                         61

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
    707 F.3d 1318 (Fed. Cir. 2013) ........................................................................... 30, 63

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ............................................................................11, 59

*Astellas Pharma Inc. v. Lupin Ltd.*,
    No. 23-819-JFB-CJB, 2024 WL 1832483 (D. Del. Apr. 19, 2024) ................................ 22, 28

*Bayer AG v. Biovail Corp.*,
    279 F.3d 1340 (Fed. Cir. 2002) ................................................................... passim

*Bd. of Regents of the Univ. of Tex. Sys. V. BENQ Am. Corp.*,
    533 F.3d 1362 (Fed. Cir. 2008) ......................................................................... 24, 30

*Becton, Dickinson & Co. v. Tyco Healthcare Group*,
    616 F.3d 1249 (Fed. Cir. 2010) ......................................................................... 58, 63

*Bose Corp. v. JBL, Inc.*,
    274 F.3d 1354 (Fed. Cir. 2001) ..................................................................... 20, 26, 47

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
    813 F. App'x 522 (Fed. Cir. 2020) ....................................................................... 25

*Cadence Pharmaceuticals, Inc. v. Paddock Laboratories Inc.*,
    886 F.Supp.2d 445 (D. Del. 2012) ................................................................. 20, 26, 47

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) ................................................................... 20, 26, 47

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006) ........................................................................... 49

*Data Engine Techs. LLC v. Google LLC*,
    10 F.4th 1375 (Fed. Cir. 2021) ...........................................................................8, 11, 12

*Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, No. 13- 2108-RGA,
    2015 U.S. Dist. LEXIS 150713, 2015 WL 6870031 (D. Del. Nov. 6, 2015) ....... 22, 27, 41, 44

*Energizer Holdings, Inc. v. International Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006) ................................................................... 20, 26, 47

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) ........................................................................... 32

*Ferring B.V. v. Watson Labs., Inc.-Fla.*,
   764 F.3d 1401 (Fed. Cir. 2014) ................................................................. 61

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .................................................................................... 38

*GPNE Corp. v. Apple Inc.*,
   830 F.3d 1365 (Fed. Cir. 2016) ...........................................................11, 59

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) ................................................................... 52

*Huber Engineered Woods LLC v. Louisiana-Pacific Corp.*,
   No. 19-342-LPS, 2020 WL 5132922 (D. Del. Aug. 31, 2020) ........................ 1, 10

*Impax Labs. Inc. v. Lannett Holdings Inc.*,
   893 F.3d 1372 (Fed. Cir. 2018) ............................................................ 29, 61

*In re Downing*,
   754 F. App'x 988 (Fed. Cir. 2018) ....................................................... 23, 26

*In re Kollar*,
   286 F.3d 1326 (Fed. Cir. 2002) ................................................................. 38

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318, 1324 (Fed. Cir. 2012) ....................................................... 42

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   327 F.3d 1364 (Fed. Cir. 2003) ................................................................. 18

*Ironburg Inventions Ltd. v. Valve Corp.*,
   64 F.4th 1274 (Fed. Cir. 2023) ................................................................. 29

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999) ........................................................... 39, 44

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
   790 F.3d 1298 (Fed. Cir. 2015) ...................................................... 39, 40, 41

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) ................................................................. 52

*Mars Inc. v. H.J. Heinz Co., L.P.*,
   377 F.3d 1369 (Fed. Cir. 2004) ................................................................. 10

*McCarty v. Lehigh Val R. Co.*,
   160 U.S. 110 (1895) .................................................................................. 58

iv

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
  831 F.3d 1350 (Fed. Cir. 2016) ................................................................. 48, 49

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ................................................................................... 22, 26

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ............................................................ 10, 15, 62

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
  457 F.3d 1284 (Fed. Cir. 2006) .................................................................. 49, 50

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................. passim

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  No. 11-902-LPS-CJB, 2012 WL 6044793 (D. Del. Nov. 13, 2012)...................... 35

*Promptu Sys. Corp. v. Comcast Corp.*,
  92 F.4th 1372 (Fed. Cir. 2024) ............................................................................ 34

*Puma Biotechnology, Inc. v. Astrazeneca Pharms. LP*,
  No. 21-CV-1338-MFK, 2023 WL 2683559 (D. Del. Mar. 29, 2023)..................... 58

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
  667 F.Supp.2d 429 (D. Del. 2009) .............................................................. passim

*Summit 6, LLC v. Samsung Electronics Co., Ltd.*,
  802 F.3d 1283 (Fed. Cir. 2015) .................................................................. passim

*TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*,
  No. 21-1126, 2022 WL 17986012 (D. Del. Dec. 29, 2022) ................................... 19

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir.1997) ............................................................... 1, 3, 10

*Vaxcel Int'l Co. v. Heathco LLC*,
  No. 20-224-LPS, 2021 WL 7209508 (D. Del. Nov. 22, 2021) ....................... 22, 27

*Wasica Fin. GmbH v. Cont'l Auto. Sys.*,
  853 F.3d 1272 (Fed. Cir. 2017) .................................................................. 38, 44

**Statutes**

35 U.S.C. § 112 ............................................................................................. 48

**Other Authorities**

MPEP § 2173.05 ............................................................................................. 22

## I.    AGREED-UPON CONSTRUCTIONS

The parties have not agreed on any constructions.

## II.    DISPUTED CONSTRUCTIONS

### A.    "correlated information"

| Disputed Term(s)/Phrase(s) | Pltf.'s Proposed Construction | Dft.'s Proposed Construction |
|---|---|---|
| "correlated information" U.S. Patent No. 7,574,725, Claim 1 | Plain and ordinary meaning.  No construction necessary.  Alternatively, "information comprising associated materials." | "data associated with other data" |

### 1.    Plaintiff's Opening Position

#### (a)    No construction is necessary. Plain and ordinary meaning applies.

This claim term, like the other challenged claim terms in U.S. Patent No. 7,574,725 (the '725 Patent), is easily understood and requires no construction by the Court. *See generally U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.1997)  ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also Huber Engineered Woods LLC v. Louisiana-Pacific Corp.*, No. 19-342-LPS, 2020 WL 5132922, at *3-7 (D. Del. Aug. 31, 2020) (finding no construction necessary for a majority of terms in dispute); *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 667 F.Supp.2d 429, 437-42 (D. Del. 2009) (finding no construction necessary for a number of terms in dispute).

Here, Defendant has not explained why a construction of the ordinary words "correlated information" is necessary. *See Roche* at 441-42 ("More importantly, in the Court's view, [the

parties] have not explained how their proposed construction is necessary to assist one of skill in the art in understanding the claims. Rather, [the parties'] proposed construction appears to be nothing more than an unnecessary paraphrasing of the ordinary word 'determine.'"); *see also Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("'Being provided to' is comprised of commonly used terms; each is used in common parlance and has no special meaning in the art. Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

First, looking at the words themselves, Defendant has provided no evidence that these words are peculiar terms of art to the technology area at issue. The terms "correlated" and "information", as used in the context of Claim 1, are common language words that would be unambiguous to a person of ordinary skill who has read the entirety of the '725 Patent.

Second, looking at the rest of the claim language, Claim 1 provides sufficient guidance to a person of ordinary skill as to the meaning of "correlated information." Claim 1, at step (b), recites the step of "storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format[.]" ('725 Patent[1] at Claim 1.) This step explicitly states that "correlated information" comprises "multimedia material and associated advertising material." (*Id*.) The claim language thus explicitly defines the meaning of "correlated information."

### (b) Defendant's proposed construction is incorrect.

Even if "correlated information" were to benefit from a construction by the Court, Defendant's proposed construction is incorrect.

---

[1] The '725 Patent was attached to the Joint Claim Construction Chart (D.I. 52) and is found in the record at D.I. 52-1, Exhibit 1.

First, looking at the words themselves, Defendant's proposed replacement words "data" and "other data" are not superior to the actual claim term "information," and the proposed replacement word "associated" is not superior to the actual claim term "correlated." The Defendant's proposed construction "data associated with other data" thus appears to offer little if any insight into the meaning of "correlated information," beyond what is already provided by Claim 1 itself, to one of skill in the art in the year 2000. *See Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 667 F.Supp.2d 429, 440 (D. Del. 2009) (finding no construction necessary for the term "capillary flow of blood" because the proposed construction "simply paraphrases [the term] but otherwise offers no insight as to the meaning of this term to one of skill in the art."). In short, Defendant's proposed construction, at best, is nothing more than an exercise in redundancy. *See generally U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.1997).

Second, looking at the Defendant's proposed construction as a whole, "data associated with other data," this construction is in fact misleading.  As addressed *supra*, Claim 1, at step (b), recites the step of "storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format[.]" ('725 Patent at Claim 1.) This step explicitly states that "correlated information" comprises "multimedia material and associated advertising material." (*Id.*)  This is an "A + B = at least C" structure, where "A" is the multimedia material, "B" is associated advertising materials, and "C" is correlated information. Defendant's proposed construction, "data associated with other data," improperly refers to just "A" data (multimedia material) or "B" data (advertising material), i.e., there is no "C" in Defendant's proposed construction.

      **(c)**      **Alternatively, Plaintiff proposes that "correlated information" should be construed as "information comprising associated materials."**

Claim terms must be construed from the perspective of a person of ordinary skill in the art at the time of the effective filing date of the '725 Patent, which is May 2, 2000. *See Phillips v. AWH Corp*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *see also* '725 Patent at 1 (claiming priority to "Provisional application 60/201,118, filed on May 2, 2000.")  Should the Court find that a construction of "correlated information" is necessary, then Plaintiff proposes "information comprising associated materials" because it comports with the structure and actual claim language recited in Claim 1.

First, looking at the proposed terms alone, the terms "information" and "materials," unlike the term "data," are not in dispute and appear throughout Claim 1 and other claims in many contexts that give insight into their meaning: "multimedia material" ('725 Patent at Claim 1); "advertising material" (*id.*); "sales information" (*id.* at claim 11); "licensing information" (*id.* at claim 13(c)); "information necessary to calculate an amount owed by said exhibitor" (*id.* at claim 15(f)); "box office information" (*id.* at claim 21).  The specification also contains numerous references to these items, including:

> "The present invention relates to the marketing and distribution of multimedia material . . . and associated marketing materials . . . ." (*id.* at 1:20-25.)
> "Another problem facing producers and distributors is the high cost of transportation and shipping of the films . . . and marketing and advertising materials associated therewith." (*id.* at 1:54-56.)
>
> "It is noted that in accordance with the invention, the servicing of smaller facilities . . . is particularly cost effective as compared to conventional methods for transporting film and associated promotional materials." (*id.* at 4:24-27.)
>
> "In accordance with present invention, there are a plurality of input paths over which films and associated materials can be transported for storage in media 28." (*id.* at 4:53-55.)

"Such material associated with the title may include the actual film . . . graphics for a newspaper advertisement, a radio spot, a poster, a coming attractions film segment, handbills, or the like." (*id.* at 4:62-65.)

Second, looking at the structure of Claim 1, Plaintiff's proposed construction better comports with the "A+B=C" structure of the term "correlated information" explained *supra*, in that "information" (i.e., the "C") comprises "associated materials" (i.e., the "A" of "multimedia material" and the "B" of "associated advertising material"). Accordingly, if any construction is found to be necessary by the Court, Plaintiff's proposed alternative construction should be adopted.

## 2.    Defendant's Answering Position

### (a)    Introduction

Digital Media Technology Holdings, LLC ("Plaintiff") accuses Disney Media & Entertainment Distribution LLC ("Defendant") of infringing an expired patent: U.S. Patent No. 7,574,725 (the "'725 Patent"). The '725 Patent purports to claim a method of distributing audiovisual media files over a generic computer network and Plaintiff has accused Defendant's internal video hosting system of infringement. To support its theories of infringement, however, Plaintiff interprets the disputed terms inconsistently, sometimes defining them narrowly to support patent validity while later arguing for broad constructions when asserting infringement. For other disputed claim terms, Plaintiff attempts to rewrite the claims or present circular definitions; the ultimate effect is to render the claim language superfluous. For instance, Plaintiff construes the "said purchasers [storing/downloading] …" steps such that they are met by a "server system" without any user action, rendering these steps meaningless. In contrast, Defendant proposes constructions that reflect the terms' correct meaning in the context of the patent disclosure. Because Defendant's proposed constructions and indefiniteness positions are supported by the intrinsic evidence, Defendant respectfully requests that the Court adopt Defendant's constructions.

