JOINT APPENDIX

UNITED STATES PATENT AND TRADEMARK OFFICE
———————————————————

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**
———————————————————

DISNEY MEDIA & ENTERTAINMENT DISTRIBUTION LLC,
Petitioner,

v.

DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC,
Patent Owner.

———————————————————

Case No. IPR2024-00736
U.S. Patent No. 7,574,725

———————————————————

**PATENT OWNER'S PRELIMINARY RESPONSE**

## <u>Table of Contents</u>

Page(s)

I. INITIAL STATEMENT......................................................................1

The Invention................................................................................1

Background....................................................................................1

Seven Searches in USPTO Failed to Support a Rejection...........................3

Video-On-Demand Patents Irrelevant to Distribution and Are Cumulative............4

Secondary Ground Relates to Remote Videocassette Manufacture........................6

II. INTRODUCTION..........................................................................7

A. The Claimed Invention.................................................................7

Meaning of "Distribution" and "Exhibition" in the Theatrical Exhibition
Business......................................................................................9

Petitioner Proposed References Are Not in the Relevant Field...............9

Data-Gathering/Dissemination Functions Missing..................................10

Alternative Prior Art Deals with Remote Manufacture...........................10

B. No New Art or Arguments..............................................................11

C. No Error by Examiners................................................................12

D. Person of Ordinary Skill in the Art.................................................12

III.  GENERALLY WEAK NEW ART FAILS TO CREATE REASONABLE
LIKELIHOOD THAT PETITIONER WILL PREVAIL ON ANY
CLAIM......................................................................................15

A. Art Asserted by Petitioner Fails to Meet Claim 1..............................15

(i) Garfinkle in View of Kosten......................................................15

Garfinkle Is a Simple Video-On-Demand System with Access to Product
Information..................................................................................15

Garfinkle's Video-On-Demand Not a "Method of Marketing and Distributing"...16

Marketing Is Broad Communication, Not One-On-One Order Fulfillment............16

Garfinkle Irrelevant to "Distribution" As Used in Movie Industry........................17

Garfinkle Does Not Disclose a Marketing Method Including Exhibition..............17

Exhibition to Persons Other Than Purchaser...........................................................18

Garfinkle's Focus Is Lead-Ins as Filler during Download of Feature Film............18

Garfinkle Does Not Disclose Marketing Use of Correlated Advertising...............19

Garfinkle Does Not Disclose Recited Use of Associated Advertising Material.....19

Kosten Does Not Remedy the Deficiencies of Garfinkle........................................20

Kosten and Garfinkle Disclose File Transport, Not Marketing Showing to
Public......................................................................................................................21

Kosten's Standalone Billboard Advertisement System Is Irrelevant to Claim
1..............................................................................................................................21

Claim 1 (preamble): "A method of marketing… multimedia"................................22

Claim 1 (preamble): "A method of… distributing multimedia"............................22

Claim 1(a): "said advertising material being associated with said multimedia
material".................................................................................................................24

Fields Are Not Associative Marking......................................................................24

Claim 1(b): "storing said multimedia… and associated advertising
material… as correlated information"....................................................................25

Claim 1(d): "providing samples of said correlated information"...........................25

Indication That Item Is a Trailer Is Not Indication of Correlation........................26

Claim 1(e): "providing samples of said correlated information"...........................27

Claim 1[f]: providing said correlated information… corresponding
to said [associated] advertising material… to said purchasers…,

allowing purchasers to locally market and sell said multimedia
material"........................................................................................................27

Relied-upon Dissertation Devoid of Language Relating to Expert's Conclusory
Statement......................................................................................................27

Petitioner's Conclusory Assertions That "a POSITA Would
Have Been Motivated to Use Kosten's Theater As a 'User Site'
in Garfinkle's System" Is Utterly Meritless...........................................28

Claim 1(g): "exhibiting said multimedia material… from
said stored correlated information"..........................................................29

Claim 1(g): "exhibiting said multimedia material… in a
public theater to a number of individuals"...............................................29

Claim 1(g):  "exhibiting said multimedia material… from said
stored correlated information … at a time or in a place different
from the time and place at which said associated multimedia material is
displayed"...................................................................................................30

Point of Garfield Is Using Economical Low-Speed Transmission Systems...........31

Garfinkle Explicitly Teaches against Petitioner's Combination with Kosten........31

Garfinkle's Time Filler and Kosten's Satellite Are Mutually Exclusive...............32

Redefined Terms and Combinations the Art Teaches against
Do Not Meet the Recitation of Correlated Items in
Claim 1 respecting Showing and Marketing...........................................32

Only Selection of a Video Is Involved in Garfinkle, Not Marketing.....................33

Petitioner Equates "Exhibition" to Billboard Receiving Random
Advertisements...........................................................................................33

The Absence of Even a Marginally Reasonable Combination
Attests to Patentability at the Time the Invention Was Made................34

(ii) Allen in View of Budow Also Fails against Claim 1.......................................35

(a) Allen's Remote Manufacturing System Is of Record........................................35

(b) Allen Does Not Involve "Distribution" As the Term Is Used in the Movie Industry.................................................................................................................36

Allen Provides for Remote Manufacture of Video Recordings.............................36

(c) Budow Is a Simple Video-on-Demand of the Type Installed in Hotels............37

Petitioner Strains Interpretation of Claim Language and Glosses over Differences.............................................................................................................38

Neither Allen nor Budow Disclose Claimed Associative Data Use.......................39

Petitioner's Characterization of Budow Is Completely Unsupported....................40

Petitioner's Characterization of Timing of Advertisements in Budow Is Fictitious..................................................................................................................40

Budow's Fails to Meet the Time and Place Marketing Recitations of Claim 1......41

Alleged Advantages of a System Are Irrelevant to Motivation to Combine...........41

Combining Video-On-Demand and Remote Manufacturing Nonsensical..............42

Tracking Sales in the Context of Distribution Not Remotely Suggested by Allen.43

Allen Is Devoid of The Recited Subsequent Use of Advertising Material.............43

(iii). Garfinkel, Kosten, Allen and Budow Fail against Claims 4-7, 9 and 11........44

IV. ABSENSE OF NEW PRIOR ART AND ARGUMENT, AND ABSENSE OF MATERIAL ERROR MILITATES AGAINST INSTITUTIONS........................44

A. Garfinkle and Kosten Don't Raise a New Issue Respecting Claim 1 (Ground 1)............................................................................................................................45

Disclosure by Garfinkle of Advertising and Multimedia Is Cumulative.................45

Hunter's Disclosure Is Strikingly Similar to Garfinkle Elements Cited by Petitioner.................................................................................................................46

Cost Savings Taught by Hunter.............................................................................46

Alleged Provision of Samples by Garfinkle Is Cumulative.................................. 46

Garfinkle's Disclosure Respecting Sampling Inferior to Bernard Cited by USPTO..................................................................................................................47

Downloading Multimedia- Element 1(e)..................................................................47

Petitioner Proposes Inferior Garfinkle Patent.........................................................47

"Allowing purchasers to locally market and sell" (Element 1f).............................48

Potential Purchaser Exhibitor Showing Advertising at Different Time or Place- 1(g)..........................................................................................................................49

Exhibition Is Not a Private Video-On-Demand Showing.......................................49

Marketing................................................................................................................49

Kosten Satellite Link Adds Nothing to Garfinkle and Fails As New Argument....50

B. Allen's Point-Of-Sale Manufacture in view of Budow (trunk and branch video on demand is cumulative Respecting Claim 1 (Ground 3)...........................................................................................................................50

Budow Storage Is at the Central Server.................................................................51

Rewriting Allen.......................................................................................................53

Cable Company Not Purchaser..............................................................................54

Hunter's Purchaser Is Exhibitor, but Allen and Budow Disclose Viewer-Customers.............................................................................................................55

Allen's Kiosks Not More Than Hunter's "Displays… in High Traffic Areas".....................................................................................................................55

C. Claim 4: "server system, accessed over a public communications system" Grounds 1 and 3.............................................................56

D. Claim 5: "exhibition of multimedia material is a public showing of a motion picture" Grounds 1 and 4............................................56

E. Claim 6: "providing a search function for said multimedia

material and said associated advertising material" - Grounds 1 and 3....................57

F. Claim 7: "advertising material comprises a motion picture
with accompanying synchronized sound" (Grounds 1 and 3)................................58

G. Claim 9: "advertising… comprises… motion picture trailer
or coming attraction… segment with accompanying sound"- Grounds 1 and 3.....59

H. Garfinkle, Kosten and Allen Are Cumulative - Claim 11 (Ground 2).............60

Market Analysis of Sales/Promotion Reported Is Not a New Argument...............60

I. Allen and Budow Are Cumulative Respecting Claim 11 (Ground 3).................61

Demographic Information Doesn't Raise New Issue of Patentability...................61

Economies of Electronic File Transfer Were in Art by USPTO............................62

J. Allen and Budow Don't Raise Anything New on Claim 11 (Ground 3)............63
Petitioner's Mischaracterization of Claims Fails to Raise Genuine New
Argument.......................................................................................................63

No New Argument: Substance of Allen Accounting Engine before USPTO.........64

K. No Office Error Has Been Identified..................................................................65

Reasons for Allowance Do Not Refer to Allen......................................................65

V.  CONCLUSION....................................................................................................65

A. The References Either Alone or in Combination Do Not
Anticipate or Render the Claims Obvious and There IS NO Reasonable Likelihood
of Prevailing......................................................................................................65

B. Cited Art and Arguments Advanced Are Substantially the Same as Those before
the Examiners during Prosecution......................................................................66

C. No Office Error Has Been Identified..................................................................67

CERTIFICATE OF WORD COUNT.....................................................................69

CERTIFICATE OF SERVICE................................................................................70

# <u>Table of Authorities</u>

Page(s)

*Advanced Bionics, LLC v. MEDEL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 8 (PTAB Feb. 13, 2020)………………………………….43

JA 008

**List of Exhibits**

| Exhibit No. | Description |
|:---:|:---|
| **2001** | U.S. Patent No. 5,918,213 ("Bernard") |
| **2002** | U.S. Patent Publication No. US 2002/0162113 A1 ("Hunter") |
| **2003** | U.S. Patent Publication No. US 2004/0093608 Al ("Sprogis") |

JA 009

## I. <u>INITIAL STATEMENT</u>

<u>The Invention</u>

U.S. Patent No. 7,574,725 (the "Patent") discloses apparatus for the marketing and delivery of multimedia feature films from studios to movie theaters in the movie "distribution" business, and the marketing and display of films to the viewing public. The present proceeding concerns *inter partes* review of method claims 1, 4, 5, 6, 7, 9 and 11. The invention in the Patent (the "Invention") also facilitates presentation of related advertising materials (shown at a different time or place than the movie), such as trailers, to the general public, and gathering information from and providing information to theatrical exhibitors.