### (b)    Overview of the '725 Patent

The '725 Patent relates to the marketing and distribution of audiovisual media files—such as files containing movie videos and files containing advertisement videos for the movies—over a generic computer network to theaters and broadcasters. *See* D.I. 52-1 ("'725 Patent) at 1:20-25, Abstract. The patent describes using "an identifier, such as a title of a movie, associated with the material to be entered, converted, and stored on storage media 28" to identify the stored content. *Id.* at 4:59-62.

"Exhibitors, such as theaters and television stations," can use the disclosed method to download and store "multimedia material, such as motion pictures and television programming," and associated "marketing materials for the program or movie." *Id.* at Abstract. "In addition to providing multimedia to users, the server system collects data about the users and information respecting the economics and sales success of exhibitors and broadcasters" by automatically collecting users' sales data in a database. *Id.* at 3:22-25, 15:43-46.

### (c)    Argument

In its opposition to Defendant's Motion to Dismiss, Plaintiff relied on a narrow interpretation of "correlated information" to support the patentability of the asserted claims. Now, however, Plaintiff relies on an expansive interpretation to assert infringement by arguing that the term requires no construction. Plaintiff cannot have it both ways—a claim term must carry the same meaning for both infringement and invalidity. In the context of the '725 Patent, "correlated information" simply means data (e.g., a digitized movie) associated with other data (e.g., digitized advertisements). Thus, the Court should adopt Defendant's construction because it reflects the term's correct meaning in the context of the claims and the specification.

### (i)   Plaintiff Has Already Submitted Conflicting Interpretations Of This Term

Plaintiff identified "correlated information" as an "inventive concept" that allegedly supports the patentability of the '725 Patent. *See* D.I. 26 (Plaintiff's Answering Brief to Motion to Dismiss) at 5-6, 9, 13, 17-18.[2] In response to Defendant's Section 101 Motion (D.I. 22), Plaintiff argued that "claim 1 is directed to a the [sic] concrete application of specific elements of computer hardware **to package** and distribute **a combined product of multimedia material and advertising material, referred to as 'correlated information'** to facilitate the transfer of such information between owner and purchaser." *Id*. at 13 (emphasis added). Plaintiff then attributed the patentability of the '725 Patent to this term, arguing that "claim 1 of the '725 Patent recites at least the inventive concept of using 'correlated information' to identify 'multimedia material' across various physical mediums and distribution platforms." *Id.* at 18. These arguments are not supported by the patent—the specification mentions neither "packaging … a combined product of multimedia material and advertising material" nor using that "combined product" to access media "across various physical mediums and distribution platforms." *See generally* '725 Patent.

Despite its arguments opposing Defendant's motion, Plaintiff relied on a conflicting interpretation of "correlated information" in its Infringement Contentions. *See* D.I. 43, Ex. 1 at 10-23. Plaintiff applied the term broadly to any "motion picture" or "TV show" and its "associated marketing assets." *See id.* at 10. Plaintiff never identified a "combined product of multimedia material and advertising material" in Defendant's accused system that would satisfy its prior definition of the term, nor pointed to any use of "correlated information" to "identify 'multimedia material' across various physical mediums and distribution platforms." *See generally id.* at 10-23.

---

[2] Defendant filed its Motion to Dismiss (D.I. 22) on October 10, 2023, and sought leave to file a supplemental brief (D.I. 42) on April 3, 2024. The Motion is fully briefed and remains pending.

Plaintiff cannot treat this claim term like "a nose of wax" by interpreting it "in one way to avoid invalidity and another to find infringement." *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (internal quotations omitted). In view of Plaintiff's shifting interpretations, Defendant respectfully submits that the Court should construe this term.

**(ii)     Defendant's Construction Is Supported By The Intrinsic Evidence**

The '725 Patent's specification never uses the term "correlated information." However, the claim language, patent specification, and prosecution history all support construing "correlated information" as "data associated with other data."

First, the surrounding claim language demonstrates that "correlated information" refers to data associated with other data. For example, Claim 1 recites "storing said multimedia material and associated advertising material on a computer readable storage medium *as correlated information* in digital format." '725 Patent at Claim Element 1(b) (emphasis added). Thus, the context of Claim 1 describes "correlated information" as "digital format" data for "multimedia material" associated with data for "advertising material." *See id.*

Second, the patent specification also supports Defendant's construction. The '725 Patent describes only one type of "correlated information"—data associated with other data. The alleged invention relates to methods for distributing "film and *associated* promotional materials." *Id.* at 4:25-27 (emphasis added). In one embodiment, the specification describes using the "title of a movie" as an identifier to "*associate[]*" materials such as "the actual film" and "a coming attractions film segment." *Id.* at 4:59-65 (emphasis added). "All of these materials and other types of materials … are digitized and stored in" computer storage—i.e., as data. *Id.* at 5:34-38. "Once rendered and stored digitally on central server 16, audio and visual materials are easily accessible by business-to-business customers around the globe." *Id.* at 6:22-24; *see also id.* at 6:34-38 (using

8

"an analog to digital converter" to digitize content into data); 7:15-19 (storing "digitized movie … with its associated other information … in computer readable storage"). To download these materials, "[t]he server system accesses **data** from the computer readable storage medium for transfer over the communication network to exhibitors." *Id.* at 2:55-57 (emphasis added); *see also id.* at 11:33-37. Thus, "correlated information" in the context of the '725 Patent means data, such as a digitized movie, associated with other data, such as digitized advertisements.

Third, the prosecution history further supports Defendant's construction. Five days before the Notice of Allowance—after examination had substantively concluded—Plaintiff amended Claim 1 by replacing "data" and "digital format" with "correlated information." *See* D.I. 52-2 at 478-80. Although Plaintiff provided no explanation for this amendment, the Examiner did not reconsider the patentability of the claims in light of this amendment. *See id.* at 501-06, 595-97. Thus, the prosecution history indicates that the Examiner considered "information" to be interchangeable with "data" in the context of the alleged invention. *See id.*

Plaintiff raises a confusing strawman argument by contending that Defendant's construction refers to only portions of data associated with other data, but not the data being associated. This is an intentional misreading of Defendant's construction. To be clear, Defendant's construction encompasses the associated data in the collective. Using Plaintiff's example, if Data A is associated with Data B, then "data associated with other data" includes both A and B. While Plaintiff disagrees with construing "information" as "data" for this claim term, it equated "sales **information**" with "sales **data**" for the "automatically collecting …" term of Claim 11. Thus, "correlated information" should be construed as "data associated with other data."

### (iii)    Plaintiff's Alternative Construction Is Circular And Vague

Rather than clarifying claim scope, Plaintiff's alternative construction is circular and injects further ambiguity. Plaintiff defines "information" using the same word, and further suggests that "associated materials" can be one type of "information" but there are other, undefined types of "information." Indeed, by using the word "comprising," Plaintiff's construction leaves the claim scope open-ended and would allow for the inclusion of non-associated materials to be part of "correlated information." *See Mars Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004) ("comprising … is open-ended and does not exclude additional, unrecited elements"). Thus, the Court should adopt Defendant's construction and reject Plaintiff's construction.

### 3.    Plaintiff's Reply Position

#### (a)    Defendant fails to show that any construction is warranted.

Defendant fails to rebut Plaintiff's point that there is "no evidence that these words are peculiar terms of art to the technology area at issue" and that "Claim 1 provides sufficient guidance to a person of ordinary skill as to the meaning" of the term. (Opening Brief §II.A.1.)

Defendant also does not attempt to tackle the cases cited in support of Plaintiff's argument. *See, e.g., Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283 (Fed. Cir. 2015); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir.1997); *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 667 F.Supp.2d 429 (D. Del. 2009); *Huber Engineered Woods LLC v. Louisiana-Pacific Corp.*, No. 19-342-LPS, 2020 WL 5132922 (D. Del. Aug. 31, 2020).

Finally, Defendant fails to point to any intrinsic evidence to demonstrate that construction is even necessary. In other words, Defendant does not explain why this Court is obligated, under *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008), to intervene and provide a construction—Defendant simply manufactures a dispute and asserts that

construction is required. This does not create a need for the Court to construe a plain term. *See, e.g., GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371-73 (Fed. Cir. 2016) (finding no *O2 Micro* violation where the district court declined to construe the term "pager," and determining that the real dispute was about allowing the defendant "to make certain arguments to the jury"); *Summit 6*, 802 F.3d at 1291 (finding that the district court did not err in declining to construe the disputed term, which was itself "comprised of commonly used terms; each is used in common parlance and has no special meaning in the art"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (finding that the district court did not err under *O2 Micro* in concluding that "superimposing" claim terms "have plain meanings that do not require additional construction").

The Court simply does not need to construe this plain term.

### (i)   Plaintiff is not twisting the claims like a nose of wax.

Defendant asserts that Plaintiff "treat[s] this claim term like a nose of wax by interpreting it in one way to avoid invalidity [i.e., Plaintiff's response to the motion to dismiss (D.I. 26)] and another to find infringement [i.e., Plaintiff's infringement contentions (D.I. 43)]." (Answering Brief § II.A.2(c)(i).) In support, Defendant cites *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021), where the patentee avoided invalidity by arguing that a claim preamble was limiting, but later argued for infringement that the same preamble was limiting.

Here, however, Plaintiff has done no such thing. For patentability purposes, Plaintiff described "correlated information" as "a combined product of multimedia material and advertising material, referred to as 'correlated information' to facilitate the transfer of such information between owner and purchaser." (D.I. 26 at 13.) For infringement purposes, Plaintiff pointed to infringing elements in Defendant's technology, as best as Plaintiff can understand at this stage of discovery, that appear to constitute "correlated information," including but not limited to a

combined product of "motion pictures" and "TV shows" with "associated marketing assets." (D.I. 43 at 10.)  Unlike patentee's contradictory arguments in *Data Engine*, Plaintiff's arguments here are consistent with each other. *Data Engine*, 10 F.4th at 1381.

### (ii)     Defendant's bolstering of its patent eligibility arguments is improper.

In support of its "nose of wax" accusation, Defendant slips patent eligibility argument into its claim construction position. (Answering Brief § II.A.2(c)(i).) This is improper.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) ("While we have acknowledged the maxim that claims should be construed to preserve their validity . . . we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction.")

### (b)     Even if construction were warranted, Defendant's proposed construction is incorrect.

### (i)     Defendant's construction is structurally wrong.

Plaintiff's Opening Brief explained that "correlated information" is a claim-defined term reciting two components—"multimedia material" and "associated advertising material"—and that this structure is lost in the ambiguity of Defendant's construction, "data associated with other data." (Opening Brief § II.A.1(b).) In response, Defendant calls this a "strawman argument" and accuses Plaintiff of providing "an intentional misreading of Defendant's construction." (Answering Brief § II.A.2(c)(ii).) Defendant responds, "[t]o be clear, Defendant's construction encompasses the associated data in the collective," but this response cites no authority and provides no explanation.

### (ii)     Defendant's construction provides no insight.

Defendant points to Claim Element 1(b), which claims "storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information *in digital format*" ('725 Patent at 16:26-28 (emphasis added)) and to Claim 11

claiming ". . . providing sales and marketing data, specific to said items of multimedia material, to exhibitors . . . ." (*Id.* at 17:34-38). (Answering Brief § II.A.2(c)(ii).)

While Claim 1 does describe "correlated information" as being "in a digital format" ('725 Patent at 16:26-28), Defendant fails to explain how "data associated with other data" provides additional insight to the "digital format" of "correlated information." (Opening Brief § II.A.1(b).) Defendant simply asserts that "correlated information" must be re-written as "data." Defendant's reference to Claim 11 does not clarify the matter because Claim 11 makes no additional reference to "correlated information." ('725 Patent at 17:34-38.)

### (iii) Defendant's construction improperly imports extraneous limitations.

Defendant points to specific embodiments of the invention disclosed in the specification. (Answering Brief § II.A.2(c)(ii).) In so doing, Defendant improperly imports limitations from the specification into Claim 1. *See Phillips*, 415 F.3d at 1326-27 ("[t]he fact that a patent asserts that an invention achieves several objections does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objections."); *see also Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002) ("[A] court may not read into a claim a limitation from a preferred embodiment, if that limitation is not present in the claim itself.")

Defendant points to the specification's "brief summary of the invention" ('725 Patent at 2:55-57) and disclosure of one embodiment (*id*. at 5:24-39). Yet, finding support for a proposed construction by way of a particular embodiment does not make the construction mandatory. *See Phillips*, 415 F.3d at 1311 ("we agree with the panel that the district court erred by limiting the term to corresponding structures disclosed in the specification and their equivalents.")