The Patent was filed by Nick Stiliadis over 24 years ago, during the faltering infancy of file transport over public digital communications systems. At the time of the invention, Stiliadis, a filmmaker by training, was producing action/adventure films and working as the CEO of a not-unsubstantial company which distributed and continues to distribute Hollywood feature films to theatrical exhibitors throughout the world.

<u>Background</u>

Surrounded, as we are today, by ubiquitous applications of publicly accessible network technology in virtually every field of human endeavor, some

1

may be tempted to discount the creativity of the innovators who brought us to this point. It is easy to forget that a century went by before, in 1938, scientists recognized that George Boole's binary algebra could be practiced mechanically[1], sounding the deathknell of decimal computing. A good reminder of how hard it sometimes is, in the present, to recognize the non-obviousness of an idea at the time of conception, none other than Konrad Zuse, who had invented the first floating-point binary digital (albeit mechanical) computer in 1938, derisively scoffed at the idea of using electronic devices in place of relays in his invention, calling it a "Schnapsidee" (drunken idea)[2]. Notwithstanding the existence of such advanced digital tools as modern floating-point binary digital technology in 1938, the first crude forms of bandwidth compression, at the heart of moving multimedia files in accordance with the Patent, remained wholly in the analog realm until 1969[3]. Another thirty years later, and just a few months before the priority date of the Patent, compression had only progressed to a point where it was only one of several delivery alternatives being considered by persons "debat[ing] what… form… shipment is going to take for digital cinema." Ex-1007, Schoenfeld, W., *Digital Cinema Forum*, 102 *Film Journal International*, September 1999, p.52.

---

[1] Shannon, C.E., *A Symbolic Analysis of Relay and Switching Circuits,* Transactions American Institute of Electrical Engineers, Vol. 57 (1938).
[2] Accessed at https://en.wikipedia.org/wiki/Konrad_Zuse
[3] Handal, A.H., *Delta Modulation*, Polytechnic Engineer, February 1969

2

Significantly, as stated by Schonfeld a few months before Petitioner's priority date, the "phenomenal" amount of data in a digitized film was a "real" and "meaningful technological issue," and "[w]hoever implements electronic cinema is going to have to wrestle with this issue of data movement," again demonstrating that implementation of digital cinema was far from a solved problem at the time of the invention. *Id*.

Seven Searches in USPTO Failed to Support a Rejection

Petitioner relies upon paired ***video delivery*** references dealing with remote videocassette manufacture, theatrical display and video-on-demand, cobbling together portions of the references no better than those before the Examiners during the prosecution.

Any assertion that the Invention at issue was obvious goes against the evidence. The Examiners in the USPTO performed seven searches (including five updates). Applicant supplemented this with about two dozen references, including art relied upon by the USPTO.

Moreover, one of Petitioner's principal references, dealing with the different field of videocassette manufacture, was found and noted by the Examiner, though not formally cited. Unsurprisingly, no single reference is alleged to anticipate or make obvious Claim 1, the broadest claim at issue. Certainly, it can at least be said

that Petitioner has not shown that there is a reasonable likelihood that Petitioner would prevail with respect to any of the claims challenged in the petition. ***None*** of the references relied upon by Petitioner even deal with technology capable of operating in the movie distribution business.

Also fatal to the Petition, the features of Petitioner's references (which Petitioner contends would be obvious to assemble to re-create the Invention) are not even as close to the Invention as the art cited by the Examiners, no substantially different arguments are advanced by Petitioner, and the Office made no error.

<u>Video-On-Demand Patents Irrelevant to Distribution and Are Cumulative</u>

The primary reference cited by Petitioner in its first alleged ground, Garfinkle (Ex-1005), relates to a video-on-demand system where the hiatus of download time is filled by, for example, playing an introduction previously downloaded onto the hard drive of the customer. Garfinkle relates to a system where the customer ***end-user views*** advertisements in the course of purchasing a viewing (Ex-1005, 1:63-67).

While Petitioner tries to bend several superficial features of Garfinkle's viewer video-on-demand system into the mold of the Invention's exhibitor film transport, marketing and market data collection, this fails to meet Claim 1.

4

Petitioner seeks to remedy this issue by citation of the article to Kosten (Ex-1007). But, Kosten only shows straight-through delivery of multimedia from a studio to a network retransmission point for retransmission via satellite to a movie theater. Regardless, Garfinkle and Kosten add nothing that wasn't already in the art of record. See Bernard (U.S. Patent No. 5,918,213, Ex-2001, Abstract,) which shows purchasing of multimedia, with Internet movie previews and samples, and Hunter which is specific to Internet delivery of multimedia to digital cinemas (U.S. Patent Publication No. US 2002/0162113 A1, Ex-2002, Abstract, ¶0013, ¶0024-30).

Significantly, Petitioner does not suggest that either Garfinkle or Kosten had a workable solution for the distribution business. Rather, the contention is that the claimed data structure, downloading and storage enabling marketing of multimedia in the film distribution business is supposedly obvious if one reimagined Garfinkle with the thought in mind that there is such a thing as the movie distribution business, that there can be a secondary use of advertising material, that the reuse can be at a different time or place, that viewing by the end-user can be replaced by exhibitor subsequent showing, and that video-on-demand viewer-billing structures can be reengineered for the gathering of market data. Respectfully, the contention is a bridge too far.

<u>Secondary Ground Relates to Remote Videocassette Manufacture</u>

Lacking any solid basis for going forward based on Garfinkle, Petitioner tries taking a second shot, this time betting on a patent to Allen (Ex-1006). But, the infrastructure of Allen (which was seen and noted by the Examiner during the prosecution) is incapable of assisting the distribution and marketing of feature film. Rather, Allen discloses a system for remotely accessing a centrally-located feature film file from a retail point-of-sale, for on-demand ***manufacture*** of videocassette recordings at the point-of-sale, for example a kiosk where trailers and promotional materials may be viewed when the customer visits the kiosk to make a purchase. Ex-1006, 21:26-33.

While Allen also suggests his system can broadcast film to a video-on-demand user instead of recording it on a videocassette, this also is irrelevant to downloading and storage, which enable showing of advertising after the download. Indeed, later showing of stored advertising is completely irrelevant to Allen's transactions with an end-user consumer.

Given the unrelatedness of the art, it is not surprising that the features argued bear only superficial resemblance to elements of Claim 1. For example, Petitioner argues modification of "retail level… revenue accounting, customer demographic information database, support inventories and… financial accounting" for

6

monitoring "individual financial data, sales results and promotional results from the retail level."

But this doesn't read on Claim 1, which recites gathering, from multiple exhibitors, and dissemination to exhibitors of marketing data. Ex-1006, 10:43-48. Attempting to shore up gaps in Allen, Petitioner adds disclosure from Budow, wishfully arguing that the broadcasting of advertisements ***to an individual viewer*** on an independent schedule or in response to viewer viewing habits is a disclosure of showing of a trailer to moviegoers at a time or place different from the showing of the associated movie. Ex-1008, 13:22-35.

## II. <u>INTRODUCTION</u>

### A. <u>The Claimed Invention</u>

U.S. Patent No. 7,574,725 to Stilliadis is drawn to infrastructure and methods for implementing marketing and delivery functions in the film distribution and exhibition business.  Mr. Stilliadis is an award-winning producer of feature films, and for many years has also operated a film distribution business marketing hundreds of Hollywood productions.

JA 016

Claim 1, the only independent claim at issue, is drawn to a method comprising the combination of a) receiving both multimedia (e.g., a feature film) and associated advertisements using a server, and b) storing them as correlated information in computer readable storage. Advertisements comprise audio and video components. A c) server system accesses the correlated information and transmits it to purchasers over a network such as the Internet. The server system also (d) provides samples of the correlated information to potential purchasers over the network. Upon request of the purchasers, (e) multimedia is downloaded to and stored for the purchasers. The server system provides advertisements over the network to purchasers, allowing purchasers to use them to market and sell multimedia in the locality of the exhibitor. The purchaser is (g) a broadcast exhibitor or shows the multimedia in a public theater to a number of individuals. The advertisement is shown at a time or place different from that of its associated multimedia.

The dependent claims recite other aspects of the invention. For example, Claim 11 recites automatically collecting sales information from exhibitors, and providing sales and marketing data, specific to the multimedia films, to potential customers based upon information from the exhibitors.

JA 017

Meaning of "Distribution" and "Exhibition" in the Theatrical Exhibition Business

In the film business, "distribution" is defined as the process of marketing a film and supplying copies to exhibition venues. "Exhibition" refers to the public showing of feature films in a public theater. Rather than enabling time and or location variable marketing, file storage, information collection, information dissemination and distribution functions, as the Invention does, the references relied upon disclose only file transfer, remote manufacturing for retail sale and video-on-demand applications. Petitioner's attempt, to redefine these widely and well-understood industry terms as "file transport," and "display" on a personal device, goes against the plain meaning of the terms in the everyday parlance of the industry and the public at large.

Petitioner Proposed References Are Not in the Relevant Field

Petitioner cites Garfinkel in view of Kosten. But Garfinkle is a video-on-demand system focused on making long download times to viewers less noticeable by playing a lead-in (previously downloaded on the customer's drive) while the download is in progress. None of the above limitations dealing with information transfer or showing of the film or advertising material for marketing is found in Garfinkle.

9

Data-Gathering/Dissemination Functions Missing

Likewise, Garfinkel does not show or suggest the gathering of marketing data from exhibitors and/or providing the same to exhibitors. Indeed, Garfinkel does not even involve exhibition as the term is used in the movie industry. Nor does it involve distribution as that term is used in the film business. Petitioner's attempt to use Kosten to remedy these deficiencies is completely inadequate, because Kosten, completely irrelevantly to these inadequacies, merely shows a straight through satellite-based transmission of multimedia film to a theater. This falls far short of the marketing, distribution and exhibition recitations of Claim 1. Petitioner's contentions relating to the film exhibition business based on Kosten and Garfinkle are nothing more than hindsight.