### (iv) Defendant mischaracterizes the prosecution history.

Defendant states that, in the prosecution history of Claim 1, applicant replaced "data" and "digital format" with "correlated information." (Answering Brief § II.A.2(c)(ii).) This is incorrect because the term "correlated information" did not replace anything in Claim 1—it was simply added into the claim.

> b.   storing said multimedia material and associated advertising material on a computer readable storage medium <u>as correlated information</u> in a digital format;

(D.I. 52-2 at 478.)  Even if "correlated information" had replaced a term, Defendant provides no authority for the proposition that a new term, added by amendment, must be construed as having the same scope as the term that it replaced—such a proposition in fact makes no sense because it would defeat the purpose of amending.

### (c) Defendant's criticism of Plaintiff's alternative construction is unpersuasive.

Defendant criticizes Plaintiff's alternative construction as circular by using the word "information," and asserts "there are other, undefined types of 'information'." (Answering Brief § II.A.2(c)(iii).) Defendant fails to explain why it is circular to use the word "information" and fails to point to an example of an undefined type of information in the claims. Although "information" appears as "correlated information" (Claim 1), "sales information" (Claim 11), "licensing information" (Claim 13), "information necessary to calculate an amount owed" (Claim 15), and "box office information" (Claim 21), these uses are not undefined.

Defendant criticizes Plaintiff's alternative construction as ambiguous because of its use of the word "comprising," asserting that such word "leaves the claim scope open-ended." (Answering Brief § II.A.2(c)(iii).) Defendant again fails to explain its criticism. Plaintiff's use of "comprising"

is consistent with the scope of Claim 1, which reads "a method . . . comprising" ('725 Patent at 16:19-20).

If the Court elects to construe "correlated information," then it should adopt Plaintiff's alternative construction because it is more consistent with the use of the term as recited in the actual claim language than Defendant's construction.

### 4.    Defendant's Sur-Reply Position

#### (a)    Plaintiff's Ever-Shifting Positions Necessitate Construction

"When the parties raise an actual dispute regarding the proper scope of [a claim term], the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation omitted). Here, Defendant not only disagrees with Plaintiff's proposed construction, Defendant also has an "actual dispute" with the three other, inconsistent interpretations of the same term that Plaintiff simultaneously advocates. *See id*. First, to support the patent eligibility of the '725 Patent, Plaintiff narrowly defines "correlated information" as a "combined product of multimedia material and advertising material." D.I. 26 at 13. Then, to allege infringement, Plaintiff broadly applies the term to different TV shows, movies, and marketing assets, without identifying any "combined product." *See* D.I. 43, Ex. 1 at 10-23. And recently, after serving its claim construction briefs, Plaintiff presents yet another interpretation before the Patent Office in an IPR filing to distinguish prior art. Plaintiff argues— for the first time—that "correlated information" requires a system "structured to determine correlation" without "human input." JA (Patent Owner's Preliminary Response in IPR2024-00736, Paper 8) 034. Based on this wholly-unsupported position, Plaintiff argues that using a "flag" to associate a movie with its trailer does not constitute "correlated information." *See id.* at 26 (Plaintiff arguing that "any action based on potential correlation is made by the user" and therefore "flags … that the item is a trailer" do not constitute "correlated information.").

15

Plaintiff cannot reconcile these wildly inconsistent positions. Plaintiff's Reply attempts to downplay these inconsistencies by omitting the full context of Plaintiff's own statements. For example, Plaintiff omits its patent eligibility argument explicitly contending that "correlated information" refers to "the concrete application of *specific elements of computer hardware to package and distribute a combined product* …." D.I. 26 at 13 (emphasis added). Plaintiff cannot dispute that it never identified any "specific elements of computer hardware to package and distribute a combined product" in its infringement contentions. *See generally* D.I. 43 at 10. Moreover, neither Plaintiff's proposed construction nor its infringement contentions say anything about requiring a system that determines correlation without "human input," as Plaintiff now argues before the Patent Office. *See* JA 034-035. Thus, Plaintiff's ever-shifting position on "correlated information" demonstrates an unmistakable need for claim construction.

### (b)    The Intrinsic Evidence Supports Defendant's Construction

The intrinsic evidence, including the term's surrounding claim language, the specification, and the prosecution history all support Defendant's proposed construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). In stark contrast, not only are Plaintiff's arguments devoid of intrinsic support, Plaintiff attempts to avoid the specification's disclosures by mischaracterizing Defendant's intrinsic evidence citations as importing limitations. *See* Plaintiff's Reply II.A.3(b)(iii). Plaintiff's arguments are baseless.

Here, Defendant does not seek to limit "correlated information" to any exemplary embodiment nor import extraneous limitations. Rather, Defendant used the intrinsic evidence to demonstrate that "data" and "associated" are concepts grounded in the intrinsic record that help to ascertain the scope of "correlated information"—a claim term that is notably absent from the patent

specification. *See* Defendant's Answer Br. § II.A.2(c)(ii). The Court should therefore adopt Defendant's construction because it reflects how a person of ordinary skill in the art would interpret the term in the context of the entire patent, including the claims, specification, and prosecution history.

Plaintiff mischaracterizes the prosecution history by drawing focus to Claim Element 1(b) in isolation. Plaintiff's Reply § II.A.3(b)(iv). Yet, multiple rounds of amendments to Claim Element 1(c) illustrate that Plaintiff used "information" interchangeably with "digital format" and "data" to describe the alleged invention:

> c.   providing a server system accessible over a communication network, said server system accessing data from said computer readable storage medium for transfer over said communication network;

D.I. 52-2 at 41 (original Claim Element 1(c); annotated).

> c.   providing a server system accessible over a communication network said producer or owner being linked with the server system, said server system accessing said digital format data from said computer readable storage medium for transfer of said digital format over said communication network;

*Id.* at 190 (amendment dated May 30, 2006; annotated).

> c.   providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;

*Id.* at 477 (amendment dated April 3, 2009; annotated). As shown, Plaintiff replaced "data" with "said digital format," and then amended "said digital format" to "said correlated information in a

digital format." Thus, the prosecution history supports Defendant's position that "information" simply means "data" in the context of the alleged invention.

**(c)     Plaintiff's Alternative Construction Is Incorrect**

Plaintiff's alternative construction adds no clarity and leaves the claim term vague and open-ended. In particular, Plaintiff's reliance on the preamble is misplaced. *See* Plaintiff's Reply § II.A.3(c). Claim 1's use of "comprising" in the preamble only means that the claimed method "allows for additional steps." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003). It does not mean each and every claim element within the claimed steps is open-ended in scope. Indeed, Plaintiff's construction of "information comprising associated materials" suggests that non-associated data—such as advertisements not associated with a movie or TV show—could be considered part of the "correlated information." This construction has no intrinsic support and is inconsistent with every embodiment described in the specification. Thus, the Court should adopt Defendant's construction of "data associated with other data" and reject Plaintiff's construction.

B.      "said purchasers"

| Disputed Term(s)/Phrase(s) | Pltf.'s Proposed Construction | Dft.'s Proposed Construction |
|---|---|---|
| "said purchasers" U.S. Patent No. 7,574,725, Claim 1 | Not indefinite.  The antecedent basis of "said purchasers" is "potential purchasers" recited in limitation 1.c. Plain and ordinary meaning.  No construction necessary.<br><br>Alternatively, "potential purchasers" means "users that may be interested in obtaining multimedia material." | Indefinite. |

1.      **Plaintiff's Opening Position**

(a)      **The term "said purchasers" is not indefinite.**

This term is not indefinite.  "Like claim construction, definiteness should be evaluated from the viewpoint of a person of ordinary skill in the art at the time the patent was filed" and "[a]ny fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence." *TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-1126, 2022 WL 17986012, at *3 (D. Del. Dec. 29, 2022) (citing Federal Circuit precedent).  Defendant is unable to carry its heavy burden of establishing by clear and convincing evidence that any claim term of the '725 Patent is indefinite.

First, the USPTO never rejected the term "said purchasers" as indefinite even though the USPTO issued a rejection of other (now amended) terms as indefinite.[3]

Second, the term "purchasers" appearing in limitation (d) of Claim 1 derives antecedent basis from the term "potential purchasers" found in limitations (c) and (d) of Claim 1.

---

[3] The USPTO initially rejected the terms "such as" and "said product" as indefinite, but then unilaterally amended those terms to facilitate prosecution.  D.I. 52-2, Ex. 2 ('725 Patent file wrapper) (Office Action dated November 28, 2005).

> 1. A method of marketing and distributing multimedia, the method comprising:
>
> a . . . ;
>
> b . . . ;
>
> c. providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to ***potential purchasers***;
>
> d. providing samples of said correlated information in a digital format from said server over said communication network to ***said potential purchasers***, ***said purchasers*** being linked to the server system through said communication network;
>
> e . . . ;
>
> f . . . ;
>
> g . . . .

('725 Patent at Claim 1) (emphasis added).

Third, even if the term "purchasers" had no explicit antecedent basis, it still would not be indefinite because "purchasers" has a reasonably ascertainable meaning. The absence of an explicit antecedent basis for one term in a claim does not automatically render an entire patent claim indefinite as long as the scope of the claim is reasonably ascertainable by those skilled in the art. *See Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) ("A claim that is amenable to construction is not invalid on the ground of indefiniteness."); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (antecedent basis can be present by implication); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001) ("the failure to provide explicit antecedent basis for terms does not always render a claim indefinite. If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite."); *Cadence Pharmaceuticals, Inc. v. Paddock Laboratories Inc.*, 886 F.Supp.2d 445, 452 (D. Del. 2012).  Numerous passages in the specification of the '725 Patent inform the meaning of "purchasers" to those of skill in the art, including the following:

"The server can provide samples of the multimedia material to potential purchasers depending upon the marketing strategy employed by the producer or owner." ('725 Patent at 2:57-59.)

"It is also contemplated that various advertisements may also appear on the home page.  In accordance of the invention it is contemplated that such advertisements will be specific to particular users, their geography and the like and will be based on information held in the system with respect to prior exhibition of various titles, their popularity and the like." (*id.* at 10:4-10.)

"However, in the case of 'trade' users, more sophisticated arrangements may become necessary with correspondingly different input screens." (*id.* at 11:60-62.)

"In addition to providing multimedia to users, the server system collects data about the users and information respecting the economics and sales success of exhibitors and broadcasters." (*id.* at 3:22-25.)

"If a valid password is entered the user can then make a selection or enter a desired title.  Once logged on, a user can enter a title or click on search button to locate a particular type of movie." (*id.* at 9:13-16.)

"Once the searching has been completed, the title of the product, which the user is interested in obtaining, appears after 'Movie Title' in screen 100." (*id.* at 9:21-23.)

"If the user is an exhibitor and wishes to view the conditions for sale of the particular product selected, the exhibitor clicks on an enter sales data button 106 in FIG. 3." (*id.* at 11:1-3.)

Referring to Fig. 5, "[u]ser 18 then selects type of material that is desired at the select format step 176. . . . . This selection is also recorded at step 168 for later analysis. The selected material is then downloaded at step 180 and the download is stored on the user's local storage media at step 182. Step 180 is implemented in a separate screen illustrated in FIG. 8, which will be described in detail below. The exhibitor's account or credit card is charged at 184. The user is then permitted to either select another title or leave the web site at step 128." (*id.* at 14:9-20.)

"It is contemplated that many different types of transactions will be available. For example, a user does not purchase a major motion picture with a credit card, since payment is usually based on revenues, such as a royalty payment, often keyed to box office receipts." (*id.* at 12:33-37.)

In view of the specification and the actual claim language, the meaning of the term "said purchasers" is reasonably ascertainable from the content of Claim 1 and the disclosure of the '725 Patent, and therefore is not indefinite.