Alternative Prior Art Deals with Remote Manufacture

Petitioner proposes, alternatively, Allen in view of Budow. B*both* patents do *not* deal with film distribution or exhibition. Allen discloses the manufacture of feature film videocassettes at a retail outlet using the digital version of the film at a central server, something completely unrelated to the marketing and distribution taught by the Patent. Similarly, Budow does not remedy this deficiency, because it merely discloses a trunk and branch network installed in a hotel to deliver various video products and advertisements. While Allen does make a glancing mention of

10

applying the system to video-on-demand, it still falls far short of the distribution, marketing, information and exhibition aspects of the Invention.

Likewise, while Allen stores advertisements and feature films in a relational database at the server, this does not anticipate the recitations of claim 1 dealing with local storage, and information collection and dissemination. Moreover, Allen is limited to manufacturing and video-on-demand home applications with real-time viewing of the video. See Allen 27:31-36.

While Allen does speak of showing advertising to the consumer, this does not allow marketing by exhibitors. In Allen, the consumer does not resell product. The failure of Allen i.v.o. Budow is underscored by Allen's limitation of storage to the system server 12, the systems control computer 13, or the graphics engine 204, all of which are outside of the non-exhibitor customer's hotel room. Ex-1008, 11:12-13, 50-55.

## B. No New Art or Arguments

As generally noted above, Petitioner has chosen to rely upon art completely unrelated to key aspects of the claims. It rewrites and supplements content with expert affidavits, redefines plainly understandable terms and then argues combining elements of the prior art. However, perhaps most importantly, the various elements which Petitioner combines in his argument against the claims

11

were *all* before the Examiners during the prosecution of the Patent. Indeed, the elements of the prior art before the Examiners were in some respects closer than the newly cited art uncovered by Petitioner. Accordingly, the Board in its discretion should deny institution.3

## C. No Error by Examiners

Indeed, respecting the required showing of error to avoid discretionary denial, Petitioner only points to a statement by the Examiner generally relating to the "state of the prior art" and then says that the Examiner's general statement relating to the state-of-the-art does not accurately describe a detail in a patent to Allen (Ex-1006). Allen deals with remote manufacturing of videocassettes, which was found during searching but understandably not relied upon, clearly because it does not even deal with the field of the Invention. The incoherency of Petitioner's position is apparent on its face.

## D. Person of Ordinary Skill in the Art

Underpinning our patent law are strong public policies in favor of promoting the progress of science and the useful arts by providing the incentive of a time-limited monopoly to persons working in various fields of endeavor. To be fully effective, incentives are offered, *inter alia*, to persons working in the relevant field,

12

who are often the persons most likely to recognize where progress can be made, thus advancing the Constitutional objectives.

Viewed another way, if the constitutional objective of Article 1, §8 is to be realized, the incentive must be functional in the industry of the invention. Consequently, the question of obviousness is gauged against the skill of a person of ordinary skill in the relevant art. In the present matter, only persons working in the film distribution business would be aware of the existence and scale of the problems created by conventional manufacture and movement of feature films, such as film replication issues, its labor-intensive nature, delays, damage, costs and so forth, not to mention the nature of the work which is done by the exhibitor. Only persons working in film distribution would be in a position to recognize problems and the elements needed to solve them and result in progress.

Furthermore, only such a person would see the big picture and recognize how additional elements would synergistically feed into a solution to the film transport operation. For example, in the present matter, the Invention synergistically supports not only film transport, but the gathering and dissemination to customers of marketing data, as well as transport of associated items such as posters, trailers and so forth.

13

A POSITA would be familiar with the multifaceted nature of the mechanics of film distribution, including functions of film reproduction laboratories, the very different nature of the business of movie poster printing, the various different sets of steps executed by movie theater exhibitors in using paper posters, splicing trailers into exhibition programs, mechanically reconfiguring such programs from week to week, and the cost of and frequency with which such work would have to be done.

Petitioner proposed a POSITA who is an electrical engineer with one year experience, a person who would have no ability to even recognize the need for progress which underpins Article 1, §8, let alone the nature of exhibition, marketing and the requirements of the same. Gauging questions such as obviousness from the viewpoint of such a person outside the relevant art, would disincentivize those very persons most likely to promote progress by recognizing problems needing solutions, the full dimension of industry needs, and who could structure an inventive solution.

Moreover, of course, there is no provision in the law imposing a different (or multiple) standards of patentability for inventors whose innovations might benefit from input from persons having skills outside the skillset of persons working in the industry in which the invention is made.

14

A proper definition of the relevant POSITA would be a person who has a Bachelor of Science Degree in Entertainment Business, or a similar field, and at least one year of experience in the field of film distribution, including marketing and sales.

## III. GENERALLY WEAK NEW ART FAILS TO CREATE REASONABLE LIKELIHOOD THAT PETITIONER WILL PREVAIL ON ANY CLAIM

### A. Art Asserted by Petitioner Fails to Meet Claim 1

(i) Garfinkle in View of Kosten

Garfinkle Is a Simple Video-On-Demand System with Access to Product Information

Garfinkle merely discloses a "video-on-demand system" (of the type that might be used in the home or by a hotel room occupant) not the "method of marketing and distributing multimedia" of Claim 1 of the Patent. It is a system for providing media to end-users and not involving marketing to third parties, let alone showing in a facility capable of exhibition to the public.

Petitioner's attempt to force Garfinkle's simple video-on-demand system into the mold of the inventive marketing system is incomplete and meritless.

15

Kosten is equally lacking in content, being limited to the disclosure of a straight through transmission of a file from the studio, through an intermediary to a theater via a satellite connection.

Garfinkle's Video-On-Demand Not a "Method of Marketing and Distributing"

In contrast to Garfinkle, Claim 1 recites marketing by downloading advertisements, such as coming attractions trailers, from studios to movie houses for display to the public. In Garfinkle, the person receiving the trailer views it directly while he is making his purchase. There is no showing to the public at a time and a place different from that at which the associated multimedia (e.g. feature film) is displayed.

Marketing Is Broad Communication, Not One-On-One Order Fulfillment

In Garfinkle, the disclosure is limited to a system where a consumer end-user views material related to a film that the consumer is considering purchasing. This has nothing to do with the broad communication involved in marketing movies which require storage and subsequent dissemination to wide audiences, for example by exhibiting a coming attractions film to audiences in public movie theaters.

16

Garfinkle Irrelevant to "Distribution" As Used in Movie Industry

Claim 1 is limited to marketing and distribution of multimedia material, such as feature films. In the movie industry, the term "distribution," is defined as "distribution… to exhibitors and broadcasters" and specifically relates to "[o]ne of the three branches of the film industry; the process of marketing the film and supplying copies to exhibition venues." University of West Georgia, *Glossary of Film Terms*, available athttps://www.westga.edu/academics/university-college/writing/glossary_of_film_terms.php, accessed June 14, 2024. Display to a single viewer as in Garfinkle is completely unrelated to distribution, let alone marketing by exhibition to the public. While Petitioner argues use of trailers and lead-ins in Garfinkle, the same have the technical function of filling time during download, or, perhaps merely providing information to a single person considering purchase of a movie, to assist in a purchase decision. Regardless, this is in response to a consumer request, not as part of an exhibition, as claimed.

Garfinkle Does *Not* Disclose a Marketing Method Including Exhibition

Petitioner argues that Garfinkle's system "*supports* previewing and transferring video," and then builds on that to conclude that Garfinkle "*discloses*" the inventive "method of marketing and distribution." But this bald assertion, besides being logically unsupportable, ignores the reality.

17

<u>Exhibition to Persons Other Than Purchaser</u>

Garfinkle merely discloses a video-on-demand system with a database of multimedia items and a catalog. The disclosure is limited to providing a trailer to a potential viewer to enable a product buying decision. This is fundamentally different from an advertising trailer or spot being shown to persons other than the potential purchaser. Garfinkle's provision of the trailer goes no further than the person who looks at it. A video on demand system with a catalog does not meet Claim 1.

Claim 1 recites multiple separate media transfer and processing steps, including providing samples, downloading a multimedia product, providing correlated advertising material and storing to enable marketing, not to mention marketing information exchange with potential purchasers. None of this is taught by Garfinkle.

<u>Garfinkle's Focus Is Lead-Ins as Filler during Download of Feature Film</u>

While Garfinkle does provide for storage of lead-ins, stored lead-ins are only played back and not shown to third-party purchasers. More particularly, in Garfinkle, when the customer selects a feature film, a lead-in stored on the customer's computer is played while the system downloads the feature film which is spliced onto the end of the lead-in for an uninterrupted display which begins

18

upon selection of the feature film. Exhibit 1005 4:13-2. This eliminates what would otherwise be an unacceptable hiatus between selection of a product and the beginning of its display. Ex-1005 1:66.

Garfinkle Does Not Disclose Marketing Use of Correlated Advertising

Claim 1 recites "providing said correlated… advertising material… associated with said multimedia… [allowing] purchasers to locally market and sell said multimedia." Garfinkle is completely silent with respect to this element of the claims, or, for that matter, anything which allows the purchaser to market in his locality. This is hardly surprising because Garfinkle's purchaser is not an exhibitor, but an end-user consumer watching the film, again underlining the insufficiency of Garfinkle.

Garfinkle Does Not Disclose Recited Use of Associated Advertising Material

Claim 1 recites that "advertising material… [is] shown to the public at a time or in a place different from [that of its] associated multimedia [feature]." In Garfinkle, the only showing of the feature is to the purchaser.

Moreover, in Garfinkle, while data on each video product is stored in data fields, the function of the data fields is largely unspecified except for its inclusion of flags which are not disclosed as relating exclusively to association and which may be responsive to search keys. Ex-1005 3:40-49; Fig.2. This leaves definition

19

of what constitutes an association to the user. Petitioner's contending that "[b]ecause… data fields indicate… content associated with each video product and identify their locations, they associate each video product with its related content," is a *non-sequitur* and defective on its face.

Kosten Does Not Remedy the Deficiencies of Garfinkle

Petitioner purports to address Garfinkle's failings with the Kosten magazine article. But Kosten is nothing more than a disclosure of a straight-line transmission of a studio-originated feature film via a service provider (CyberStar) through a satellite link to a theater.

Stiliadis' Invention addresses longstanding needs to reduce costs in the film distribution industry. Indeed, Kosten underscores the patentability of Claim 1, detailing the financial incentive to digitally transport a feature film ($2000-$3000 per print for thousands of prints and shipping), running up into millions of dollars per film, as much as 75% of which could be saved by Kosten's simple straight line satellite transmission. Exhibit 1007, 0006-7. While Kosten does mention "targeting… trailers and ad spots based on the demographic," there is no disclosure of any particular method steps.