### 2.    Defendant's Answering Position

Plaintiff's construction—equating "said purchasers" with "potential purchasers"—does not make sense in the context of Claim 1 because the claim differentiates between the access rights of "potential purchasers" and "said purchasers." *See* '725 Patent at Claim 1. However, the term "said purchasers"—used eight times in Claim 1—is susceptible to multiple plausible interpretations, thereby preventing a person skilled in the art from ascertaining the proper scope of the claim with reasonable certainty. *See, e.g.*, *Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, No. 13-2108-RGA, 2015 U.S. Dist. LEXIS 150713, *26 (D. Del. Nov. 6, 2015) (finding claim term indefinite because there are "multiple plausible interpretations"); *Vaxcel Int'l Co. v. Heathco LLC*, No. 20-224-LPS, 2021 U.S. Dist. LEXIS 224684, *6 (D. Del. Nov. 22, 2021) ("A claim may be indefinite if the patent does not convey with reasonable certainty how to choose among multiple possible constructions for a particular limitation."); *Astellas Pharma Inc. v. Lupin Ltd.*, No. 23-819-JFB-CJB, 2024 U.S. Dist. LEXIS 77179, *29 (D. Del. Apr. 19, 2024) (a claim term may be indefinite if it has "multiple possible, plausible definitions"). Thus, this term renders Claim 1 indefinite because it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Claim 1 defines "potential purchasers" in step (b) and refers to these "said potential purchasers" in step (c). *See* '725 Patent at Claim Elements 1(b)-(c). The claim language then abruptly changes to "said purchasers" in step (c) without first defining an antecedent basis[4] for

---

[4] In patent claiming, "antecedent basis" refers to the rule that a claim term must be introduced clearly before being referenced again in a later limitation. *See* MPEP § 2173.05(e) (9th ed. Rev.

who qualifies as "purchasers." *Id.* The claim uses "said purchasers" seven more times in subsequent elements. *Id.* at Claim Elements 1(e)-(g). Because "purchasers" is never defined, the term "said purchasers" lacks antecedent basis and its scope is unclear. *See In re Downing*, 754 F. App'x at 996 ("A claim is indefinite when it contains words or phrases where the meaning is unclear, which may be the result of the lack of an antecedent basis."). There are multiple plausible interpretations of "said purchasers" in the context of Claim 1.

One possible interpretation of "said purchasers" is a subgroup of "potential purchasers" who have completed the sampling step. Claim Element 1(d) describes "providing samples of said correlated information … to ***said potential purchasers***," and then switches terminology to state, "***said purchasers*** being linked to the server system …." '725 Patent at Claim 1 (emphasis added). Thereafter, Claim 1 refers only to "said purchasers" for all subsequent steps related to downloading, storing, locally marketing and selling, and exhibiting the "correlated information." *See id.* Thus, one possible interpretation of this term is that a "potential purchaser" becomes a "purchaser" by sampling the "correlated information." *See id.* Under this interpretation, "said purchasers" may include only those "potential purchasers" who have completed the sampling step defined in Claim Element 1(d).

A second possible interpretation is that "said purchasers" refers to a subgroup of "said potential purchasers" who have purchased the "correlated information." As the claim language of "potential purchasers" and "purchasers" would suggest, a "potential purchaser" who has completed a purchase would no longer be a "potential purchaser" and would be permitted greater access to download and store the "correlated information" than those who are still considering a

---

07.2022, Feb. 2023). For example, the word "said" before a claim term indicates that the term refers back to another term defined earlier in the claim, which is said to provide "antecedent basis" for the later "said" term. *Id.*; *see In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018).

"potential" purchase. *See* '725 Patent at Claim Elements 1(e)-(g). While Claim 1 does not include a purchasing step, the '725 Patent's specification explains that after an "exhibitor is given the opportunity to either review an entire movie or portions thereof"—i.e., the sampling step of Element (d)—"the exhibitor has the opportunity to … decide to proceed with purchasing or leasing the movie." *Id.* at 13:64-14:3. And after "the exhibitor has decided to purchase the product …, the exhibitor is then presented with a contract for the particular material for the selected title and accepts or refuses the contract …." *Id.* at 14:4-9. Thus, "said purchasers" may include only those "potential purchasers" who accepted a purchase contract and completed a purchase.

A third possible interpretation is that the "said purchasers" term draws its antecedent basis from the "purchasers" described in Element (f). Claim Element 1(f) includes Claim 1's only use of "purchasers" without the word "said." *See id.* at Claim Element 1(f) ("allowing purchasers to locally market and sell said multimedia material"). Under this interpretation, "said purchasers" may include only those individuals who are permitted to locally market and sell certain "multimedia material." *See id.* However, if Element (f)'s recitation of "purchasers" provides antecedent basis for "said purchasers," it is unclear whether that would control only for the three subsequent occurrences of "said purchasers" or for all eight occurrences in Claim 1.

A fourth possible interpretation is that "said purchasers" has the same meaning as "said potential purchasers." Plaintiff advocates for this interpretation by pointing to "potential purchasers" as the antecedent basis for "said purchasers" and defining both terms as "users that may be interested in obtaining multimedia material." But Plaintiff's construction is unsupported by the law or facts. First, "[d]ifferent claim terms are presumed to have different meanings." *Bd. of Regents of the Univ. of Tex. Sys. V. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) (citation omitted). Thus, the law presumes that "said potential purchasers" and "said purchasers"

differ in scope. *See id.* Second, Claim 1 describes "providing samples of … correlated information" to "potential purchasers" but allowing "said purchasers" to download, store, locally market and sell, and exhibit the "correlated information." *See* '725 Patent at Claim Elements 1(d)-(g). It is illogical to grant "potential purchasers"—defined by Plaintiff as "users that may be interested in obtaining multimedia material"—full access rights to obtain the multimedia material, including the ability to resell or exhibit the material. Indeed, there would be no reason for "potential purchasers" to purchase anything if they are given full access rights without any condition. For example, the patent specification requires the completion of a purchase contract before a user is permitted to download and locally store content. *See id.* at 14:4-20. Thus, Plaintiff's proposed construction violates a common rule of claim construction and contradicts the patent disclosure. Nevertheless, Plaintiff's proposed construction represents another possible interpretation, albeit less plausible than the first three interpretations identified above.

These different possible interpretations change what actions satisfy the method steps involving "said purchasers." Because Claim 1 never defines the scope of "purchasers," a person skilled in the art is "left to wonder which of the different" possible interpretations of "said purchasers" controls. *See Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) ("The lack of antecedent basis signals a potential indefiniteness problem" and the broader context of the claims "only compounds the problem."). Plaintiff's argument that the term is not indefinite because the Patent Office allowed the claims to issue defies logic—all claim terms found by courts to be indefinite were issued by the Patent Office. More importantly, Plaintiff is unable to explain the difference between "said potential purchasers" and "said purchasers," nor provide a construction that makes sense in the context of Claim 1. Thus, the term "said purchasers" renders Claim 1 indefinite.

### 3.      Plaintiff's Reply Position

### (a)      Defendant fails to rebut Plaintiff's arguments.

Defendant fails to tackle the authority cited by Plaintiff or explain how such authority is no longer applicable due to the Supreme Court's *Nautilus* decision. *See Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) ("A claim that is amenable to construction is not invalid on the ground of indefiniteness."); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (antecedent basis can be present by implication); *Cadence Pharmaceuticals, Inc. v. Paddock Laboratories Inc.*, 886 F.Supp.2d 445, 452 (D. Del. 2012).

The term "said purchasers" does not lack an antecedent basis. But even if it did, Claim 1 still would not be indefinite. *See In re Downing*, 754 F.App'x 988, 996 (Fed. Cir. 2018) ("[T]he lack of antecedent basis does not render a claim indefinite as long as the claim apprises one of ordinary skill in the art of its scope and, therefore, serves the notice function required by § 112 ¶ 2."); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001) ("the failure to provide explicit antecedent basis for terms does not always render a claim indefinite. If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite.").

In any event, "said purchasers" has a sufficient antecedent basis. As explained in Plaintiff's Opening Brief, a person of ordinary skill reading Claim Element 1(d)—specifically reading ". . . said potential purchasers, said purchasers . . . ." where the term "said purchasers" is first introduced—would understand that "said purchasers" is referring back to the immediate prior recitation of "said potential purchasers" based on the juxtaposition of the terms. ('725 Patent at 16:35-39 (highlights added)); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

26

**(b)**      **Defendant's indefiniteness argument is unpersuasive.**

In an effort to manufacture indefiniteness, Defendant creates "possible interpretations" of the term "said purchasers" as examples of how a person of ordinary skill would supposedly be completely incapable of understanding the meaning of the term. (Answering Brief § II.B.2.) These arguments are deficient.

First, Defendant cites *Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, No. 13-2108-RGA, 2015 WL 6870031, at*2-8 (D. Del. Nov. 6, 2015), where the court analyzed eight claim terms across four patents, finding four terms to have plain meaning or requiring no construction, and finding three terms to be indefinite under 35 U.S.C. § 112 ¶ 2. For one term that was found indefinite, plaintiff in *Del. Display* conceded that "there are three possible interpretations" for the term, but argued that "one of ordinary skill in the art would intuitively chose" one of the interpretations because the other interpretation "runs contrary to physics." *Id*. at *8. Also, defendant in *Del. Display* argued that Plaintiff's expert made conceded "that all three interpretations are equally plausible . . . ." *Id*. The court found the term indefinite because of the expert's concessions. *Id*. at *9. *Del. Display* does not apply here, however, because Plaintiff has not made concessions and no expert testimony has been proffered on the knowledge of a person of ordinary skill.

Second, Defendant cites *Vaxcel Int'l Co. v. Heathco LLC*, No. 20-224-LPS, 2021 WL 7209508, at *3-13 (D. Del. Nov. 22, 2021), where the court analyzed fourteen claim terms, finding five to be indefinite. Specifically, the court found terms to be indefinite because of the inherent ambiguity in words of degree such as "similar to," "much brighter," and "drastic changes," all of which were used in the claims and not defined in the specification. *Id*. at *9-11. *Vaxcel* does not apply here, however, because there are no words of degree at issue.  The term at issue is "said purchasers" and Defendant has not argued that the noun "purchasers" has an inherent ambiguity

in the English language. Plaintiff's position here rests squarely on how one of ordinary skill would read the juxtaposition of the terms in the claim language.

Third, Defendant cites *Astellas Pharma Inc. v. Lupin Ltd.*, No. 23-819-JFB-CJB, 2024 WL 1832483, at *5 (D. Del. Apr. 19, 2024), where the court analyzed, on a motion for preliminary injunction, whether there was a substantial question as to the invalidity of one term: "reduced food effect." Buried in the court's lengthy analysis is a note, "does seem to be providing *multiple possible, plausible definitions* for that term." *Id.* at *10 (emphasis in original). The court concluded: "the question before the Court now is not whether Defendants have *proven* invalidity, but instead only whether they have put forward a 'substantial question' of invalidity in order to show that the claims at issue are *vulnerable* to such a charge. For the reasons set out above, the Court concludes that they have." *Id.* at *17 (emphasis in original). *Astellas* does not apply here, however, because the *Astellas* court never ruled on invalidity and never explicitly relied on authority stating that a claim is indefinite because a term has multiple possible interpretations.

### (c)    Defendant improperly argues factual issues.

In support of its criticism of Plaintiff's alternative construction, Defendant argues that "[c]laim 1 differentiates between the access rights of 'potential purchasers' and 'said purchasers'." (Answering Brief § II.B.2.) Defendant then describes, in its opinion and solely through attorney argument unsupported by any expert testimony, how the underlying technology of Claim 1 works, namely the degree of access rights that people may have to a distribution platform implementing the method of Claim 1. (*Id.*) The issue of "access rights," however, is not relevant to the construction or validity of Claim 1 because the claim says nothing about access rights, login credentials, subscriptions, or anything of the like. Even if "access rights" were relevant to Claim 1, Defendant provides no supporting extrinsic evidence to support its unsupported characterization of the underlying technology. *See, e.g., Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274,

1284 (Fed. Cir. 2023) ("[A]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence.") Defendant's arguments on "access rights" notably constitute mere attorney argument on factual issues without evidentiary support and should be summarily rejected. *See, e.g., Impax Labs. Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1380 (Fed. Cir. 2018) (rejecting a party's contentions as being "without any evidentiary support beyond its attorney arguments concerning factual issues.").

### 4.      Defendant's Sur-Reply Position

Plaintiff's Reply does not dispute that "said purchasers" is susceptible to multiple plausible interpretations, including at least the four identified in Defendant's Answering Brief. While Plaintiff advocates for one possible interpretation—that "said purchasers" has the same meaning as "potential purchasers"—it fails to demonstrate that this interpretation is more plausible than other alternative interpretations.

For example, one plausible interpretation is that "said purchasers" refers to those who have actually purchased the "correlated information." As the claim language suggests, a "purchaser" would be permitted greater access to download and store the "correlated information" than a "potential purchaser." This makes sense in the context of a product purchase—a consumer who purchased a product from a store would be permitted to take the product home, whereas a "potential purchaser" would be limited to observing it in the store. Indeed, Plaintiff acknowledges this distinction in its Patent Office filing by conceding that the system "provides samples of the correlated information to *potential purchasers*" but allows "*purchasers*" to download and store the multimedia material and advertisements. JA 017 (emphasis added). This interpretation is no less plausible than Plaintiff's interpretation that "said purchaser" can be any "potential purchaser."