<u>Kosten and Garfinkle Disclose File Transport, Not Marketing Showing to Public</u>

The invention of Claim 1, goes beyond Kosten's straight-line transmission, specifically reciting correlation of the multimedia with associated advertising, and transmission as correlated material to potential purchasers, transmission of samples, and transmitting such correlated information to potential purchasers. Importantly, Claim 1 recites that correlated advertising material is used to locally market and sell the multimedia (e.g. feature film), something which is not remotely addressed in Garfinkle or Kosten.

<u>Kosten's Standalone Billboard Advertisement System Is Irrelevant to Claim 1</u>

While Kosten might suggest the possibility of displaying trailers in a theater lobby ("Exhibitors could turn theatre lobbies into smart advertising networks,"), this is nothing more than a standalone separate use. Ex-1007, p.54. It certainly is in a different field compared to Garfinkle's video-on-demand system, directly aimed at the personal viewing request of a user, such as a person in a hotel room. The combination of these two references relies upon the fiction that somehow a would-be movie viewer, using a hotel, aircraft or personal entertainment viewing device, is also a theater owner conducting business from a television set (for example in his hotel room) and somehow integrating that into his operations as an exhibitor.

In any case, Kosten is simply the straight through transmission of media, completely irrelevant to the marketing method and apparatus of the Patent and completely without any disclosure of the context of the transport of media in Claim 1.

Claim 1 (preamble): "A method of marketing… multimedia"

Kosten's disclosure is limited to a simple unadorned point-to-point satellite transmission system. While Kosten does suggest that the satellite transmission system may be used to transmit audiovisual material to billboards, albeit billboards located in movie theater lobbies, the same is separate and apart from his straight-line transmission of the movie via satellite to a movie house. Moreover, there is no disclosure remotely meeting the claim limitations that multimedia film is stored and correlated to advertising.

Claim 1 (preamble): "A method of… distributing multimedia"

The distribution of feature film is well understood in the movie business to be the process of marketing the film and supplying exhibition copies to movie houses. *Glossary of Film Terms, supra.* The disclosure of the Patent is consistent with this definition, as the Patent makes it clear that the term is being used as it is in the movie industry at the time of filing. For example, at 1:24-25 "distribution over a computer network to exhibitors and broadcasters," at 1:39-40 "marketing

22

and distribution systems: the movie and television business," 1:41-43 "the motion picture and television industry today can benefit greatly by reducing overhead costs," at 1:54 "distributors," at 1:66-67 "distributing multimedia products, especially motion picture films," at 1:51-53 "distributors through film markets, catalogue sales and long established relationships between purchasers and sellers, sell films." and many more. Ex-1001. The term "distributor" is consistently used in the specification of the patent, and the Patent's use of the term should be followed in interpreting the claims, not the definition used in the automotive industry or the definition proposed by Petitioner's expert.

Accordingly, Defendant's assertion at page 17 of its Petition that "Garfinkle discloses a method of marketing and distributing multimedia. Ex-1002 ¶70)" is just wrong. Petitioner seeks to equate distribution to file transfer, an untenable position for a Patent dealing with the film business. Moreover, the cited testimony of its expert is not specific or supported respecting the meaning of "distribution," merely making a conclusory statement that some unspecified meaning of distribution would be understood from Garfinkle, which is merely an owner to viewer video-on-demand system having nothing to do with film distribution.

Claim 1(a): "said advertising material being associated with said multimedia material"

Kosten doesn't disclose the inclusion of information enabling associative storage. While Kosten does suggest that a satellite transmission system can support a separate advertising system, the multiple recitations in Claim 1 of association/correlation information between the multimedia film and advertising material are absent in Kosten.

Garfinkle's video-on-demand system also fails, disclosing nothing more than the well-known fact that associative memory structures exist, and it is inarguable that this does nothing to suggest the overall associative and marketing limitations of Claim 1.

Fields Are Not Associative Marking

While Petitioner asserts "Kosten discloses [receipt of a film and materials from a producer]. Ex-1002 ¶¶74-77," in the cited portions of its expert declaration, Petitioner argues that Garfinkle's system can be used to search for and identify associative products (Ex-1005 3:32-49), which seems impossible with tagging for "type of video product," "type of movie," having a "trailer" or "critique," etc. Petitioner urges nothing more than a hindsight reconstruction of the Invention.

Similarly, the positive recitation of "advertising material being associated with said multimedia material" is a method step not taught by Garfinkle. At best,

Garfinkle only discloses "[f]ield[s, 32, 34,] 36, 38 and 40 [which] may include flags to indicate whether" certain materials are available to order, price, search terms, or product availability. Ex-1005 3:32-49. The application of availability, product characteristic or similar flags does not meet the recitation of associating the multimedia material with advertising material because interpretation of the flag as being an association is left to the user during searching.

Claim 1(b): "storing said multimedia… and associated advertising material… as correlated information"

Kosten again fails, not even hinting at associative storing. While Garfinkle suggests flagging, it is the would-be viewer who determines whether there is an association.

Claim 1(d): "providing samples of said correlated information"

Petitioner conclusively alleges that Garfinkle discloses this. While Garfinkle may have the *capability* of providing samples of information, the lack of flagging specific to correlation means that the human user is the one determining "correlation." Accordingly, without such human input, the system, as disclosed by Garfinkle, is not structured to determine correlation, and thus is incapable of "providing samples of said correlated information."

25

Indication That Item Is a Trailer Is Not Indication of Correlation

Garfinkle, far from providing information that two items are correlated merely has flags which may be interpreted by a user for multiple purposes, such as budgetary considerations, availability of a critique, perhaps (for the sake of argument only) even correlation and other things. But any action based on potential correlation is made by the user, and Petitioner's attempt to argue that one of the flags, for example that the item is a trailer, means the flags are correlation data is incorrect.

Petitioner's attempt, to embellish the disclosure of Garfinkle beyond its four corners, is improper hindsight supplementation, and it does not remedy the inadequacy of the proffered Garfinkle patent.

In any case, the Examiner asserted that Bernard (Exhibit 2000) teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase. Also, Garfinkle's customers are consumers, not exhibitors. Accordingly, the incomplete disclosure of Garfinkle would not have been important to the examiner.

All aspects of the claims relating to correlation information are not taught by Garfinkle or Kosten, alone or in combination.

26

Claim 1(e): "providing samples of said correlated information"

Petitioner argues that Garfinkle teaches providing samples of correlated information. While trailers are provided in Garfinkle, "correlated information," as recited in claim 1, cannot fairly be said to be disclosed by Garfinkle for the reasons discussed above.

Claim 1[f]: providing said correlated information… corresponding to said [associated] advertising material… to said purchasers…, allowing purchasers to locally market and sell said multimedia material"

Petitioner, in conclusory fashion, urges, relying on a PhD dissertation relating to the effects of trailers on moviegoer expectations, that "[b]ecause "[m]arketers of motion pictures are having greater difficulty reaching the mass audience now," [Ex-1009, 8], a POSITA would have been motivated to allow purchasers to locally market and sell multimedia material using [downloaded] advertising materials."

Relied-upon Dissertation Devoid of Language Relating to Expert's Conclusory Statement

This statement is completely made up by Petitioner's expert. To be blunt, as made apparent by the statement in Petitioner's Petition at page 29 (which is limited to costs and the difficulty of reaching audiences), there is no evidence of record

27

relating to the recited use of correlated advertising material to market a multimedia film in the context of the method of Claim 1.

While Petitioner makes further allusions to Kosten at page 30 of its Petition, Kosten says little more than the unremarkable proposition that revenue is key in the movie distribution business and marketing is important.

**Petitioner's Conclusory Assertions That "a POSITA Would Have Been Motivated to Use Kosten's Theater As a 'User Site' in Garfinkle's System" Is Utterly Meritless.**

Garfinkle is a video-on-demand system for the consumer. Kosten's very expensive satellite transmission link would indicate to those of ordinary skill in the art that the Kosten system is not applicable to Garfinkle's consumer video-on-demand system. In contrast, Garfinkle is aimed at economy, with his video-on-demand system designed for low bandwidth and low cost. It is the complete antithesis of Kosten in this respect. Garfinkle uses lead-ins or other audiovisuals as fillers, further suggesting its inappropriateness to the robust requirements of commercial theaters and satellite transmission. The lower distribution costs mentioned in Kosten would also appear to be irrelevant to the already low-cost system of Garfinkle. Indeed, Garfinkle is not concerned with reducing ***distribution*** costs, because there is ***no*** distribution.

JA 037

Besides the numerous facts noted above which militate against the combination of Garfinkle and Kosten, a POSITA (if he were to combine the teachings of the two references –particularly given the different fields involved and the disparity in cost) would likely have rejected Petitioner's hindsight reconstruction of the invention in the Patent in favor of a satellite-to-consumer file transport model which would eliminate the download hiatus through high-speed satellite file transfer.

Claim 1(g): "exhibiting said multimedia material… from said stored correlated information"

Garfinkle has nothing to do with "exhibition," despite Petitioner's unsupportable statement to the contrary. Petition, p.32. The meaning of the term "exhibition" in the film industry is well-defined and broadly understood to be the process of showing the finished film to audiences." See University of West Georgia, *Glossary of Film Terms*, athttps://www.westga.edu/academics/university-college/writing/glossary_of_film_terms.php. In contrast, the display of the film in Garfinkle is to the customer.

Claim 1(g): "exhibiting said multimedia material… in a public theater to a number of individuals"

In any case, the display disclosed by Garfinkle is certainly not "in a public theater to a number of individuals" as recited in Claim 1. The context of "allowing

29

purchasers to locally market said multimedia material," as recited in Claim 1¶f, is also different from Garfinkle's display to an individual.

Claim 1(g): "exhibiting said multimedia material… from said stored correlated information … at a time or in a place different from the time and place at which said associated multimedia material is displayed"

Petitioner's argument, that moviegoers are in the lobby "to see some other film" and that therefore this aspect of the claim is met by Kosten falls flat for multiple reasons. First of all, Kosten is missing numerous recitations of Claim 1, for example as detailed above. Second, it is speculation that the location of an advertising screen has any relation to correlated information. Finally, Kosten's use of satellite technology to operate billboards is a separate system from Kosten's transmission of feature films. Accordingly, there is no correlated information, and this aspect of the claims is not remotely met by Kosten. Garfinkle's failure to have marketing or exhibition, or even distribution, as recited in Claim 1, makes any combination of the references insufficient.