Moreover, Plaintiff's construction is illogical in the context of Claim 1. The claim itself differentiates between the access rights of "potential purchasers" and "said purchasers." *See* '725

Patent at Claim 1. None of the patent's disclosed embodiments provide "potential purchasers" full access to the content materials. And granting "potential purchasers"—defined by Plaintiff as "users that may be interested in obtaining multimedia material"—the ability to download, store, and resell the multimedia material would eliminate any need for a "potential purchaser" to make a purchase. Because "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct," "said purchasers" should not be construed to have the same meaning as "potential purchasers." *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013); *Bd. of Regents of the Univ. of Tex. Sys. V. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings.").

Because Plaintiff is unable to explain the difference between "said potential purchasers" and "said purchasers" nor provide a construction that makes logical sense in the context of the '725 Patent, the term "said purchasers" lacks antecedent basis and renders Claim 1 indefinite.

**C.** **"said purchasers storing …" / "said purchasers downloading …" / "said purchasers storing …"**

| Disputed Term(s)/Phrase(s) | Pltf.'s Proposed Construction | Dft.'s Proposed Construction |
|---|---|---|
| "said purchasers storing …" U.S. Patent No. 7,574,725, Claim Element 1(e) "said purchasers downloading …" / "said purchasers storing …" U.S. Patent No. 7,574,725, Claim Element 1(f) | Plain and ordinary meaning.  No construction necessary. Contrary to Defendant's statement, these are not active storing or downloading steps to be performed by "said purchasers"; "said purchasers storing" is part of the "downloading to said purchasers" step recited in limitation 1.e., and as such is part of the "downloading" step being performed "to purchasers" "from [the] server system"; "said purchasers downloading . . . / said purchasers storing" is part of the "providing said correlated information" step recited in limitation 1.f., and as such is part of the "providing" step being performed "to said purchasers from said server system over said communication network." | These are active storing or downloading steps to be performed by "said purchasers," i.e., the terms require "said purchasers perform the step of storing …," "said purchasers perform the step of downloading …," and "said purchasers perform the step of storing …." |

**1.** **Plaintiff's Opening Position**

**(a)** **No construction is necessary. Plain and ordinary meaning applies.**

Defendant has not explained why construction of these terms is necessary. *See Roche* at 441-42 ("More importantly, in the Court's view, [the parties] have not explained how their proposed construction is necessary to assist one of skill in the art in understanding the claims. Rather, [the parties'] proposed construction appears to be nothing more than an unnecessary paraphrasing of the ordinary word 'determine.'").

**(b)     Defendant's position is incorrect.**

If "said purchasers storing" or "said purchasers downloading" were to benefit from a construction by the Court, Defendant's proposed construction is incorrect.

First, Defendant's position is not a proposed construction, but seemingly an infringement analysis shoehorned into a claim construction brief. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) ("Indeed, we noted in *O2 Micro* that there are limits to the court's duties at the claim construction stage. For example, courts should not resolve questions that do not go to claim scope, but instead go to infringement, or improper attorney argument.").

Second, even if Defendant's statement constitutes a proposed claim construction, the claim language at issue shows that the limitations "downloading" and "storing" do not require potential purchasers to perform active steps that are separate from the claimed steps of the system. Instead, these are not active storing or downloading steps to be performed by "said purchasers." Rather, "said purchasers storing" is part of the "downloading to said purchasers" step recited in limitation 1.e., and as such is part of the "downloading" step being performed "to purchasers" and "from [the] server system"; and (B) "said purchasers downloading . . . / said purchasers storing" is part of the "providing said correlated information" step recited in limitation 1.f., and as such is part of the "providing" step being performed "to said purchasers from said server system over said communication network." This understanding comports with the structure of Claim 1 and is supported by the specification.

Third, looking at the language of Claims 1, the system's acts of "receiving" (1a), "storing" (1b), "providing a server" (1c), "providing samples" (1d), "downloading to" (1e), and "providing . . . information" (1f)) are the claimed steps of the invention. Regarding step 1(e), the claim terms cited by Defendant are part of the "downloading to said purchasers" step that is performed "to"

the purchasers, not "by" the purchasers.  In this step, the claimed method downloads multimedia material "from the server system" to a potential purchaser and causes such multimedia material to be stored for said potential purchaser. Regarding step 1(f), the claim terms cited by Defendant are part of the "providing said correlated information" step that is performed by the claimed method "from the server system" and, thus, are not actions separate from the claimed "providing" step of the system. In this step, the claimed method downloads advertising material from the server system to a potential purchaser and causes such advertising material to be stored for said potential purchaser.

Finally, looking at the specification of the '725 Patent, it provides support for the above-described understanding because its disclosures of "downloading" and "storing" are in the passive voice and, therefore, do not require a user to actively perform such "downloading" or "storing."

> "The ***system then proceeds to download*** the selected material at step 180, as illustrated in FIG. 5, and the material stored and the account of the client charged, or the transaction financially implemented by other means." ('725 Patent at 15:39-41) (emphasis added).

> Referring to Fig. 5, "[u]ser 18 then selects type of material that is desired at the select format step 176 . . . . This selection is also recorded at step 168 for later analysis. The ***selected material is then downloaded*** at step 180 and ***the download is stored on the user's local storage media*** at step 182. ***Step 180 is implemented*** in a separate screen illustrated in FIG. 8, which will be described in detail below. The exhibitor's account or credit card is charged at 184. The user is then permitted to either select another title or leave the web site at step 128." (*id.* at 14:9-20) (emphasis added).

> "The inventive ***system provides for the download***, upon request, from the server system over a public or private network of multimedia material and then advertising material to exhibitors purchasing rights over the inventive communications network. This allows exhibitors and broadcasters to locally use the multimedia material." (*id.* at 2:60-65) (emphasis added).

Accordingly, Defendant's proposed "construction" of this term, to the extent it qualifies as a claim construction, should be rejected.

### 2.     Defendant's Answering Position[5]

Plaintiff's motivation to preserve potential infringement arguments has directly led to its attempts to rewrite Claim 1 by effectively eliminating all user-performed steps. But the clear claim language requires "said purchasers" to perform the steps of "downloading" and "storing" certain data. Plaintiff's argument that these user-performed steps are actually controlled by the "server system" is inconsistent with the '725 Patent's teachings. Thus, the Court should reject Plaintiff's deliberate attempt to rewrite Claim 1 and adopt Defendant's construction.

This is a claim construction dispute because the parties disagree about the scope of what is covered by the claims. *See Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) ("The purpose of claim construction is to resolve disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement or invalidity." (internal quotations omitted)). Similar to determining whether a preamble is limiting, the question of whether "said purchasers" must perform these "storing" and "downloading" steps affects claim scope. Indeed, this Court has previously held that a dispute about "whether the claims at issue can plausibly be read to allow for one person or entity that performs all of the steps of a claimed method" is "a dispute about what certain claim terms

---

[5] Claim Element 1(e) recites, "downloading to said purchasers … said correlated information in a digital format corresponding to said multimedia material from said server system, ***said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material*** …." '725 Patent, Claim 1 (emphasis added). Claim Element 1(f) recites, "providing said correlated information … to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, ***said purchasers downloading said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material***, ***said purchasers storing the downloaded correlated information in a digital format corresponding to said advertising material***; and …." *Id.* (emphasis added)

can and cannot mean" and should be resolved through claim construction. *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 6044793, at *6 (D. Del. Nov. 13, 2012).

(a)      **The Disputed Phrases Require Actions By "Said Purchasers"**

Defendant's position that the "downloading" and "storing" terms are active steps that must be performed by "said purchasers" is supported by the claim language and the patent specification.

First, the claim language itself confirms that "said purchasers" must perform the steps of "downloading" and "storing." Claim 1 uses different language to differentiate steps performed by the server (e.g., "providing … to said purchasers from said server system") from steps performed by "said purchasers" (e.g., "said purchasers storing downloaded correlated information …"). *See* '725 Patent at Claim 1. And where the patentee intended for steps to be performed automatically— and not actively by a user—it drafted the claims to require an automatic step. *See, e.g.*, *id.* at Claim 11 ("automatically collecting …"), Claim 17 ("automatic[ally] sending …"). Plaintiff's assertion that these are not active storing steps, but instead are results of steps performed by "said server system," directly contradicts the claim language and exceeds the capabilities of the "server system." For example, Plaintiff does not even attempt to explain how a "server system" would be able to control whether and how a user stores data downloaded from the server. Thus, Defendant's construction is supported by the claim language.

Second, the '725 Patent's specification confirms that "said purchasers storing …" and "said purchasers downloading …" refer to active steps performed by users. The specification explains that "said purchasers" select the content they wish to download and use their own hardware to perform the download and storage actions. For example, Figures 5 and 10 illustrate "a second set of functions … active and implemented when the system recognizes that it is dealing with an exhibitor." *Id.* at 9:27-29, Figs. 5 and 10. As illustrated in Figure 10 below, a user performs the steps of "Download Selected Material" at step 180 and "Store on Local Storage Medium" at step 182. *See id.*; *see also id.* at 14:9-17 ("User 18 then selects type of material that is desired ….").



Figure 10

*Id.* at Fig. 10 (annotated).

As further shown in Figure 7 below, the specification explains that "a select action screen 142 … gives **the exhibitor the opportunity to take various actions** with respect to the title previously selected …." *Id.* at 13:15-18 (emphasis added). For example, "[a] user may click on a preview movie button 146 to preview a selected movie title or click on a preview other programming button 148 to view television programming." *Id.* at 13:23-26. In addition, "[a] user may click on a download movie or program button 150 to download a selected title or program" or click on "[a] download advertising button 152" to download previews and trailers. *Id.* at 13:26-40. The specification, therefore, distinguishes between activities in which "said server system" transmits data without a user saving it locally—such as "previewing" content—and activities that require the user to take actions to locally save the data. *Compare id.* at Claim Element 1(d) ("providing samples … from said server system")*, with id.* at Claim Elements 1(e) and 1(f) ("said purchasers [storing]/[downloading] …").



*Id.* at Fig. 7 (annotated).

Further, "FIG. 8 illustrates a web site page for enabling an exhibitor to select delivery options including download (via Internet) …." *Id.* at 14:21-23, Fig. 8. "The computer readable data storage media 28 is made available to exhibitors 18 ***using their own central processor units 206 and its associated memory***, communicating with the central server 16 over a communicating network such as the Internet." *Id.* at 14:54-58 (emphasis added). "In the case of using the Internet for a connection, ***user's computer 206 acts*** through the web site computer, which serves as the central server 16, to access data storage media 28." *Id.* at 14:58-61 (emphasis added). The steps of "downloading" and "storing" are therefore actions performed by "said purchasers" that involve communication from "said purchasers'" processors and storage on "said purchasers'" memory. Thus, the terms at issue are active steps performed by "said purchasers."

### (b)      Plaintiff's Construction Deletes These Steps From Claim 1

Claim 1 of the '725 Patent describes a method that includes steps performed by a "server system" and by "said purchasers." *See* '725 Patent at Claim 1. Plaintiff cannot—under the guise of claim construction—rewrite Claim 1 to eliminate all user-performed steps. Thus, the Court should reject Plaintiff's construction because it renders claim language "void, meaningless, or superfluous." *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017).

Plaintiff has no basis to simply remove the active steps of "said purchasers downloading …" and "said purchasers storing …" from Claim 1. A method is defined as "an act, or a series of acts." *See Gottschalk v. Benson*, 409 U.S. 63, 70 (1972); *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) (A process or method "consists of doing something, and therefore has to be carried out or performed."). Because Claim 1 recites the steps of "said purchasers downloading …" and "said purchasers storing …," these limitations cannot be met without corresponding actions by "said purchasers," and they cannot be satisfied by the capabilities or actions of the "server system" without any user action. *See, e.g.*, *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298,

1305-06 (Fed. Cir. 2015) (finding "'oxidizing' cannot be interpreted as doing nothing, or to simply allow oxidation to occur on its own" "[n]or can the other recited claim steps … suffice as the active step resulting in oxidation").

Perhaps recognizing that it cannot reasonably eliminate claim terms, Plaintiff argues that the "said purchasers downloading …" and "said purchasers storing …" steps are causal effects of steps already performed by "said server system." There is, however, no support for this interpretation. The alleged invention does not require users to store all data sent by a server. Indeed, neither the patent specification nor the claims explain how a "server system" controls a user's local storage of data. To the contrary, the specification explains that users must use their own "local storage media" for storage. *See* '725 Patent at 14:13-15, 14:54-64. By construing these limitations as part of the steps performed by "said server system," Plaintiff rewrites Claim 1 in a manner that is inconsistent with the specification. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, [they] give effect to the terms chosen by the patentee."). Thus, the Court should construe these terms as active steps that must be performed by "said purchasers."