Petitioner's assertions that a POSITA would have been motivated to use Kosten's movie theater as a user site in Garfinkle's system and show advertising materials in the theater lobby or on theater screens at a different time or place than

the associated movie, is nothing more than a speculative strained hindsight reconstruction of the Invention.

## Point of Garfield Is Using Economical Low-Speed Transmission Systems

Satellite transmission is itself quite expensive, so applying it to Garfinkle is not an automatic conclusion. Indeed, the whole point of Garfinkle is that by storing a lead-in locally, expensive services like satellite transmission may be avoided. More particularly, Garfinkle shows a lead-in while the movie is being downloaded, thus using a more economical file transfer mechanism.

The suggested combination thus makes no sense to one of ordinary skill in the art, who would see the satellite transmission system as prohibitively expensive and would view Garfinkle's system as the solution to the problem.

## Garfinkle Explicitly Teaches against Petitioner's Combination with Kosten

Respondent's rejection of the combination, unlike the position argued by Petitioner, is not an unsupported conclusory opinion. Garfinkle explicitly notes the unreasonableness of Petitioner's suggestion that Kosten's satellite transmission system can be combined with Garfinkle.

31

More particularly, Garfinkle teaches away from the combination suggested by Petitioner, stating his objective is "to provide a user interface to the large number of video products available at the central station *without the need for a* **relatively costly** *two-way wireless, interactive* **satellite** *network*." Ex-1005, 1:46-50 Emphasis added. Garfinkle achieves this by downloading onto the viewer's computer a lead-in segment which plays while the feature is being downloaded. Ex-1005, Col.4:17-21.

<u>Garfinkle's Time Filler and Kosten's Satellite Are Mutually Exclusive</u>

Thus, objectively viewing Kosten's high speed straight-through satellite transmission teaching, a POSITA would reject combining the references.

Similarly, objectively viewing Garfinkle's use of a lead-in to compensate for slow downloading time, a POSITA would reject integrating satellite transmission into Garfinkle.

<u>Redefined Terms and Combinations the Art Teaches against Do Not Meet the Recitation of Correlated Items in Claim 1 respecting Showing and Marketing</u>

If one were to force a combination of Garfinkle and Kosten, perhaps one might have a satellite transmission system implementing video-on-demand to private users and carrying out file transfer functions for billboards. Such a system would not involve the claimed correlated multimedia movies and associated advertising material.

32

The dubious combination urged by Petitioner involves nothing more than hindsight picking and choosing of modules, reengineering some of those modules to fit the claim language, redefining terms to fit the claim language, and then filling in holes with speculation, as detailed above.

Only Selection of a Video Is Involved in Garfinkle, Not Marketing

Likewise, Garfinkle has nothing to do with marketing insofar as a video is already being demanded by the customer, and only selection of a particular product is involved. Recognizing this problem, Petitioner seizes upon Kosten for his disclosure that a satellite system may be used to feed billboards, and further that the same can advertise movies. This is embellished by what is essentially a frivolous suggestion that Kosten teaches the application of correlation information to the billboard advertisements and the feature films.

Petitioner Equates "Exhibition" to Billboard Receiving Random Advertisements

Recognizing that Claim 1 recites the exhibition of advertising material associated with a movie, Petitioner, in an assertion so meritless as to have the hallmarks of humor, states that theater lobbies having Kosten's billboard system, and the halls in which the screens are located are different locations (which Petitioner has cobbled together from two different references), and therefore these independent systems meet the recitations of Claim 1.

33

Even so, the combination urged by Petitioner still falls short of the recitations of Claim 1. For example, only in hindsight can one assert that Kosten meets a limitation for storage of the multimedia material for later use by the movie theater.

Essentially, Petitioner is urging that because electronic file transfer is in the prior art, because marketing of films is well known, because advertisements such as trailers are well known and because electronic file transfer would save money, a POSITA would be motivated to combine all of these elements and add to them provision of samples, the recitation of claim 1 respecting transmission of multimedia films and advertising correlated to each other (together with the recited storage functions), and all the other recitations of the method of marketing and distributing multimedia films and information to exhibition venues in Claim 1. Of course, such a position is untenable.

The Absence of Even a Marginally Reasonable Combination Attests to Patentability at the Time the Invention Was Made

While Petitioner proposes, at p.15-16, that Garfinkle be split into two parts and grafted onto Kosten, this proposal fails as it does not account for associative information, does not enable distribution or marketing, fails to provide the recited sampling, etc. Likewise, the combination doesn't make sense because Garfinkle is already a functioning system. See Ex-1005, 2:58-67. Moreover, in other parts of

34

the specification Garfinkle rejects satellite transmission as costly and implements a locally downloaded lead-in to mask delay during download.

(ii) <u>Allen in View of Budow Also Fails against Claim 1</u>

(a) <u>Allen's Remote Manufacturing System **Is** of Record</u>

Petitioner's statement that there is no evidence that Allen was considered by the Examiner is just plain incorrect. The Examiner saw that reference, and made a note in the file (as admitted by Petitioner). The Examiner then elected to proceed without relying on it. Allen has a number of elements which Petitioner would like to graft onto Budow. However, at Allen's core, and at the core of Budow for that matter, both references do not disclose the solution provided by the Invention. Allen is a remote manufacturing system where videocassettes are manufactured at a retail point-of-sale together with such things as labels, and other artwork. Allen has absolutely nothing to do with marketing, or transmission and storage for later showing. The inadequacies of Allen are thus clear and easily make apparent the Examiner's deciding against making an art rejection based on Allen. Certainly compared to the art cited by the Examiners, such as the patent to Hunter, fairly speaking, Allen has nothing more to offer. Indeed, Petitioner's cobbling together these very common elements is pure hindsight.

35

More particularly, Allen and Budow together show nothing more than file storage, transport, and video manufacturing dealing with a variety of different products. While Petitioner points to Allen's recognition of the use of trailers in the movie industry, it is ludicrous to suggest that the Examiner was not aware of movie industry trailers or that he would have rejected the claims if he had art before him showing the existence of trailers, or that trailers are associated with motion pictures.

(b) Allen Does Not Involve "Distribution" As the Term Is Used in the Movie Industry

In addition to this, as used in the movie industry "distribution" is the "process of marketing the film and supplying copies to exhibition venues." *Glossary of Film Terms*, supra. Allen is not involved in exhibition. Rather Allen's system ***manufactures VHS copies of movies*** for sale at a retail outlet, and speaks of equally unrelated video-on-demand applications. People in the film distribution business are not involved in VHS cassette manufacturing. Indeed, they outsource manufacturing and related tasks, such as film duplication and delivery, to outside companies. Allen is therefore non-analogous prior art.

Allen Provides for Remote Manufacture of Video Recordings

Rather than involving distribution and exhibition, Allen is only concerned with the manufacture at a retail facility of cassettes to be taken home by consumers

36

for personal use. Allen only makes feature films, trailers, labels and the like available at the retail manufacturing site. Ex-1006 5:17-28. Video products, and other items such as cassette labels, are stored in a central site and downloaded to retail sites where the downloaded video product is recorded onto a VHS cassette in a "manufacturing" operation. The disclosure includes no further steps and does not constitute distribution, exhibition or marketing of a film.

(c) Budow Is a Simple Video-on-Demand of the Type Installed in Hotels

Budow discloses a satellite-based video-on-demand system in which a satellite link is used to transport video files, such as programming, advertisements and the like to customers of hospitality establishments. The establishments are equipped with satellite receivers which provide services such as pay-per-view to guests who access the same through in-room television sets. Ex-1008, Abstract, Figures 1-2, 3:21, 4:20-23, 4:59-63. Budow fails to teach the distribution and marketing aspects of the Invention. Budow discloses a trunk and branch network installed in a hotel to deliver various video products including advertisements. Ex-1008, 7:11-12; 13:61-65. Transmission of advertisements is similar to broadcast TV with, for example, advertisements being "shown at scheduled times." Ex-1008, 13:5-6.

37

Petitioner Strains Interpretation of Claim Language and Glosses over Differences

Notwithstanding the fact that Allen and Budow do not deal with film distribution or exhibition, Petitioner rewrites Claim 1 to deal solely with file transport, and then rewrites the disclosure of Allen and Budow to add the concept of transmitting correlated information for showing at a later time. Even putting that aside, Allen deals with remote manufacturing, while Budow deals with simple video-on-demand in a trunk and branch network. For that reason alone, combining them is unsound.

Petitioner calls both Allen and Budow "distribution" systems (Petition page 46), but both of them only involve *file transport*. This distinction is not trivial because, as a result of that inadequacy, neither Allen nor Budow deal with exhibition as recited in the claims. In this respect they are similar to Garfinkel where, while products may have various descriptors, any associative function is performed by the user, whom Petitioner contends uses search terms to locate products. Only the user may or may not consider the products to be associated with any other products.

Neither Allen nor Budow Disclose Claimed Associative Data Use

Petitioner conclusorily asserts that a POSITA would have known of and consulted Allen and Budow for their supposed "complementary solutions" and created the method of Claim 1.

While Petitioner seems to assert (p.70) that Allen discloses in his Abstract multimedia and associated advertising, nothing even remotely of the sort is to be found in the Abstract. Perhaps, reference is being made to advertisements displayed on kiosks Ex-1006 21:17-22 (but not having any associative characteristics). While Budow does speak of a video on demand system with "real-time viewing by customers [of]… advertisements," this is little more than conventional broadcasting of advertisements, and the alleged relationship to the claimed subject matter is nil. Ex-1008, Abstract.  Notwithstanding, the assertion of the claimed associative data is, here and throughout the Petition, an unsupportable characterization.

Likewise, Petitioner's routine assertions respecting alleged "distribution" and "exhibition" are unsupportable, as in the case of Petitioner's contentions respecting Garfinkle in view of Kosten. The redefinition of these terms as "file transport" and "viewing," clearly at odds with plain meaning, industry standards

39

and the specification of the Patent, cannot suffice to meet the threshold for institution of *inter partes* review.

Petitioner's Characterization of Budow Is Completely Unsupported

The Petition, at page 47, relies on Budow (Ex-1008, 1:32-39; 4:6-19, 13:22 to 35) with the allegation that Budow "distribute[s] multimedia and advertising materials to be locally marketed and sold by the hospitality establishments." But the cited sections do not, even remotely, relate to such marketing in the locality of the customer. Rather, they merely disclose video-on-demand selection of programs (Ex-1008, 1:32-39), storage of video-on-demand feature films and advertisements at the server (Ex-1008, 4:6-19), and advertisements which are "scheduled," "queue" triggered, or responsive to the "viewing habits of each particular customer."