### 3.    Plaintiff's Reply Position

To begin with, Plaintiff reiterates that the "said purchasers storing" and "said purchasers downloading" limitations (highlighted in yellow below) are limitations contained within the framework of Claim Elements 1(e) "downloading to said purchasers" and 1(f) "providing . . . to said purchasers" (highlighted in blue below):

> e. downloading to said purchasers, upon request of said
> purchasers, over said communication network, said cor-
> related information in a digital format corresponding to
> said multimedia material from said server system, said
> purchasers storing downloaded correlated information
> in a digital format corresponding to said multimedia
> material; and

('725 Patent at 16:40-46 (highlights added).)

> f. providing said correlated information in a digital format
> corresponding to said advertising material that is asso-
> ciated with said multimedia material to said purchasers
> from said server system over said communication net-
> work, allowing purchasers to locally market and sell said
> multimedia material, said purchasers downloading said
> correlated information in a digital format corresponding
> to said advertising material that is associated with said
> multimedia material, said purchasers storing the down-
> loaded correlated information in a digital format corre-
> sponding to said advertising material; and

(*Id.* at 16:47-57 (highlights added).)   Moreover, as is clear from the claim language "***to said***
***purchasers***" (emphasis added), it is the purchasers who are ***receiving*** the download and the
provision of information.

### (a)   Defendant's criticism of Plaintiff's position is unpersuasive.

Defendant incorrectly accuses Plaintiff of rendering the "storing" and "downloading"
limitations "void, meaningless, or superfluous." (Answering Brief § II.C.2.)

Defendant cites *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298 (Fed. Cir.
2015), where the Federal Circuit construed a chemical process claim comprising three steps:

> which comprises culturing reduced coenzyme $Q_{10}$
> producing microorganisms in a culture medium containing
> a carbon source, a nitrogen source, a phosphorus source
> and a micronutrient to obtain microbial cells containing
> reduced coenzyme $Q_{10}$ at a ratio of not less than 70 mole
> % among the entire coenzymes $Q_{10}$,
>
> disrupting the microbial cells to obtain reduced coenzyme
> $Q_{10}$; and
>
> oxidizing thus-obtained reduced coenzyme $Q_{10}$ to oxidized
> coenzyme $Q_{10}$ and then extracting the oxidized coenzyme
> $Q_{10}$ by an organic solvent under an *inert gas atmosphere.*

*Id.* at 1301 (highlights added). The court found:

> Here, ***because the claims affirmatively recite the step of "oxidizing,"***
> "oxidizing" cannot be interpreted as doing nothing, or to simply allow
> oxidization to occur on its own. Nor can the other recited claim steps, such
> as culturing or disrupting, suffice as the active step resulting in oxidation.

> If those other steps qualify as the oxidation step, the patentee's inclusion of
> a separate oxidation step would have no significance.

(*Id*. at 1305-06 (emphasis added).) The court ruled that "the oxidation step requires some action that results in oxidation . . . ." *Id*. at 1307. *Kaneka* does not apply here because "said purchasers downloading" and "storing" are not the principal, affirmative steps like "oxidizing" in *Kaneka*, but instead are subsidiary limitations contained within the "downloading" and "providing" steps of Claim Elements 1(e) and 1(f). To compare with *Kaneka*, the "affirmative step" of Claim Element 1(e) is "downloading to said purchasers" ('725 Patent at 16:40-46) and the "affirmative step" of Claim Element 1(f) is "providing . . . to said purchasers" (*id*. at 16:47-57).

Additionally, "[c]laims may contain surplusage under certain circumstances." *Del. Display Grp.*, 2015 WL 6870031, at *3-4 (finding that "such that the light will pass through a liquid crystal display with low loss" constitutes surplusage that does not limit the claim). The *Del. Display* court found the term to constitute surplusage:

> The term describes a result of the invention, rather than a structural limitation. This is consistent with the goals of the invention as described in the specification . . . . The disputed term is just one part of the larger accompanying claim language . . . . This additional language recite clear structural limitations distinct from the whereby clause beginning with "such that."

*Id*. at *4. Here, like in *Del. Display*, the "storing" and "downloading" terms at issue are not a "structural limitation" but are "just part of the larger accompanying claim language" of steps 1(e) and 1(f).

### (b)   Defendant's construction is improper.

#### (i)   Defendant manufactures a new definition of "automatic."

Defendant asserts, without evidence, that the word "automatically" in Claims 11 and 17 means "not [performed] actively by a user." (Answering Brief § II.C.2(a).) Even if the steps in

Claim 1 were "automatic," it is simply not relevant to interpreting Claim 1. The "downloading" and "storing" limitations are recited by the claim language to be controlled by the server regardless of whether they are automatic.

### (ii) Defendant improperly relies on claim differentiation.

Attempting to rely on the doctrine of claim differentiation, Defendant argues that the term "automatically" does not appear anywhere in Claim 1, which implies that no action in Claim 1, including the "downloading" and "storing" in question, occurs without it being performed "actively by the user." (*Id.*) However, the doctrine of claim differentiation does not apply to this issue because there are many differences between Claim 1 and Claims 11 and 17, and no party urges that the term "automatically" be read into Claim 1. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("[T]he presumption is especially strong [if] . . . the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim.") The term "automatically" in Claims 11 and 17 refers to the collection of sales information and the sending of emails to exhibitors, which is separate from the subject matter of Claim 1.

### (iii) Defendant's construction improperly imports extraneous limitations.

Defendant, referring mostly to figures in the specification, attempts to import limitations from the specification into the claims (Answering Brief § II.C.2(a)), which is improper as explained *supra*. *Phillips*, 415 F.3d at 1311, 1326-27; *Bayer*, 279 F.3d at 1348.

### 4. Defendant's Sur-Reply Position

The Court should reject Plaintiff's blatant attempt to rewrite Claim 1. Plaintiff's construction changes the claim from "said purchasers storing/downloading …" to "said server

storing/downloading ….” There is no legal or factual support for this wholesale rewriting of the claim language.

First, Plaintiff cites no legal basis for its “framework” argument. *See* Plaintiff’s Reply § II.C.3. Plaintiff contends that because the beginning portions of Claim Elements 1(e) and 1(f) are allegedly performed by a server, the same server must perform all subsequent steps in the same claim elements. *See id.* This argument makes no sense—under Plaintiff’s logic, a claim element reciting “a vending machine dispensing a soda and a purchaser consuming the soda” would require the vending machine to both dispense and consume the soda. Even assuming that “downloading to said purchasers” and “providing … to said purchasers” are steps performed by a server, Claim Elements 1(e) and 1(f) clearly recite additional steps not performed by the server:



’725 Patent at 16:40-57 (annotated). For example, Claim Element 1(f) recites three additional limitations: “allowing purchasers to locally market and sell,” “said purchasers downloading,” and “said purchasers storing.” There is no reason to require the “server” to perform these additional limitations, and the claim language specifies that “said purchasers” perform the downloading and storing steps. Indeed, Plaintiff acknowledges in its recent Patent Office filing that “Claim 1 recites multiple *separate* media transfer and processing steps, including … downloading” and “storing to enable marketing ….” JA 027 (emphasis added). Plaintiff cites no caselaw supporting the

proposition that a single actor must perform the entirety of Element 1(f), nor does Plaintiff identify any embodiment that allows a server to control a user's downloading and storing.

Second, Plaintiff's construction violates a basic rule of claim construction: "It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous." *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017). Plaintiff cites *Del. Display Grp. LLC v. Lenovo Grp. Ltd.* to support its position that it is permissible to construe claim language as surplusage. *See* Plaintiff's Reply § II.C.3(a) (citing No. 13-2108-RGA, 2015 WL 6870031, at *4 (D. Del. Nov. 6, 2015)). But *Del. Display* is inapplicable because it addressed a "such that" clause that described an intended result of a claim. *Id.* This rare exception to the general rule of giving all claim terms meaning does not apply here because the terms in dispute are not "whereby clause[s] beginning with 'such that.'" *Id.* To the contrary, the "said purchasers downloading/storing …" clauses describe affirmative steps attributed to "said purchasers" that produce results different from the results of the server's actions. Thus, there is no justification to construe these steps as mere surplusage.

Third, Plaintiff's arguments are wholly divorced from the intrinsic record. Relying only on unsupported attorney arguments, Plaintiff summarily concludes that a server can control a user's downloading and storing of data. Plaintiff's Reply § II.C.3(b)(i). But Plaintiff does not even attempt to support this assertion by pointing to any disclosed embodiment or explain how the claimed "server system" would be able to control the local storage of data downloaded from the server on the user's hardware. *See id.* Plaintiff's position has no support in the intrinsic record.

Plaintiff's attempt to remove "said purchasers downloading/storing …" as affirmative steps is inconsistent with the specification's disclosure. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, [they] give effect to the terms chosen

44

by the patentee."). Thus, the Court should reject Plaintiff's construction and construe these terms as active steps that must be performed by "said purchasers."

D.      "wherein the exhibition of multimedia material …"

| Disputed Term(s)/Phrase(s) | Pltf.'s Proposed Construction | Dft.'s Proposed Construction |
|---|---|---|
| "wherein the exhibition of multimedia material …" U.S. Patent No. 7,574,725, Claim 5 | Not indefinite.  The antecedent basis of "the exhibition of multimedia material" is "an exhibitor exhibiting said multimedia material" in claim 1's limitation 1.g. | Indefinite. |

1.      **Plaintiff's Opening Position**

(a)      **The term "wherein the exhibition of multimedia material" is not indefinite.**

First, the USPTO never rejected the term "wherein the exhibition of multimedia material" as indefinite even though the USPTO initially issued a rejection to other (later amended) terms as indefinite.[6]

Second, the term "exhibition of multimedia material" appearing in Claim 5 derives antecedent basis from the term "an exhibitor exhibiting said multimedia material" in limitation (g) of Claim 1.

> 1. A method of marketing and distributing multimedia, the method comprising:
> a . . . ;
> b . . . ;
> c . . . ;
> d . . . ;
> e . . . ;
> f . . . ;
> g. wherein said purchaser is an exhibitor *exhibiting said multimedia material*, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital

---

[6] The USPTO initially rejected the terms "such as" and "said product" as indefinite, but then amended those terms to facilitate prosecution.  D.I. 52-2, Ex. 2 ('725 Patent file wrapper) (Office Action dated November 28, 2005).

> format corresponding to said stored associated advertising material, being
> shown to the public at a time or in a place different from the time or place
> at which said associated multimedia material is displayed.
> . . .
> 5. The method of claim 1, wherein ***the exhibition of multimedia material***
> is the public showing of a motion picture.

('725 Patent at Claims 1 and 5) (emphasis added).

Third, even if the term "exhibition" had no explicit antecedent basis, it still would not be indefinite because "exhibition" has a reasonably ascertainable meaning. The absence of an explicit antecedent basis for one term in a claim does not automatically render an entire patent claim indefinite as long as the scope of the claim is reasonably ascertainable by those skilled in the art. *See Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) ("A claim that is amenable to construction is not invalid on the ground of indefiniteness."); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (antecedent basis can be present by implication); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001) ("the failure to provide explicit antecedent basis for terms does not always render a claim indefinite. If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite."); *Cadence Pharmaceuticals, Inc. v. Paddock Laboratories Inc.*, 886 F.Supp.2d 445, 452 (D. Del. 2012).  The specification of the '725 Patent informs the meaning of "exhibition" to those of skill in the art, for example:

> "Similarly, a plurality of exhibitors, including a movie theater 18a, a television
> station 18b, a satellite television operator 18c, a cable television operator 18d and
> a high school 18e. are also connected through cyberspace 12 to central server 16."
> ('725 Patent at 4:20-24.)

> "Referring back to FIG. 5, central server 16 examines the log on entry at step 31 to
> determine whether the individual is . . . an exhibitor who Will have product
> downloaded to his site for exhibition . . . ." (*id.* at 12:5-9.)

Here the meaning of the term "exhibition of multimedia material" is reasonably ascertainable from the content of Claim 1 and the disclosure of the '725 Patent, and therefore the term is not indefinite.

### 2.      Defendant's Answering Position

Pre-AIA 35 U.S.C. § 112, ¶ 4 requires that a "claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." Claim 5 violates this requirement and is therefore indefinite.