Petitioner's Characterization of Timing of Advertisements in Budow Is Fictitious

Budow is not on-point to the issues. Petitioner only presents wishful characterizations of the evidence. Rather than dealing with film industry distribution and correlated multimedia films, and advertising used at ***different times and places*** to ***market*** a film, Budow contemplates that "advertisements are shown [to purchasers] at ***scheduled times*** … [but if] stored within… memory,… control computer 13 transmits appropriate signals… identifying the advertisement

40

to be transmitted." Ex-1008, 13:5-17. In other words, the actual disclosure made by Budow is wholly different from Petitioner's characterization. Budow is a simple unembellished video-on-demand system for a customer's personal viewing. Petitioner may imagine that, because marketing is important, the claim limitations can be imported into the combination of Budow (video-on-demand) and Allen (manufacture/sale of videocassette remote from server). However, the combination of these two diverse technologies into a marketing and distribution method, not remotely contemplated by either, is unsupportable.

Budow's Fails to Meet the Time and Place Marketing Recitations of Claim 1

Petitioner cites Budow contending it shows display of advertisements at a different time or place. However, in point of fact, the showing is at the same time (during the time slot within which the multimedia is being shown). Ex-1008, 13:22-35.

Alleged Advantages of a System Are Irrelevant to Motivation to Combine

Petitioner alleges that there was motivation to combine, because Allen's system has advantages over Budow, namely a larger number of videos, delivery to "customers of hospitality establishments," increased control over timing, improved customer interaction, targeted advertising, improved management, security against piracy, etc. Petition, p.48; Ex-1008 2:51-55. However, this is only an aggregation

41

of bells and whistles completely unrelated to the correlated material, marketing and distribution recitations of Claim 1.

Allen thus also does not enable marketing, being merely a system for capturing, storing and retrieving movies for on-demand cassette manufacture at the point-of-sale. The availability of various modules, modifying them to meet the recitations of the claim, and saying that improvements would result from the combination of Allen and Budow is not in and of itself motivation to combine.

Combining Video-On-Demand and Remote Manufacturing Nonsensical

Budow is a video-on-demand system using a trunk and branch network to provide, for example, feature films to users. Budow would, at best, suggest use of his trunk and branch network to implement Allen's remote manufacture of VHS cassettes. Alternatively, Budow might be argued to suggest the use of the infrastructure of Allen for a video-on-demand system. However, the stark differences between Allen's video-on-demand system and a remote manufacturing at the point-of-sale makes any combination illogical. Moreover, associative information, marketing, and distribution (as the term is used in the film business and in the Patent) would still be missing. Furthermore, Petitioner advances no valid position to the contrary.

42

Tracking Sales in the Context of Distribution Not Remotely Suggested by Allen

Petitioner seems to argue that Allen's remote manufacture at the point-of-sale accounting functions could be added to the video-on-demand system of Budow to challenge Claim 1. However, the accounting functions are limited to retail sales, and do not suggest the correlated information, storage of multimedia, associative storage of advertising, and implementation of marketing functions as achieved in the Invention, as recited in Claim 1.

Allen Is Devoid of the Recited Subsequent Use of Advertising Material

The Petition (p.52) attempts to make something of Alan's disclosure of reviewing trailers of a selected movie, but this is done by the consumer at the same time and place he is watching the movie, as opposed to being "shown to the public at a time or in a place different from" that of the film. Claim 1(g). Budow doesn't remedy Allen's deficiency.

While Alan at 11:17-20 states "[w]ith this facility, studios can monitor their individual financial data, Sales… and promotion results," there is no "automatically collecting sales information from exhibitor recipients of… multimedia material and providing sales and marketing data, specific to said…

43

multimedia material, to exhibitors based upon information from… exhibitors." as recited in claim 11.

(iii). <u>Garfinkel, Kosten, Allen and Budow Fail against Claims 4-7, 9 and 11</u>

The dependent claims relate variously to deployment of the Invention over public communications systems, movie theater exhibition, implementation of searching, download and storage for retransmission of advertising with synchronized sound, transport of trailer files, and the gathering and provision of sales and marketing data. As discussed below, the prior art asserted by Petitioner not only fails to create a reasonable likelihood Petitioner will prevail.

## IV. ABSENCE OF NEW PRIOR ART AND ARGUMENT, AND ABSENCE OF MATERIAL ERROR MILITATES AGAINST INSTITUTION

While Petitioner pays lip service to the discretion of the Board to deny institution under *Advanced Bionics, LLC v. MEDEL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 8 (PTAB Feb. 13, 2020) (precedential), the facts strongly support discretionary denial of institution. The Petition just simply fails with respect to prior art, arguments and Office error.

A. Garfinkle and Kosten Don't Raise Anything New Respecting Claim 1
   (Ground 1)

<u>Disclosure by Garfinkle of Advertising and Multimedia Is Cumulative</u>

Petitioner has argued that "A POSITA would have been motivated to use Garfinkle's video distribution system to implement Kosten's distribution method to achieve the improvements described therein."

Kosten is nothing more than a straight through transmission from studio to theater of a movie. Moreover, this disclosure of Kosten is nothing new, because Hunter, which was before the Examiner, discloses at ¶ 62 "transmitting digital content to movie theaters… via a Satellite downlink." Ex-2002, ¶62.

Moreover, electronic transmission of movies was considered by the Examiner who observed that "[b]ecause Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a [POSITA] would be motivated to receive advertising material from… owners and send the advertising material… to purchasers to allow the purchasers to locally market and sell said multimedia material." So the argument is nothing new.

JA 054

<u>Hunter's Disclosure Is Strikingly Similar to Garfinkle Elements Cited by Petitioner</u>

Petitioner points to Garfinkle for its disclosure of a video on demand system which merely stores products, trailers and lead-ins. Lead-ins may be played to the consumer during download of a feature film. This fills the time and masks the download delay. Besides being irrelevant to the Invention, this adds nothing to the art before the Examiner. Hunter shows movie delivery, advertising and video in movie theaters, reviews, accounting, and demographic analysis (¶0013, ¶0021, ¶0023), (¶0036). Accordingly, Garfinkle is cumulative.

<u>Cost Savings Taught by Hunter</u>

Petitioner argues that Kosten teaches that electronic file transfer yields cost savings. However, Hunter has the same teachings. Ex-2002 ¶0009.

<u>Alleged Provision of Samples by Garfinkle Is Cumulative</u>

At page 26 of its brief Petitioner alleges that Garfinkle discloses providing samples of correlated information (element 1(d)), stating the "server system [is connected] to 'user sites 18' (i.e., potential purchasers) for transferring 'video products' and related 'catalog data' (i.e., correlated information)." However, substantially the same disclosure was before the Examiner in the patent to Bernard ("samples of music, video,… or other multimedia products… are provided to the

46

customers" (Ex-2001, 5:9-15),  as was applied by the Examiner at Ex-1004:0101, 0104.

Garfinkle's Disclosure Respecting Sampling Inferior to Bernard Cited by USPTO

During the prosecution, the Examiner stated that "Bernard teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase." Ex-1004:0449.

Moreover, Bernard is, more than Garfinkle, explicit on sampling, stating "users can sample portions of selected titles to determine whether… they would actually like to… purchase." Exhibit-2000? 3:23-40.

Downloading Multimedia- Element 1(e)

Downloading media is also in Hunter (Ex-2002 ¶62). Garfinkle's general disclosure asserted by Petitioner of a "data link… for transferring 'video products' and… 'catalog data'" adds nothing to the disclosure of Hunter. Hunter discloses at ¶62 "transmitting digital content to movie theaters… in non-real time" more particularly, Hunter specifies download to a "storage device" located "at a movie theater." Ex-2002 ¶0021) Hunter also teaches advertisements located in theaters.

Petitioner Proposes Inferior Garfinkle Patent

Once again, the art that was before the Examiner is clearly closer to the claim language than new art (e.g., Garfinkle) proposed by Petitioner, for example because it specifies download to a movie theater. Petitioner's attempt to remedy the deficiencies of its position through expert testimony, as it does at numerous points in its petition, does nothing to improve the evidence it proposes in the Petition.

"Allowing purchasers to locally market and sell" (Element 1f)

Even putting aside the fact that Garfinkle has nothing to do with a customer who is an exhibitor that locally markets and sells the product, the Petition has no new argument to add to the prosecution respecting allowing purchasers to locally market and sell. The Examiner stated that Applicant's specification states that it is "conventional for owners of multimedia… to provide advertising… linked to… multimedia… to purchasers to locally market and sell."

Petitioner's expert's testimony that a POSITA would have been motivated to allow purchasers to locally market and sell multimedia material using advertisements is substantially the same. Ex-1002 ¶¶89-90.

Petitioner's expert's statement also adds nothing to the Examiner's statement that it is "well known… for [movie theater] patrons to pay an admission fee." Ex-1004, 229, 225, 267

48

<u>Potential Purchaser Exhibitor Showing Advertising at Different Time or Place-1(g)</u>

On this element Petitioner vacillates stating "Garfinkle alone or in view of Kosten discloses this element." But there is no basis for this statement. Moreover, Petitioner does not address the recitation of the potential purchaser being an exhibitor. Notwithstanding, Garfinkle and Kosten are each cumulative.

<u>Exhibition Is Not a Private Video-On-Demand Showing</u>

Petitioner merely asserts at page 32, without reference, that Garfinkle's video-on-demand system teaches exhibition, a term well understood in the art as inapplicable to a private video-on-demand customer.

<u>Marketing</u>

At page 29, Petitioner asserts that "[a] POSITA would have been motivated to implement Garfinkle's system to allow purchasers to engage in a business application of the system 'to locally market and sell said multimedia material.' Ex-1002 ¶¶89-90."

This is the same as the contentions of the Examiner during the prosecution of the Patent that it was "obvious… to a [POSITA] to modify… Hunter to… provid[e]… advertising material to… purchasers… allowing purchasers to locally

49

market and sell said multimedia." Ex-1004, 0449. Accordingly, no new argument is advanced.

<u>Kosten Satellite Link Adds Nothing to Garfinkle and Fails As New Argument</u>

The satellite system disclosed by Kosten adds nothing to Hunter, which discloses at ¶62 "transmitting digital content to movie theaters… via a satellite downlink." Ex-2002 ¶62.