First, dependent Claim 5 refers to "the exhibition," but independent Claim 1 does not include an "exhibition" step. Rather, Claim 1 recites, "wherein said purchaser is an exhibitor exhibiting said multimedia material … in a public theater." '725 Patent at Claim 1. Thus, Claim 1 merely describes a characteristic of "said purchaser" as an "exhibitor" without requiring an "exhibition" step. *See id.* Accordingly, it is unclear what "exhibition" is subject to Claim 5's further limitation. Claim 5 is therefore indefinite for being inconsistent with Claim 1. *See Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1362 (Fed. Cir. 2016) (finding dependent claim indefinite under § 112 because it "is inconsistent with claim 1").

Second, to the extent Plaintiff argues that Claim 5 also describes a characteristic of "said purchaser," it is cumulative with Claim Element 1(g) and fails to specify a further limitation of Claim 1. Claim 1 specifies that "said purchaser" may be "an exhibitor exhibiting said multimedia material … in a public theater to a number of individuals in exchange for a paid admission." '725 Patent at Claim Element 1(g). A person skilled in the art would have recognized that charging admissions to watch multimedia material in a public theater is the same as a public showing of a motion picture. *See id.* Neither the patent specification nor the claims explain what type of "exhibitor" would qualify as a "public theater" exhibitor under Claim Element 1(g) but not meet the "public showing" requirement of Claim 5. Thus, Claim 5 adds nothing to Claim 1 and is

therefore indefinite for failing to "specify a further limitation of the subject matter" beyond Claim 1. *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 457 F.3d 1284, 1291-92 (Fed. Cir. 2006); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("[T]he statute stresses that a dependent claim must add a limitation to those recited in the independent claim.").

### 3.   Plaintiff's Reply Position

Defendant states that Claim 5 is indefinite because "the exhibition" is inconsistent with Claim 1. (Answering Brief § II.D.2.) In support, Defendant cites *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350 (Fed. Cir. 2016), where the court invalidated a dependent claim for contradicting an independent claim. *Id*. at 1361-62. *Multilayer* does not apply here, however, because there is no inherent contradiction between "the exhibition" of Claim 5 and the "exhibitor exhibiting" in Claim Element 1(g), and a person of ordinary skill would understand that "the exhibition" of claim 5 relates to the "exhibitor exhibiting said multimedia material" in Claim Element 1(g).

Defendant also states that Claim 5 is indefinite because it "fails to specify a further limitation of Claim 1." (Answering Brief § II.D.2.) In support, Defendant cites *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006), where the court invalidated a dependent claim—which read in its entirety "[t]he hemicalcium salt of the compound of claim 2"—because that claim 2 did not claim hemicalcium salt, thus yielding no overlapping subject matter. *Id*. at 1291-92. *Ranbaxy* does not apply here, however, because there is, in fact, overlapping subject matter between Claims 1 and 5, namely "multimedia material." Additionally, the scope of Claims 1 and 5 are not entirely coextensive because Claim 5 claims multimedia material in the form of "the public showing of a motion picture," whereas a "motion picture" is not a limitation in Claim 1.

49

### 4.      Defendant's Sur-Reply Position

Plaintiff cannot explain what Claim 5 adds to Claim 1. Does Claim 5 add an active "exhibition" step? Or does Claim 5 limit Claim 1's exhibitor to theater exhibitors? And what does Claim 5 require if a "broadcast exhibitor" practices the method described by Claim 1? Plaintiff cannot answer these questions. Thus, the scope of Claim 5 is unclear and the claim is indefinite.

First, Plaintiff does not dispute that Claim 1 lacks an active "exhibition" step; it merely defines two options for exhibitors. *See* '725 Patent at Claim 1 ("wherein said purchaser is an exhibitor exhibiting said multimedia material … in a public theater … or a broadcast exhibitor"). Because Claim 1 does not recite an exhibition step, Plaintiff cannot identify "the exhibition" that is further limited by Claim 5.

Second, Plaintiff's argument based on the phrase "motion picture" does not resolve the claim's ambiguity. While Claim 1 does not use the phrase "motion picture," it describes as one exhibitor option "wherein said purchaser is an exhibitor exhibiting said multimedia material … in a public theater to a number of individuals in exchange for a paid admission." Motion picture is just another way to describe multimedia material shown in a public theater for a paid admission. Indeed, Plaintiff argued to the Patent Office that the word "exhibition" itself "refers to the public showing of feature films in a public theater." JA 018. Thus, Claim 5's recitation of "motion picture" adds nothing new to Claim 1 and fails to "specify a further limitation of the subject matter" beyond Claim 1. *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 457 F.3d 1284, 1291-92 (Fed. Cir. 2006).

### E.    "automatically collecting sales information from exhibitor recipients …"

| Disputed Term(s)/Phrase(s) | Pltf.'s Proposed Construction | Dft.'s Proposed Construction |
|---|---|---|
| "automatically collecting sales information from exhibitor recipients …"<br>U.S. Patent No. 7,574,725, Claim 11 | Plain and ordinary meaning.  No construction necessary.  Alternatively, "collecting, by the server system, sales data from exhibitor recipients." | "requesting and receiving without any manual intervention box office receipts or television ratings from exhibitor recipients" |

### 1.    Plaintiff's Opening Position

#### (a)    No construction necessary. Plain and ordinary meaning applies.

Defendant has not explained why construction of these ordinary terms is necessary. *See Roche* at 441-42 ("More importantly, in the Court's view, [the parties] have not explained how their proposed construction is necessary to assist one of skill in the art in understanding the claims. Rather, [the parties'] proposed construction appears to be nothing more than an unnecessary paraphrasing of the ordinary word 'determine.'"); *see also Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("'Being provided to' is comprised of commonly used terms; each is used in common parlance and has no special meaning in the art. Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

Looking at the words themselves, Defendant has provided no evidence that these terms, in the year 2000, were peculiar terms of art to the technology area at issue. The terms at issue are common language that would be unambiguous to a person of ordinary skill in the year 2000 who has read the entirety of the '725 Patent.

**(b)**     **Defendant's proposed construction is incorrect.**

Even if "automatically collecting sales information from exhibitor recipients" were to benefit from a construction by the Court, Defendant's proposed construction is incorrect.

Looking at the proposed construction, "requesting and receiving without any manual intervention box office receipts or television ratings from exhibitor recipients" imposes a number of extraneous, inappropriate limitations.  Defendant has provided no persuasive basis to conclude that a person of ordinary skill in the year 2000 would read every instance in the '725 Patent of "automatically collecting sales information from exhibitor recipients" in this specific way, to the exclusion of any other reasonable construction. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009)  (The claims, not specification embodiments, define the scope of patent protection.  The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."); *Interactive Gift Express, Inc.*, 256 F.3d at 1331 ("[I]n looking to the specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification . . . into [the] claims").

To the contrary, the specification discloses multiple embodiments of how the invention stores associated materials. While it is improper to read limitations from the specification into the claims, a claim is virtually always entitled to a construction at least as broad as the embodiments disclosed in the specification. As the Federal Circuit has cautioned, a construction that would exclude the preferred embodiment of a patented invention "is rarely, if ever, correct." *Vitronics,* 90 F.3d at 1583; *see also Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1580-81 (Fed. Cir. 1996) (refusing to adopt a claim construction of "stable" that would exclude the preferred embodiment disclosed in the specification).

Regarding the types of sales information, the specification of the '725 Patent supports a variety of potential embodiments.

"The objective of the system is to use data inside the database of the web site to predict successful products . . . . Such information *may include information on previous box office, Nielsen ratings, or the like* in other cities." ('725 Patent at 10:10-17) (emphasis added).

"As is alluded to above, it is the objective of this invention to store in its database *all information respecting licensing of films and other products, their location, the time at which licensing of the same occurred, box office, and so forth* for later use in targeted advertising and in checking the accuracy of reported box office (in order to prevent fraud), and for other uses known to those in the industry." (*id.* at10:22-29) (emphasis added).

"Once the order has been placed and the account debited instantly and electronically, product may be delivered to the exhibitor. In the case of exhibition by license keyed to the box office, *historical data in the system* may be used to estimate the box office and the royalty." (*id.* at 12:57-61) (emphasis added).

Regarding the manner of collecting such sales information, the specification of the '725

Patents supports a variety of potential embodiments:

"In addition to providing multimedia to users, the server *system collects data about the users and information respecting the economics and sales success of exhibitors and broadcasters*." (*Id.* at 3:22-25) (emphasis added).

"Such statistics may include past box office in cities of various sizes, with various language use *characteristics*, and so forth, *such data being collected by the system during the course of a customer's signing up for the inventive service, and the customers using the inventive service*." (*id.* at. 15:22-27) (emphasis added).

"Follow-up database 432 [referring to Fig. 10] is periodically queried for ripe follow-up data. Ripeness may be determined by any suitable means, including fixed periods, inquiries from the customer, detection of a problem, or the like. In response to a determination that a particular sale, previously made as described above, is right for inquiry, this *information* comes from data base 432 and, in the case of a theater triggers the sending of an e-mail at step 440 or other communication to the theater requiring respecting the box office receipts. When this information is received, *the system proceeds at step 442 to record the box office receipts* and so this information to statistics database 438. In addition, the system also triggers the charging of the customers account in a second implementation of step 184." (*id.* at 15:43-56) (emphasis added).

"In similar fashion, in the case of a customer that is a television station, the most applicable ratings at the time of the airing of the product are ***checked by the system at Step 442***. The ***statistics*** are then stored at step 436 and sent to statistics database 438. Such information can be made available on demand (for example by clicking on an appropriately labeled screen button) to any person using the automated ordering system as outlined above of the present invention, or it may be 'pushed' without a customer demand (for example as a marketing tool to advertise or promote a particularly attractive product, or get a sale on a product about which the customer has already inquired about) at any point or points in the ordering cycle for multimedia product." (*id.* at 15::57–16:2) (emphasis added).

Thus, there is no justification for adopting Defendant's proposed narrow construction of "requesting and receiving without any manual intervention box office receipts or television ratings from exhibitor recipients."

> **(c)** **Alternatively, Plaintiff proposes that "automatically collecting sales information from exhibitor recipients" should be construed as "collecting, by the server system, sales data from exhibitor recipients."**

Should the Court find that a construction of "automatically collecting sales information from exhibitor recipients" is necessary, then Plaintiff proposes "collecting, by the server system, sales data from exhibitor recipients" because it comports with the structure of Claim 1 and is supported by the breadth of the specification as cited above.

### 2. Defendant's Answering Position

Plaintiff again attempts to eliminate a claim limitation—"automatically"—from the claim language, while leaving the remainder of the term ambiguous. The parties have two disputes: (1) whether "automatically collecting" requires automatic action (as Defendant contends) or encompasses manual data collection (as Plaintiff contends), and (2) whether "sales information from exhibitor recipients" refers to exhibitor-to-viewer sales (as Defendant contends) or encompasses server-to-exhibitor transactions (as Plaintiff contends). Defendant's construction is supported by the intrinsic record, whereas Plaintiff's construction alters the claim scope.

**(a)     Defendant's Construction Is Supported By The Intrinsic Evidence**

Defendant's proposed construction of "requesting and receiving without any manual intervention box office receipts or television ratings from exhibitor recipients" is consistent with the patent specification and supported by the prosecution history.

First, the '725 Patent's specification confirms that "automatically collecting" requires data collection without manual intervention. The specification explains that, "[i]n response to a determination that a particular sale … is right for inquiry," the disclosed system "triggers the sending of an e-mail at step 440 or other communication to the theater requiring respecting [sic] the box office receipts." '725 Patent at 15:46-51. "When this information is received, the system proceeds at step 442 to record the box office receipts and so [sic] this information to statistics database 438." *Id.* at 15:51-54. In other words, the disclosed system is programmed to request and receive box office receipts from a theater in response to certain trigger conditions without manual intervention. *See id.* at 15:46-54. These steps are illustrated in Figure 10 below—step 440 shows the system triggering the sending of an email to a theater, and step 442 shows the recording of box office receipts in database 438.



Figure 10

*Id.* at Fig. 10 (annotated). For the word "automatically" to have any meaning, this process must proceed without manual intervention. Thus, in the context of Claim 11, "automatically collecting" means requesting and receiving without any manual intervention.