While Kosten does speak of "turn[ing] theater lobbies into smart advertising networks," which Petitioner has improperly argued as providing for showing advertising at a different time and place than the associated multimedia, this is the same argument as the Examiner's statement that "Bernard et al. teach… providing advertising material to purchasers over said communication network allowing purchasers to locally market and sell said multimedia material (see col. 3 lines 24-28" (Ex-1004:101). Moreover, the disclosure of advertising displayed in theaters also fails Petitioner. Ex-2002 ¶21.

## B. Allen's Point-Of-Sale Manufacture in view of Budow (trunk and branch video on demand) is cumulative Respecting Claim 1 (Ground 3)

Petitioner's alternate basis for urging the invalidity of Claim 1, like its contentions respecting Garfinkle i.v.o. Kosten does not constitute new art or new argument. Petitioner argues the appropriateness of the combination contending that ***Allen's point of retail sale manufacturing system*** relates to ***distribution***, as does

50

the trunk and branch hotel room video system. Plainly, neither of the systems has anything to do with "distribution," but rather file delivery. Accordingly, ***neither*** system is structured to enable customers to market the product which they are buying, and those aspects of Claim 1 are not present in Allen or Budow. While Allen does speak of showing advertising, the same does not allow marketing but only purchase by the consumer. Allen does not enable using materials to market the multimedia to others. Accordingly, Petitioner is not reasonably likely to prevail.

Budow Storage Is at the Central Server

In this respect, the art to Allen and Budow is nothing more than Hunter. Petitioner argues (p.47) the inclusion of 1) movie storage, 2) advertising storage, and 3) an accounting and transaction engine. However, Hunter (Ex-2002) shows 1) transmission of stored movies to a customer's movie theater. Indeed, Hunter, because it deals with the customer movie theater, is a closer reference than Allen and Budow, which send information to hotel guests and retail VCR purchasers. Allen and Budow are thus each cumulative.

Hunter also discloses 2) the use of advertising (¶0018), and implements 3) accounting and transaction functions (¶63). Hunter shows transmission may be

made in real-time or non-real-time. Any differences between Hunter and the newly proffered prior art are insubstantial.

The petition (p.48) goes on with a contention that a POSITA would have been motivated to combine Allen's video distribution with Budow's use of advertising materials. Again, Hunter is a better reference than Allen i.v.o. Budow, because both aspects are in a single reference.

Petitioner goes on (p.52 et seq.) to argue in detail numerous aspects of the claims which are all found in Hunter, including capture of movies, capture of advertising with video and audio, etc.

Respecting the association of files, Hunter teaches digitally transmitting advertising material and multimedia material. This is not a new argument because the Examiner argued applicant's "originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell the multimedia material" (Ex-1004:101).

Likewise, as noted in the Houth declaration, while Allen provides previews to the point of sale purchaser, the same does not constitute the downloading of advertisements to the customer for use by the customer to exhibit.

52

Accordingly, Petitioner has no reasonable likelihood of prevailing on any claim, and, furthermore, discretionary denial of institution is appropriate.

<u>Rewriting Allen</u>

Petitioner attempts to remedy the complete inadequacy of Allen with the unsupported statement in the Houth declaration that "a POSITA would have understood that the movie previews could be downloaded with the movie." Ex-1006, 27:40-58. The alleged "underst[anding]" is not an understanding at all but an impermissible rewrite and addition to the specification. This argument has no reasonable likelihood of prevailing.

In contrast, Hunter is specific to the transmission of advertising with structure which enables marketing. Ex-2002 ¶ 70. Once again Hunter is superior to the art asserted by Petitioner, and that art contains nothing which was not already before the Examiner.

Likewise, with a complete lack of logical cogency and support, the Petition argues at page 58, that "a POSITA would have understood that the movie previews could be downloaded with the movie to the retail level [sic]—e.g., a cable head end or regional bell operating company—for previewing the content and further providing the previews to customers…. [Ex-1006 27:40-58." However, in Allen there are no further customers beyond the individual buying the VCR tape

53

(or downloading a movie for personal viewing). Thus, Petitioner's position is nothing less than grafting on completely unsupported structure of its own creation. Accordingly, when unembellished with Petitioner's alleged, but unsupported, structural add-ons, Allen is not a reasonable basis for Petitioner prevailing.

<u>Cable Company Not Purchaser</u>

The Petition argues at page 60 that Allen's downloadable movie at a cable company head end meets the downloading limitations of claim 1(e). However, the cable company is not the "purchaser," so Allen adds nothing to the disclosure of Hunter which sends movies to theaters with digital projectors. The art is thus cumulative.

Petitioner's arguments (p.62) respecting Claim 1(f) suggesting that Allen "discloses providing… advertising material … to purchasers, who download and store [it]" are also meritless. Bu Allen only discloses "downloading with the movie to the retail level," but is silent with respect to storage. Ex-1006, 10:13-19. In any case, the customer in Allen is the purchaser of a freestanding physical video cassette, and isn't involved in marketing of what he buys. Accordingly, Petitioner's addition to the disclosure of Allen is nonsensical.

Petitioner also points to Allen for its disclosure of accounting functions enabling "studios to monitor their… sales results and promotion results." Once

54

more, this is found in Hunter's "operating system… that may be queried by the system's billing system on a periodic basis to bill the account" ¶63, and Allen is cumulative.

Hunter's Purchaser Is Exhibitor, but Allen and Budow Disclose Viewer-Customers

The Petition does not even try to argue the uses made by the purchasers in Allen or Budow. Instead, the Petition is a cacophony of irrelevancies (p.64) relating to CATV head ends, compression steps, the possibility that a local telephone company could have the equivalent of retail outlet infrastructure, cassette movie labels, and so forth. In short, Petitioner raises no ground reasonably likely to prevail.

Allen's Kiosks Not More Than Hunter's "Displays… in High Traffic Areas"

While the Petition argues that Allen's kiosks might preview movie trailers, and that this might be at a different time and place, Allen is nothing more than Hunter, which discloses an advertising network operating independently of the systems movie file transfer to theater system. Rather, Allen is cumulative and inferior to Hunter, which transfers files to movie theaters, not Allen's individual viewers.

JA 064

C. Claim 4: "server system, accessed over a public communications system" Grounds 1 and 3

Petitioner argues at page 36 that Garfinkle shows a datalink 16 which may be telephone company copper wire or cellular wireless. Petitioner also says Allen discloses using an "optical fiber network," and that a "POSITA would have understood that an optical fiber network may be used by telecommunications companies to transmit… internet."

Neither Garfinkle nor Allen add anything to Hunter's disclosure which speaks of use of the Internet. Ex-2002 ¶ 22. Accordingly, both are cumulative.

D. Claim 5: "exhibition of multimedia material is a public showing of a motion picture" Grounds 1 and 4

Petitioner relies upon Kosten urging it discloses showing movies in public places and states that "a POSITA would have understood that Kosten's theaters charge admission." Clearly, this is cumulative because the Hunter reference relates to "electronic digital movie displays" and "Display of Movies at Movie Theaters." Ex-2002, ¶2, 7. Moreover, in his office action, the Examiner took official notice of "movie" "patrons … pay[ing] an admission fee to attend presentations." Ex-1004, 229, 225, 267. Petitioner also argues that "Kosten discloses that distribution is 'a key component of the revenue stream and the business model'." But Hunter says the same (¶9). Kosten is no better than the prior art before the Examiner. None of these arguments raise issues not before the Examiner.

56

E. Claim 6: "providing a search function for said multimedia material and said associated advertising material" - Grounds 1 and 3

Petitioner points to Garfinkle for its disclosure of "catalog search keys" which it concedes relate only to actor names, and other information not relating to advertising material. While there is a data field for "advertising material flags," they are merely mechanisms for locating specific products and are separate and apart from the searching function associated with the search keys in Garfinkle.

While Garfinkle does use tags, this appears only to facilitate searching. Id., 3:38-47. In any case, Bernard (Ex-2001, 4:50-55) speaks of accessing product based on sales, awards, actors and other criteria, and Garfinkle is, on this point, cumulative.

Moreover, the Examiner stated that Hunter disclosed "providing a search function for said multimedia material (paragraph 0060, 'Review Available Movies', which allows a customer to search for available titles)." Prosecution History, Ex-1004: 305. The Examiner further noted that "customers have [a] tool that allows them to see listings of all movies available in response to a search query." Ex-1004, 318. Accordingly, the cited section of Garfinkle adds nothing to the  record as the argument was considered by the Examiner.

Petitioner also argues that Claim 6 is rendered obvious by Allen's disclosure of a "personal preference screen [that] can be invoked by the user to either search

57

and select movies." Ex-1006, 21:29-33; see id. 9:55-59 (cataloging motion video and associated artwork, movie trailers, and previews). Allen adds nothing to Hunter's searching functions, and the issue was discussed by the Examiner.

F. Claim 7: "advertising material comprises a motion picture with accompanying synchronized sound" (Grounds 1 and 3)

      Petitioner cites Kosten and Garfinkle on this element, noting that a "POSITA would have understood that… trailers… would include a motion picture with accompanying synchronized sound." However, Garfinkle and Kosten's random mention of trailers is meaningless.

      In any case, Hunter discloses a system with "video," (2002 ¶11) and further discloses the transmission of "advertising content… through the Internet,… formatted in NTSC, PAL, SECAM… ." Ex-2002 ¶22. These formats are well known to have synchronized audio and video. See, for example, Wikipedia which notes that NTSC includes an "audio carrier [which] is 4.5 MHz above the video carrier." See Wikipedia, accessed at

https://en.wikipedia.org/wiki/NTSC#:~:text=The%20main%20audio%20carrier%2 0is,multiple%20of%20the%20line%20frequency (accessed July 10, 2024).

Accordingly, Kosten and Garfinkle are cumulative.

      Petitioner also cites Allen and Budow, contending that Allen discloses motion video with audio. However, Hunter discloses a system with "Video & Still

Image[s]." Ex-2002 ¶ 23. Inclusion of both of these types of files, and the universal inclusion of synchronized audio and images conclusively demonstrates that Hunter shows everything for which petitioner cited Allen and Budow. Moreover, the allowance was based on the subject limitation, and the issue was thus considered. Ex-1004, 0504.

G. Claim 9: "advertising… comprises… motion picture trailer or coming attraction… segment with accompanying sound"- Grounds 1 and 3

Petitioner cites Garfinkle and Kosten against Claim 9, relying on their mention of the use of trailers, and cites a PhD thesis (Ex-1013) on trailers and their history for the unremarkable proposition that "[t]railers commonly utilize … narration, sound and sound overlapping, music, graphics, and… montage."). Certainly, the Examiner would be aware of such content in trailers, and thus the citation is cumulative.