Second, the '725 Patent makes clear that "sales information" collected "from exhibitor recipients" refers to the exhibitor recipients' sales data to their end viewers, including box office receipts and television ratings. Claim 1 defines two types of "exhibitor recipients": a "public theater" exhibitor and a "broadcast exhibitor." *See* '725 Patent at Claim Element 1(g). Neither type of "exhibitor recipient" sells products to customers in the traditional sense. For the "public theater" exhibitor, the relevant "sales information" is the "box office receipts." *Id.* at 15:46-54; *see also id.* at 10:15-17, 12:33-50, 12:57-61, 15:20-28. And for the "broadcast exhibitor," the relevant "sales information" is the television ratings data known as the "Nielsen ratings." *Id.* at 10:15-17, 11:64-12:4, 15:57-61. The '725 Patent describes collecting box office receipts and television ratings from

the exhibitor recipients and storing this sales data in a database. *See id.* at Fig. 10 (collecting "Box Office" and "TV Check Ratings" in steps 442 and storing data in "Statistical Database 438"); 15:43-61. The disclosed system then uses the exhibitor recipients' sales data to calculate royalty payments, predict success for future content, and determine advertisement strategy. *See id.* at 11:64-12:4 (charging "television exhibitors" based on "Nielsen ratings"); 12:33-37 (charging "royalty payment … keyed to box office receipts"); 10:10-17 (using "previous box office" and "Nielsen ratings" to "predict successful products" and determine "advertisements"); 12:59-61 (using "historical data … to estimate the box office and the royalty"). Thus, in the context of Claim 11, "sales information from exhibitor recipients" refers to box office receipts or television ratings from exhibitor recipients.

Third, the prosecution history supports Defendant's construction. During prosecution, the patentee amended original Claim 8 (issued as Claim 11) by adding "automatically" to distinguish the prior art. *See* D.I. 52-2 at 332, 340-43. The patentee argued that the prior art method collected data "using standard systems" "to ***mechanically*** generate royalty charges and billing information," without the capability to "gather[] market data and provid[e] that to subscribers, as in the present invention." *Id.* at 341 (emphasis added). Thus, the patentee's reliance on "automatically" to distinguish the prior art confirms that this term cannot encompass the manual collection of data.

### (b)   Plaintiff's Alternate Construction Improperly Alters Claim Scope

Plaintiff's alternate construction vitiates a claim requirement, adds a new limitation found nowhere in the claims, and leaves the remaining claim term vague.

First, Plaintiff's construction improperly deletes "automatically" from the claim language. "Claims must be interpreted with an eye toward giving effect to all terms in the claim." *Becton,*

*Dickinson & Co. v. Tyco Healthcare Group*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation omitted). Thus, adopting Plaintiff's construction would "be contrary to the principle that claim language should not be treated as meaningless." *Puma Biotechnology, Inc. v. Astrazeneca Pharms. LP*, No. 21-CV-1338-MFK, 2023 WL 2683559, at *4 (D. Del. Mar. 29, 2023) (citations omitted). Indeed, Plaintiff's construction would broaden claim scope to allow the manual collection of sales data—which was distinguished during prosecution—to qualify as "automatically collecting."

Second, Plaintiff's construction adds a new requirement—"by the server system"—without justification. The Supreme Court has long cautioned against reading "into a claim an element that is not present," explaining "if we once begin to include elements not mentioned in the claim … we should never know where to stop." *McCarty v. Lehigh Val R. Co.*, 160 U.S. 110, 116 (1895); *see also Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002) ("[A] court may not read into a claim a limitation from a preferred embodiment, if that limitation is not present in the claim itself."). Plaintiff identifies no basis for adding "by the server system" into the claim construction.

Third, Plaintiff's proposed construction does not resolve the ambiguity of Claim 11 as to what is meant by "sales information from exhibitor recipients." Plaintiff's proposed construction merely changes "sales information" to "sales data" but otherwise leaves this portion of the claim term undefined. Plaintiff's infringement allegations pointed to server download records—i.e., downloads from a server to the alleged "exhibitor recipients"—to satisfy Claim 11. *See* D.I. 47 at 2; D.I. 43 at 23. But this interpretation is illogical because the server system would already have its own download records; there is no reason to collect this information "*from* exhibitor recipients." Moreover, Plaintiff's apparent interpretation of the claim term as encompassing transactions between a server and "exhibitor recipients" is unsupported by the patent specification, which describes using exhibitors' box office and television ratings data to calculate royalty payments and

make market projections. *See, e.g.*, '725 Patent at 3:22-25 ("[T]he server system collects data about the users and information respecting the economics and sales success of exhibitors and broadcasters."); *see also id.* at 10:10-17, 11:64-12:4, 12:33-37, 12:59-61. Thus, Plaintiff's interpretation is inconsistent with the disclosed purpose for collecting "sales information." Accordingly, the Court should adopt Defendant's construction.

### 3. Plaintiff's Reply Position

#### (a) Defendant fails to show that any construction is warranted.

Defendant does not attempt to tackle the cases cited in support of Plaintiff's argument. *E.g., Summit 6*, 802 F.3d at 1283; *Roche*, 667 F.Supp.2d at 429.  Defendant also fails to point to any intrinsic evidence demonstrating that construction is necessary. *E.g., GPNE Corp.*, 830 F.3d at 1371-73; *Summit 6*, 802 F.3d at 1291; *ActiveVideo*, 694 F.3d at 1326.

#### (b) Even if construction were warranted, Defendant's proposed construction is incorrect.

Defendant is attempting to rewrite Claim 11 to be far narrower than its plain meaning indicates. First, referring mostly to figures in the specification, Defendant attempts to import limitations from the specification into the claims (Answering Brief § II.E.2(a)), which is improper as explained *supra. Phillips*, 415 F.3d at 1311, 1326-27; *Bayer*, 279 F.3d at 1348.

Second, Defendant's proposed new limitations for "requesting and receiving" are far narrower than the claimed "collecting" indicates because no definition of the verb "collecting" requires any action of "requesting."[7]

---

[7] (*Collect*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/collect); (*Collect*, Dictionary.com, https://www.dictionary.com/browse/collect); (*Collect*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/collect).

Third, Defendant's proposed re-write of "automatic" as "without any manual intervention" is so narrow as to be inaccurate. It is a matter of common sense and knowledge that an automatic process can be started by a manual intervention. For example, a car engine starts automatically after a driver manually turns the key in the ignition.

Defendant's bid to insert new, narrow limitations into Claim 11 should be rejected.

### (c) Defendant's criticisms of Plaintiff's alternative construction are unpersuasive.

First, Defendant asserts that Plaintiff's alternative construction "improperly deletes" the term "automatically" from Claim 11 (Answering Brief § II.E.2(b)), which is incorrect. Plaintiff's proposed construction construes "automatically collecting" as "collecting, by the server system." Defendant's proposed construction in contrast construes "automatically collecting" as "requesting and receiving without any manual intervention."  These proposals are not deletions of the term "automatically," they are constructions.

Second, Defendant asserts that Plaintiff's construction adds the requirement "by the server system" without justification because "Plaintiff identifies no basis for adding" the requirement. (Answering Brief § II.E.2(b).) However, the basis for this proposed construction is found in Claim 1, from which Claim 11 depends, which claims the step of "providing a server system . . . ." ('725 Patent at 16:47.) Another basis is found in the specification. (*Id*. at 3:22-25 ("[T]he server system collects data about the users and information respecting the economics and sales success of exhibitors and broadcasters.")

Third, Defendant asserts that Plaintiff's construction does not resolve the ambiguity in the phrase "sales information from exhibitor recipients" (Answering Brief § II.E.2(b)), but nowhere has Defendant established that this phrase is, in fact, ambiguous to one of skill in the art. *Summit 6*, 802 F.3d at 1291.

Finally, Defendant's assertions regarding the functioning of the server system are merely attorney arguments concerning factual issues without evidentiary support. *E.g., Impax*, 893 F.3d at 1380; *Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1401, 1406-07 (Fed. Cir. 2014).

If the Court elects to construe this term, then it should adopt Plaintiff's alternative construction because it is more consistent with the use of the term in the actual claim language than Defendant's construction.

### 4.      Defendant's Sur-Reply Position

#### (a)      Plaintiff Does Not Dispute Defendant's Construction of "sales information from exhibitor recipients"

Plaintiff's Reply presents no argument against construing "sales information from exhibitor recipients" as exhibitor-to-viewer sales, including "box office receipts and television ratings from exhibitor recipients." Indeed, Plaintiff acknowledges the scope of such sales information in its recent Patent Office filing when it referred to gathering "sales information" and "market data" related to the exhibitor-to-viewer sales, not server-to-exhibitor transactions. *See, e.g.*, JA 014 (explaining that the '725 Patent covers "video-on-demand viewer-billing structures … for the gathering of market data"); JA 017 ("Claim 11 recites automatically collecting sales information from exhibitors, and providing sales and marketing data, specific to multimedia films, to potential customers [i.e., other exhibitors, not consumers] based upon information from the exhibitors."). Thus, the Court should construe "sales information from exhibitor recipients" as "box office receipts or television ratings from exhibitor recipients."

#### (b)      The Court Should Adopt Defendant's Construction of "automatically collecting …"

The remainder of this claim term requires construction because the parties dispute whether: (1) "automatically collecting" requires automatic action; and (2) the "sales information" must be

collected by "the server system." *O2 Micro*, 521 F.3d at 1360 (requiring the court to resolve "actual dispute[s] regarding the proper scope of [a claim term]").

First, Plaintiff incorrectly construes "automatically collecting" as encompassing the manual collection of data. *See* Plaintiff's Reply § II.E.3(b). Plaintiff's analogy that "a car engine starts automatically after a driver manually turns the key in the ignition" is illogical. *Id.* If a driver manually turning a key constitutes "automatically" starting a car, then it is unclear how one would manually start a car. In the context of the '725 Patent, Plaintiff's interpretation would allow a person manually sending an email or making a phone call to be acts of "automatically collecting" information. This interpretation is inconsistent with the '725 Patent's teaching. The specification confirms that "automatically collecting" requires data collection without such manual actions. *See* '725 Patent at 15:46-51 ("In response to a determination that a particular sale … is right for inquiry," the disclosed system "triggers the sending of an e-mail at step 440 or other communication …."), Fig. 10. In other words, the disclosed system is programmed to send an e- mail request in response to certain trigger conditions without the need for any manual intervention. Thus, "automatically collecting" should be construed as "requesting and receiving without any manual intervention" within the context of the '725 Patent.

Second, Plaintiff presents no basis to dispute that the process of "collecting" information must include a request for information. Plaintiff relies on extrinsic dictionary definitions unrelated to the relevant technology and divorced from the intrinsic record. *See Phillips*, 415 F.3d at 1321 ("[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification."). Looking at the patent specification, every embodiment of the '725 Patent related to "collecting" sales information

from the exhibitors starts with a request. *See* '725 Patent at 15:46-56 ("trigger[ing] the sending of an e-mail at step 440 or other communication to the theater requiring respecting the box office receipts" and "receiv[ing]" and "record[ing]" that information); *id.* at Fig. 10 (showing step 440 "If Theater Send E-mail"). Because "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct," "collecting" should be construed as "requesting and receiving" within the context of the claim. *Accent Packaging*, 707 F.3d at 1326.

Third, Plaintiff adds a new limitation—"collecting, by the server system"—without any intrinsic support. Plaintiff argues that Claim 1 recites a "server system" (Plaintiff's Reply § II.E.3(c)), yet it fails to identify any claim language linking Claim 1's "server system" to Claim 11's step of "automatically collecting sales information." '725 Patent at 16:47, 17:33-38. Thus, Plaintiff's construction improperly deletes "automatically" and adds a different limitation from a disclosed embodiment without any support to show that the limitation is present in the claim itself. *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002) ("a court may not read into a claim a limitation from a preferred embodiment"); *Becton, Dickinson & Co. v. Tyco Healthcare Group*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (requiring "giving effect to all terms in the claim").

Thus, the Court should construe the term as "requesting and receiving without any manual intervention box office receipts or television ratings from exhibitor recipients."

Dated: August 14, 2024

SMITH KATZENSTEIN JENKINS LLP

/s/ Daniel A. Taylor
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

Of Counsel:

John C. Carey
CAREY RODRIGUEZ LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 372-7474
jcarey@careyrodriguez.com

Attorneys for Plaintiff

RICHARDS, LAYTON & FINGER, P.A.

/s/ Jason J. Rawnsley
Jason J. Rawnsley (No. 5379)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
rawnsley@rlf.com

Of Counsel:

O'MELVENY & MYERS LLP
Xin-Yi Zhou
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
vzhou@omm.com

O'MELVENY & MYERS LLP
Patric Reinbold
1625 Eye Street, NW
Washington, DC  20006
preinbold@omm.com

Attorneys for Defendant