In a similar vein, Petitioner cites Allen and Budow, stating that these references disclose "motion video with audio" and associated materials, which Petitioner asserts "necessarily include accompanying sound." Again, the proposition is unremarkable. Again, Allen and Budow are cumulative and the Examiner noted the issue in his reasons for allowance. Ex-1004, 0504.

H. <u>Garfinkle, Kosten and Allen Are Cumulative - Claim 11 (Ground 2)</u>

Garfinkle is nothing more than a general teaching of a video on demand system which does not even deal with marketing by customers. Other than showing download of movie files, Garfinkle shows nothing of the invention claimed in Claim 1. Irrelevant to the present case, Garfinkle focuses on use of a lead-in segment to be played to the video-on-demand customer while a feature film is being downloaded.

Kosten also adds nothing, being focused on a straight through satellite transmission system, and the few general and unsubstantiated statements respecting costs, something which is treated in Hunter. Ex-2002, ¶¶5,9.

<u>Market Analysis of Sales/Promotion Reported Is Not a New Argument</u>

Perhaps more to the point, but incorrectly nevertheless, Petitioner argues that the patent to Allen, which it cites to the Board, teaches aspects of the invention supposedly not taught by the art before the Examiner and together with Garfinkle allegedly invalidates Claim 1. Respectfully, Allen adds nothing to the art before the Examiner. Moreover, the bulk of the disclosure in Allen is concerned primarily with remote manufacture of videocassettes and thus is not in the field of the invention.

JA 069

More particularly, Petitioner has argued at page 46 of the Petition that "A POSITA would have been motivated to modify Garfinkle's 'central station 10' to incorporate Allen's 'accounting and transaction engine 109' to enable tracking of sales and promotional campaigns as discussed in Allen." However, Allen has nothing of substance that was not already in the patent publication to Hunter (Ex-2002), which was before the examiner and used by the examiner as a basis for rejection of Claim 11 during the prosecution.

In particular, Hunter shows "a demographic analysis module 160 and a market analysis module 170 to generate information for reports to be sent to customers after their advertisements run."  The sending of "reports… to customers" in Hunter, is the same as what Petitioner argues as "Allen's 'accounting and transaction engine 109' to enable tracking of sales and promotional campaigns as discussed in Allen." Allen is thus cumulative.

I. Allen and Budow Are Cumulative Respecting Claim 11 (Ground 3)

Demographic Information Doesn't Raise New Issue of Patentability

Petitioner argues at Pages 45-6 of the Petition that "Allen's 'transaction engine 109' automatically collects sales information … and provides sales and marketing data (e.g., 'revenue accounting, customer demographic information')." Ex-1002 ¶114.

However, the demographic aspect of Allen, namely an "accounting and transaction engine 109 [which] accounts for each transaction at the retail level including… customer demographic information database," is also found at ¶36 in Hunter, which discloses that "(i)nformation from verification archives module 150 is utilized by a demographic analysis module 160 and a market analysis module 170 to generate information for reports to be sent to customers after their advertisements run." Accordingly, the demographic aspect of Allen (newly cited by Petitioner) adds nothing to the discussion of demographic analysis in Hunter.

Economies of Electronic File Transfer Were considered by USPTO

Again, relying on Allen, Petitioner also argues (Petition, p.46) that Petitioner's proposed combination "would provide the benefits described by Allen, such as enabling real-time tracking of financials and account data."

However, again, nothing new, as Hunter highlights the advantages of electronic file transfer by speaking about the high cost of conventional billboard media (Ex-2002, ¶5, 8-9), as noted by the Examiner. Ex-1004, p.265. Accordingly, Garfinkle adds nothing. Moreover, the weakness of the argument means Petitioner is not likely to prevail.

62

J. Allen and Budow Don't Raise Anything New on Claim 11 (Ground 3)

Petitioner's Mischaracterization of Claims Fails to Raise Genuine New Argument

Alternately, Petitioner contends that Claim 11 is obvious over the combination of Allen and Budow. Again, Allen is primarily concerned with point-of-sale manufacture and the sections relied upon by Petitioner relate to that aspect of its disclosure.

Next, Petitioner cites its expert affidavit (Ex-1002) for the unremarkable proposition that reducing costs is desirable.

Petitioner then cites Allen for a "movie storage facility that stores multimedia and associated advertising," which is a video on demand system in which the advertising is not provided to the customer to market because the customer is not engaged in sales activities. This is in contrast to recitations of claim 1 of marketing and showing of advertising materials in a different place or time. Such materials typically include trailers as noted in the Patent (Ex-1001, 13:33-40), which are typically shown weeks before the movie appears in the theater, not at the same viewing where the feature film is seen by the movie theatergoer. Petitioner argues, unsoundly, that Budow shows advertising materials at a different time or place. But, Petitioner cites Allen, where the place is the same, the location of the videocassette customer when he is buying the videocassette. Moreover, the

63

promotional spot is shown to the customer at the same time and place that the movie associated with it is being sold to the customer. Petitioner cannot prevail with such arguments, and institution should be denied.

Moreover, as noted by the Examiner, limitations respecting time or place are taught by Hunter. Ex-1004, p.445. Accordingly, no new argument is being raised.

<u>No New Argument: Substance of Allen Accounting Engine before USPTO</u>

Finally, Petitioner argues (Petition at 70) that "Allen's accounting and transaction engine automatically collects and provides sales and marketing data." However, as noted above, this aspect of Allen has no disclosure which was not already in art considered by the Examiner. More particularly, the Examiner stated that the "Sprogis [U.S. Patent Publication No. US 2004/0093608 Al] reference… discloses collecting box office sales… (Sprogis [0029])… It would have been obvious to… modify… the Hunter collecting of information for billing with the Sprogis' collection of ticket sales…. Further… Hunter… discloses '[i]nformation… utilized by a demographic analysis module 170 to generate information for reports to be sent to customers after their advertisements have run" (Hunter [0036])." Ex-1004, p.157, Ex-2003, essentially the same argument as raised by Petitioner.

K. <u>No Office Error Has Been Identified</u>

<u>Reasons for Allowance Do Not Refer to Allen</u>

Pointing to Allen's disclosure of "advertising material comprising audio and video components" (Ex-1006, 9:7-30), Petitioner tries to make something of the statement by the Examiner that "the ***state of the prior art*** suggested providing static images as advertising material (specifically movie posters) rather than full motion video segments with associated audio." Emphasis added. The contention is that the statement is incorrect and thus an error. First of all, the reference is ***not*** to Allen's patent. Second, as noted above, Allen fails to have all the elements of Hunter, and, accordingly, the Examiner's not asserting Allen makes perfect sense given that, for example, Hunter is fairly seen to better reflect "the state of the prior art." Moreover, it was the Hunter patent which was the principal reference cited by the Office. The contention of error is strained and completely unsupportable.

## V. **<u>CONCLUSION</u>**

A. References Either Alone or in Combination Do Not Anticipate or Render the <u>Claims Obvious and There Is No Reasonable Likelihood of Prevailing</u>

Garfinkle discloses a video-on-demand system, not marketing infrastructure. Accordingly, as detailed above, Garfinkle is missing many of the elements of

Claim 1. Kosten discloses only simple straight through satellite-based transmission of audiovisual materials. While he does disclose use of his satellite system to transmit marketing materials to freestanding billboards in lobbies, this is a standalone system and clearly does not remedy the failure of Garfinkle to teach the recitation of Claim 1 that the purchaser is "exhibiting" the multimedia film "in a public theater to a number of individuals".

Allen and Budow are similarly deficient as detailed above, dealing with different fields and being missing recited claim elements.

Moreover, none of these patents have anything to do with "distributing" film as used in the Patent and in the film industry. Petitioner's filling in the holes with expert testimony does not meet the standard for institution.

## B. Cited Art and Arguments Advanced Are Substantially the Same as Those before the Examiners during Prosecution

As noted above, all the fragments of the newly cited art which are cobbled together by Petitioner were present and evaluated by the Examiner during the prosecution. Respectfully, the petition should also be denied within the discretion of the Board.

66

C. <u>No Office Error Has Been Identified</u>

The contentions respecting Office error was simply that a general statement about the *prior art* does not describe a detail in *a particular patent*. This is not an error. Moreover, the patent identified as not being accurately described by the general statement of the prior art deals with remote manufacture of a videocassette at a retail point-of-sale, a completely different field from distribution and marketing multimedia films, and was likely and properly considered by the Office as not in the relevant art field, and thus not applied. Indeed, Allen's inclusion as a ground looks suspiciously like an attempt to bolster its importance to avoid a discretionary denial of institution.

For the foregoing reasons, it is respectfully urged that institution of *inter partes* review should be denied.

To the extent that the Board believes that oral argument would be of value, oral argument is respectfully requested.

Dated: July 25, 2024                              Respectfully submitted,

                                                 */s/Anthony H. Handal*
                                                 Anthony H. Handal
                                                 Registration No. 26,275
                                                 Mona Roy
                                                 Registration No. 40,982
                                                 Handal & Morofsky LLC
                                                 308 East Avenue
                                                 Norwalk, CT 06851
                                                 617 880-0811
                                                 handal@handalglobal.com

                                                 Of Counsel
                                                 Jared Doster
                                                 Registration No. 72,684
                                                 Carey Rodriguez LLP
                                                 1395 Brickell Avenue, Suite
                                                 700, Miami, FL 33131
                                                 305-356-5455
                                                 Jdoster@careyrodriguez.com

JA 077

CERTIFICATE OF WORD COUNT

Patent Owner certifies under 37 C.F.R. §42.24(d) that this preliminary response to the petition includes 13,079 words, as measured by Microsoft Word, exclusive of the table of contents, certificates of service, word count, and exhibits.

JA 078

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Patent Owner's Preliminary Response and Exhibits 2001 through 2003 have been served via Electronic Mail on Petitioner's counsel of record as follows:

> Xin-Yi Zhou
> William M. Fink
> Ben Haber
> Patric Reinbold
>
> At the following email addresses
>
> vzhou@omm.com
> tfink@omm.com
> bhaber@omm.com
> preinbold@omm.com

A courtesy copy was sent to the below counsel via electronic mail:

> Neal C. Belgam
> Daniel A. Taylor
>
> At the following email addresses
>
> nbelgam@skjlaw.com
> dtaylor@skjlaw.com

Dated: July 25, 2024

<i>/s/Anthony H. Handal</i>

JA 079