# EXHIBIT A

Trials@uspto.gov                                           Paper 15
Tel: 571-272-7822                                  Dated: October 3, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

DISNEY MEDIA & ENTERTAINMENT DISTRIBUTION LLC,
Petitioner,

v.

DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC,
Patent Owner.

———————————

IPR2024-00736
Patent 7,574,725 B2

———————————

Before JAMESON LEE, JOHN R. KENNY, and LISA A. MURRAY,
*Administrative Patent Judges*.

MURRAY, *Administrative Patent Judge*.

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

I. INTRODUCTION

Disney Media & Entertainment Distribution LLC ("Disney" or
"Petitioner") filed a Petition for *inter partes* review of claims 1, 4–7, 9, and
11 (the "challenged claims") of U.S. Patent 7,574,725 B2. Paper 2 ("Pet.");

IPR2024-00736
Patent 7,574,725 B2

*see* Ex. 1001 ('725 patent). Digital Media Technology Holdings, LLC ("Digital Media" or "Patent Owner") timely filed a Preliminary Response. Paper 8 ("Prelim. Resp."). With the permission of the Board, Petitioner filed a Preliminary Reply, Paper 11 ("Prelim. Reply"), and Patent Owner filed a Corrected Preliminary Sur-Reply, Paper 14 ("Corr. Prelim. Sur-Reply").

We have authority to determine whether to institute an *inter partes* review. *See* 35 U.S.C. § 314; 37 C.F.R. § 42.4(a) (2024) ("The Board institutes the trial on behalf of the Director."). Section 314(a) of Title 35 of the United States Code provides that an *inter partes* review may not be instituted "unless . . . the information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." Upon consideration of the evidence and arguments in the Petition (including its supporting testimonial evidence) as well as the evidence and arguments in the Preliminary Response, the Preliminary Reply, and the Corrected Preliminary Sur-Reply, we determine that the information presented shows a reasonable likelihood that Petitioner would prevail with respect to at least one of the challenged claims of the '725 patent. We thus institute an *inter partes* review of all the challenged claims of the '725 patent on all grounds asserted in the Petition. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354, 1359–60 (2018); 37 C.F.R. § 42.108(a).

A. *Real Parties in Interest*

Petitioner Disney identifies itself as a real party in interest. Pet. 1.

Patent Owner Digital Media identifies itself as a real party in interest. Paper 4, 1 (Patent Owner's Mandatory Notice).

IPR2024-00736
Patent 7,574,725 B2

B. *Related Matters*

The parties identify the following as a matter that may affect, or be affected by, a decision in this proceeding: *Digital Media Technology Holdings, LLC v. Disney Media & Entertainment Distribution LLC*, No. 2:22-cv-01642 (D. Del.). Pet. 1; Paper 4, 1 (Patent Owner's Mandatory Notice); *see* Ex. 1019 (First Amended Compl. (D. Del.)).

C. *The '725 Patent*

The '725 patent discloses a method of marketing and distributing multimedia. Ex. 1001 at 1:20–21 ('725 patent). A central server storing multimedia material in digital format, such as motion pictures and television programming, is connected to a communications network, such as the Internet. *Id.* at 2:53–57, 3:13–17. Exhibitors, such as theaters and television stations, can access the central server, preview available programming and download the programming along with marketing materials for the program or movie. *Id.* at 2:60–65, 3:12–21. The exhibitors show the multimedia material in a public theater to individuals in exchange for a paid admission, or are broadcast exhibitors. *Id.* at 2:64–65. Sales and marketing data specific to the multimedia material may be provided to exhibitors based upon information from the exhibitors. *Id.* at 3:22–25.

D. *Illustrative Claim*

Petitioner challenges claims 1, 4–7, 9, and 11 of the '725 patent. Claim 1 is the only independent claim challenged. Claim 1 is illustrative of the challenged claims and is reproduced below:

> 1. A method of marketing and distributing multimedia, the method comprising:

IPR2024-00736
Patent 7,574,725 B2

    a. receiving, by a server, multimedia material and advertising material from a producer or owner of said multimedia material, said advertising material being associated with said multimedia material, said advertising material comprising audio and video components;

    b. storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format;

    c. providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;

    d. providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;

    e. downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material; and

    f. providing said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, said purchasers downloading said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material, said purchasers storing the downloaded correlated information in a digital format corresponding to said advertising material; and

IPR2024-00736
Patent 7,574,725 B2

g. wherein said purchaser is an exhibitor exhibiting said multimedia material, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital format corresponding to said stored associated advertising material, being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed.

Ex. 1001, 16:19–17:2 ('725 patent).

## E. *Evidence*

Petitioner Disney relies on the following patent evidence.

| Name | Patent Document | Exhibit(s) |
|---|---|---|
| Budow | US 5,521,631 | 1008 |
| Garfinkle | US 5,530,754 | 1005 |
| Allen | US 5,909,638 | 1006 |

Disney relies on the following non-patent literature evidence.

| Name | Non-Patent Literature Title | Exhibit(s) |
|---|---|---|
| Kosten | "Digital Distribution: A Coming Attraction," *Film J. Int'l* (Sept.–Dec. 1999) | 1007 |

Disney also relies upon the Declaration of Dr. Henry H. Houh. Ex. 1002 ("Houh Decl.").

## F. *Prior Art and Asserted Grounds*

Disney contends that the challenged claims are unpatentable under 35 U.S.C. § 103(a) based on the following combinations of references:

IPR2024-00736
Patent 7,574,725 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 4–7, 9 | 103(a) | Garfinkle and Kosten |
| 11 | 103(a) | Garfinkle, Kosten, and Allen |
| 1, 4, 6–7, 9, 11 | 103(a) | Allen and Budow |
| 4 | 103(a) | Allen, Budow, and Kosten |

Pet. 3.

## II. REASONABLE LIKELIHOOD OF SUCCESS

We first turn to the question of whether there is "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

### A.  *Legal Standard*

Under the pre-AIA version of the statute that governs here,[1] a patent may not be obtained if "the differences between subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The question of obviousness is resolved on the basis of underlying factual determinations, including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of non-obviousness, if present. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

---

[1] *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, 125 Stat. 284 (2011). Because the '725 patent has an effective filing date before the AIA's effective date (March 16, 2013), this decision refers to 35 U.S.C. § 103(a).

IPR2024-00736
Patent 7,574,725 B2

When evaluating a claim for obviousness, we also must "determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). Under *KSR*, exemplary rationales that may support a conclusion of obviousness include:

> (A) combining prior art elements according to known methods to yield predictable results;
>
> (B) simple substitution of one known element for another to obtain predictable results;
>
> (C) use of known technique to improve similar devices (methods, or products) in the same way;
>
> (D) applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;
>
> (E) "obvious to try" – choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;
>
> (F) known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations are predictable to one of ordinary skill in the art; and,
>
> (G) some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

*KSR*, 550 U.S. at 418.

### B. *Level of Ordinary Skill in the Art*

To determine whether an invention would have been obvious at the time it was made, we consider the level of ordinary skill in the pertinent art at the time of the invention. *Graham*, 383 U.S. at 17. Various factors may be

IPR2024-00736
Patent 7,574,725 B2

considered, including the "type of problems encountered in the art; prior art
solutions to those problems; rapidity with which innovations are made;
sophistication of the technology; and educational level of active workers in
the field." *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citing
*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962–63
(Fed. Cir. 1986)). "[O]ne or more factors may predominate." *Id.*

The parties disagree regarding the definition of a person of ordinary
skill. Petitioner argues that one of ordinary skill in the art at the time the
invention was made "would have had a bachelor's degree in electrical
engineering, computer engineering, computer science, or a related field, and
at least one year of experience in the field of multimedia processing or
communication networks, or the equivalent, with additional education
substituting for experience and vice versa." Pet. 5–6. Patent Owner contends
that "[i]n the present matter, only persons working in the film distribution
business would be aware of the existence and scale of the problems created
by conventional manufacture and movement of feature films[.]" Prelim.
Resp. 13. According to Patent Owner, "[a] proper definition of the relevant
POSITA would be a person who has a Bachelor of Science Degree in
Entertainment Business, or a similar field, and at least one year of
experience in the field of film distribution, including marketing and sales."
*Id.* at 15.

Petitioner contends that the '725 patent is relevant to the technical
fields of "web based systems, streaming multimedia systems, distributed
systems, and network architectures," while Patent Owner contends that the
relevant fields are "entertainment business" or "film distribution, including
marketing and sales." *Compare* Ex. 1002 ¶ 24 (Houh Decl.) *with* Prelim.

IPR2024-00736
Patent 7,574,725 B2

Resp. 15. Petitioner believes that one of ordinary skill in the art would have had a technical bachelor of science degree. Patent Owner does not.

> The '725 patent identifies the field of the invention as follows:
>
> The present invention relates to the marketing and distribution of multimedia material, including digitally generated film, video, graphics and audio, and analogue[] traditional media converted into digital movie and television programs, and associated marketing materials for distribution over a computer network to exhibitors and broadcasters.

Ex. 1001 at 1:20–25 ('725 patent). Thus, according to the '725 patent, the relevant field of art is marketing and distribution of multimedia material over a computer network. Several references, e.g., Allen and Budow, have highly technical disclosures. Further, a patent is presumed to be enabling. By that standard, it would mean one of ordinary skill in the art would have sufficient skills to make and use the claimed invention without undue experimentation. We disagree with Patent Owner that one of ordinary skill in the art need not have a technical degree.

Accordingly, for purposes of this Decision, we adopt the following definition of the level of skill for one of ordinary skill in the art: a Bachelor of Science degree in electrical engineering, computer engineering, computer science, or a related field plus one year of experience related to marketing and distribution of multimedia material over a computer network, or the equivalent. We view this definition as consistent with the '725 patent and the asserted prior art, and we apply it in our analysis below.

## C. *Claim Construction*

Because the Petition was filed after November 13, 2018, we apply the same claim construction standard that would be used in a civil action under

9

IPR2024-00736
Patent 7,574,725 B2

35 U.S.C. § 282(b), following the standard articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). 37 C.F.R. § 42.100(b).

The parties dispute whether claim construction is required for three claim terms: "distributing," "exhibiting," and "correlated information," all of which appear in claim 1 of the '725 patent.

1. *"Distributing"*

Patent Owner alleges that "[i]n the film business, 'distribution' is defined as the process of marketing a film and supplying copies to exhibition venues." Prelim. Resp. 9. The citations to intrinsic evidence provided in the Preliminary Response do little to support this proposed construction. Patent Owner argues:

> [T]he Patent makes it clear that the term is being used as it is in the movie industry at the time of filing. For example, at 1:24–25 "distribution over a computer network to exhibitors and broadcasters," at 1:39–40 "marketing and distribution systems: the movie and television business," 1:41–43 "the motion picture and television industry today can benefit greatly by reducing overhead costs," at 1:54 "distributors," at 1:66–67 "distributing multimedia products, especially motion picture films," at 1:51–53 "distributors through film markets, catalogue sales and long established relationships between purchasers and sellers, sell films." and many more.

Prelim. Resp. 22–23. We are not persuaded that any of these excerpts from the Specification dictate that the term "distributing" must be construed narrowly, as Patent Owner proposes.

Patent Owner has not supplied an affidavit or declaration in support of its proposed claim constructions, and the only extrinsic evidence cited in support is a "Glossary of Film Terms" that was not provided with the Preliminary Response. *See id.* 17. While excerpts from the glossary were

IPR2024-00736
Patent 7,574,725 B2

filed with the original Preliminary Sur-Reply as Exhibit 2004, the document
is provided without any context and is incomplete. For example, the
glossary's definition of "distribution" (a term not found in the challenged
claims) refers to the entry for "exhibition," but the page containing that entry
is not included in the exhibit. *See* Ex. 2004, 6. Moreover, the glossary
appears to be derived from a 2013 publication. *See id.* at 21. The '725
invention is substantially older; the patent relates back to a provisional
application filed in May 2000. Ex. 1001, code (60). Accordingly, we do not
find Exhibit 2004, standing alone, to be persuasive evidence of the
understanding that one of ordinary skill at the time the invention was made
would have had of the term "distributing."

Petitioner argues that "distribution" (or "distributing," as the term
appears in the claims) "should be construed according to its plain and
ordinary meaning in a manner at least broad enough to encompass the
disclosed embodiments." Prelim. Reply 1–2. In particular, Petitioner argues
that "marketing" and "distributing" are "separate concepts that relate to
different claim elements." *Id.* at 1. Given the lack of evidence to suggest that
the patentee intended to adopt any special definition of the term
"distributing," for the purposes of our Decision on Institution, we determine
that the term "distributing" is not limited to the process of marketing a film
and supplying copies to exhibition venues. It also encompasses the technical
steps required to supply copies to exhibition venues, such as "providing a
server system accessible over a communication network . . . for transfer

IPR2024-00736
Patent 7,574,725 B2

of . . . digital format over said communication network[.]"[2] *See* Prelim. Reply 1 (quoting Ex. 1001 at 16:29–34 ('725 patent)).

### 2. *"Exhibiting"*

Patent Owner alleges that "'[e]xhibition' refers to the public showing of feature films in a public theater." Prelim. Resp. 9. The only support offered for this proposed construction is the "Glossary of Film Terms" discussed above, which does not date from the time that the invention was made. Moreover, the glossary excerpt provided as Exhibit 2004 does not include a definition for the term "exhibition." *See* Ex. 2004. Thus, Patent Owner's claim in the Preliminary Response that "[t]he meaning of the term 'exhibition' in the film industry is well-defined and broadly understood to be the process of showing the finished film to audiences" is without either intrinsic or extrinsic support. *See* Prelim. Resp. 29.

Petitioner argues that Patent Owner's proposed construction of "exhibition" is incomplete because "[c]laim 1 defines at least two types of 'exhibitors': a 'public theater' exhibitor and a 'broadcast exhibitor.'" Prelim. Reply at 3. Petitioner argues that, thus, Patent Owner's attempt to limit the term to exhibition in a "public theater" is inconsistent with the claim language. *Id.*

---

[2] While we adopt Petitioner's proposed construction for the purposes of our Decision on Institution, we caution the parties that, as always, our conclusion is not dispositive and may change in response to further development of the record. Future briefing should contain detailed support, both intrinsic and, to the extent necessary, extrinsic, for any claim construction proposed. Any party proposing to construe a term according to its "plain and ordinary meaning" should specify what that meaning is.

IPR2024-00736
Patent 7,574,725 B2

Given the lack of evidence to suggest that the patentee intended to adopt any special definition of the term "exhibiting," for the purposes of our Decision on Institution we determine that the term is not limited to a public showing of feature films in a public theater. It also encompasses, at a minimum, a showing of multimedia material by a "broadcast exhibitor."[3] *See* Prelim. Reply at 3 (citing Ex. 1001 at 16:63 ('725 patent)).

### 3. *"Correlated Information"*

With regard to the term "correlated information," Petitioner argues that the Preliminary Response proposes an implicit construction that improperly excludes determining "correlation" using human input. Prelim. Reply 3–4 (citing Prelim. Resp. 25–26). According to Petitioner, "'correlated information' should be construed at least broad[ly] enough to encompass the disclosures of the intrinsic record, including that it may be done with or without human input." *Id.* at 5.

Patent Owner denies that it has proposed a construction for the term and states that it has merely argued that the asserted prior art does not disclose correlation. Corr. Prelim. Sur-Reply 2–3. We determine, based on the evidence provided (discussed *infra* Section II.D.2.b), that we do not need to resolve this potential claim construction dispute between the parties. *See, e.g.*, *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy.'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

---

[3] See footnote 2, *supra*, which applies equally to this construction.

IPR2024-00736
Patent 7,574,725 B2

D. *Ground 1: Obviousness Under 35 U.S.C. § 103(a) Over Garfinkle in View of Kosten*

Petitioner asserts that claims 1, 4–7, and 9 of the '725 patent are unpatentable under 35 U.S.C. § 103(a) over Garfinkle and Kosten. Pet. 13–40. Patent Owner addresses this asserted ground with regard to independent claim 1, but does not discuss dependent claims 4–7 and 9 in any detail. Prelim. Resp. 15–35, 44. We summarize aspects of the asserted prior art and then address the parties' arguments.

1. *Garfinkle and Kosten*

Garfinkle discloses a video-on-demand system that provides access at local user sites to catalog data of video products available from a central station. Ex. 1005 at 1:54–57 (Garfinkle). The catalog data is periodically transferred to the user sites, where it is stored. *Id.* at 2:1–3. "This catalog data includes listings of the video products available at the central station, so-called trailers or previews for certain of the video products, and lead-ins for the initial portions of certain products to provide a seamless lead in to program material ordered from the central station." *Id.* at 2:4–8 (Garfinkle). In a preferred embodiment, "menu driven software allows a user to control the display of catalog data and to order video products from the central station interactively with displayed catalog material." *Id.* at 2:9–12.

Kosten is a trade journal article that discloses "[i]mproved feature film distribution." Ex. 1007, 54 (Kosten). Kosten includes the following figure:

IPR2024-00736
Patent 7,574,725 B2



FROM STUDIO TO SATELLITE TO A THEATRE NEAR YOU.

The Kosten figure depicts a system in which "[a] digital film file is simply transferred to and stored in the secure server system of a satellite distribution company, which then 'beams' the film to theatres across the U.S. or around the world, who then store it on their servers for later digital projection." *Id.* Kosten also states that "[i]mproved feature film distribution is only one of the many benefits ushered in by this distribution process. Exhibitors could turn theatre lobbies into smart advertising networks, targeting digital trailers and ad spots based on the demographic of their community and the film itself[.]" *Id.*

Petitioner asserts that one of ordinary skill in the art would have been motivated to combine the teachings of Garfinkle and Kosten because "Kosten discloses a business application for Garfinkle's technical implementation." Pet. 14. Petitioner further asserts that such a person would have had a reasonable expectation of success because Garfinkle and Kosten are "from the same field and address the same well-known issues." *Id.* at 13. Patent Owner does not dispute that Garfinkle and Kosten are from the same

IPR2024-00736
Patent 7,574,725 B2

field, but contends that that field is "file transport" rather than the field of the '725 invention, "marketing and distribution of multimedia material[.]" Ex. 1001 at 1:20–21 ('725 patent); *see* Prelim. Resp. 21, 23.

### 2. *Analysis of Claim 1*

We have reviewed Petitioner's contention that the combination of Garfinkle and Kosten renders claim 1 of the '725 patent unpatentable for obviousness. Pet. 13–36. We have also reviewed Patent Owner's response to that contention. Prelim. Resp. 15–35. We conclude that on balance, at this stage of the proceeding Petitioner has provided a sufficient showing that the asserted combination discloses the subject matter of claim 1. For the reasons discussed below, we determine that there is a reasonable likelihood that the Petitioner would prevail with respect to its allegation that the Garfinkle and Kosten combination discloses each element of claim 1. *See* 35 U.S.C. § 314(a).

### a. *1[pre]*

Petitioner asserts that Garfinkle discloses the preamble of claim 1 by describing "a video-on-demand system with an interactive user display that provides the user with a menu of options to assist him or her in identifying, previewing, and ordering a video product from the central station library." Pet. 17; Ex. 1005 at 1:58–62 (Garfinkle). Petitioner states that "[b]ecause Garfinkle's system supports previewing and transferring video products and related advertising materials, Garfinkle discloses a method of marketing and distributing multimedia." In addition, Kosten discloses a method of distributing multimedia from studio via satellite to exhibitors, and therefore "Kosten also discloses the marketing of multimedia content by explaining

16

IPR2024-00736
Patent 7,574,725 B2

that '[e]xhibitors could turn theatre lobbies into smart advertising networks[.]'" Pet. 17–18 (citing Ex. 1007, 54 (Kosten)).

Patent Owner disputes that either Garfinkle or Kosten are related to marketing and distributing multimedia. Based on its interpretation of the term "distributing," *see supra* § II.C, Patent Owner argues that "Defendant's assertion . . . that 'Garfinkle discloses a method of marketing and distributing multimedia . . .' is just wrong. Petitioner seeks to equate distribution to file transfer, an untenable position for a Patent dealing with the film business." Prelim. Resp. 23. Beyond its proposed narrow claim construction for the term "distributing," a construction that we have rejected, Patent Owner does not explain the distinction that it is attempting to draw between "file transfer" and "distributing multimedia," particularly when the multimedia is in digital form. Nor does Patent Owner provide a basis for distinguishing between the terms "video" and "film."

"[W]hether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 952 (Fed. Cir. 2005) (quoting *Storage Tech. Corp. v. Cisco Sys., Inc*., 329 F.3d 823, 831 (Fed. Cir. 2003)). Here, neither party has taken the position that the preamble of claim 1 is limiting. *See* Pet. 17–18; Prelim. Resp. 22–23. For the purposes of our Decision on Institution, we do not find it necessary to decide this issue. To the extent that the preamble is limiting, we determine that Petitioner would likely establish that Garfinkle and Kosten each disclose "marketing and distributing multimedia" according to the plain and ordinary meaning of those terms.

IPR2024-00736
Patent 7,574,725 B2

   b. *1[a]*

During examination, the Examiner found that "receiving multimedia material from an owner of such multimedia material" is "an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material[.]" Ex. 1004, 305 (prosecution history); *see also* Ex. 1002 ¶ 73 (Houh Decl.). The remainder of claim element 1[a] describes receiving multimedia material and advertising material "by a server," with "said advertising material being associated with said multimedia material, said advertising material comprising audio and video components[.]" Ex. 1001 at 16:21–25.

Petitioner asserts that Kosten discloses receiving digital multimedia by a server. Pet. 19–20. Kosten teaches that "[a] digital film file is simply transferred to and stored in the secure server system of a satellite distribution company[.]" Ex. 1007, 54. The figure on page 54 of Kosten illustrates transferring content from a "Studio" (i.e., the owner of a film) to a CyberStar Network Operations Center (i.e., a server). *Id.*; *see* Pet. 20.

Petitioner also asserts that Garfinkle discloses a server receiving multimedia and associated advertising materials. Pet. 18. Garfinkle's Figure 1 shows a video-on-demand system including a central station 10, a product store 12, and a catalog store 14. Ex. 1005 at 2:39–44, Fig. 1 (Garfinkle). The specification of Garfinkle explains:

> For each of the video products in product store 12, catalog data is prepared and stored in central station catalog store 14. This catalog data includes, for example, the product name, its address in the product store 12, its price, *and for certain video products related material such as a trailer to allow the user to preview the product*, a header to allow immediate viewing of an ordered product, critical comments relative to the product, and catalog search keys.

IPR2024-00736
Patent 7,574,725 B2

*Id*. at 4:37–46 (emphasis added). According to Petitioner, "A POSITA implementing the combined Garfinkle-Kosten teachings would have been motivated to use Kosten's media distribution teachings with Garfinkle's central station, and its associated 'stores,' to receive multimedia and associated advertising materials from a producer or owner of that material, such as Kosten's 'Studio.'" Pet. 20.

Patent Owner's objection to Petitioner's argument focuses on whether the advertising material disclosed in Garfinkle is "associated with" the disclosed multimedia material. "Garfinkle's video-on-demand system . . . disclos[es] nothing more than the well-known fact that associative memory structures exist[.]" Prelim. Resp. 24. According to Patent Owner, "the positive recitation of 'advertising material being associated with said multimedia material' is a method step not taught by Garfinkle." *Id.* At best, Patent Owner argues, Garfinkle only discloses fields indicating availability, price, and various search terms. *Id.* 25 (citing Ex. 1005 at 3:32–49). Patent Owner asserts that these flags do not disclose the "associated with" language of element 1[a] because "interpretation of the flag as being an association is left to the user during searching." *Id.* "[A]ny action based on potential correlation is made by the user[.]" *Id.* at 26. Patent Owner concludes that "[a]ll aspects of the claims relating to correlation information are not taught by Garfinkle or Kosten, alone or in combination." *Id.*

Garfinkle teaches that "[f]or each of the video products in product store 12, catalog data is prepared and stored in central station catalog store 14." *Id.* at 4:39–41. This is an unambiguous statement that the material stored in catalog store 14 is correlated with specific video products in product store 12 before it is viewed by users. Garfinkle also describes the

19

IPR2024-00736
Patent 7,574,725 B2

catalog data as "related material," meaning related to a specific video product. *Id*. at 4:42–46 ("for certain video products related material such as a trailer to allow the user to preview the product"). Garfinkle further discloses that some of the catalog data comprises audio and video components. *Id.* (catalog data comprises "a trailer to allow the user to preview the product, [and] a header to allow immediate viewing of an ordered product"). Accordingly, we conclude that Petitioner would likely establish that Garfinkle alone or in combination with Kosten discloses each limitation in element 1[a].

### c. *1[b]*

Element 1[b] describes "storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format[.]" Ex. 1001 at 16:26–28. The Specification explains that in the '725 invention, "the operator of the system inputs an identifier, such as a title of a movie, associated with the material to be entered, converted, and stored on storage media." *Id.* at 4:59–62. Petitioner argues that "[b]ecause Garfinkle similarly assigns catalog data fields to associate a video product's name and address with related materials, a POSITA would have understood that the catalog data correlates the video products with their related materials." Pet. 23. Furthermore, Garfinkle discloses that "the catalog store and product store may physically reside in a single digital memory that is functionally addressable as catalog memory space and product store memory space." Ex. 1005 at 3:15–19 (Garfinkle). Petitioner asserts that this constitutes storage on a computer readable storage medium. Pet. 22.

IPR2024-00736
Patent 7,574,725 B2

Patent Owner's counter-argument is the same as for element 1[a]: because "it is the would-be viewer who determines whether there is an association[,]" Garfinkle does not disclose *associated* advertising material. Prelim. Resp. 25. For the reasons discussed above, we reject this argument and determine that Petitioner would likely establish that Garfinkle discloses claim element 1[b].

### d. *1[c]*

Element 1[c] reads: "providing a server system accessible over a communication network . . . for transfer of said correlated information in a digital format over said communication network to potential purchasers[.]" Ex. 1001 at 16:29–34. Petitioner argues that Garfinkle discloses a communications network, shown as dash line 16 of Figure 1. Ex. 1005 at Fig. 1. "The link 16 may be copper wire of the type used by the telephone company, a radio frequency wireless communications link of the type used in satellite-to-earth communications, a coaxial cable, a fiber optic cable, cellular wireless or other suitable link[.]" *Id.* at 2:60–64. The link connects the central station 10 to a plurality of user sites 18, thereby allowing a user to "order video products from the central station interactively with displayed catalog material." *Id.* at 2:58–60, 2:11–12; *see* Ex. 1002 ¶¶ 81–82 (Houh Decl.).

Patent Owner does not dispute that Garfinkle discloses this limitation. *See* Prelim. Resp. 25. Accordingly, we determine that Petitioner would likely establish that Garfinkle discloses claim element 1[c].

IPR2024-00736
Patent 7,574,725 B2

> *e. 1[d]*

Element 1[d] describes "providing samples of said correlated information in a digital format" from the server system over the communications network to potential purchasers. Ex. 1001 at 16:35–39. Petitioner asserts that Garfinkle discloses this element. Pet. 26–27; *see* Ex. 1005 at 3:26–31 ("A user input device 28 interacts with the catalog data . . . to allow the user to use the catalog data stored in catalog store 22 to, in some cases, preview video products available from the central station 10, and to order any available video product in the catalog store.") (Garfinkle). The preview content includes trailers and lead-ins, which are "an initial segment of the video product" that is "on the order of two minutes long." Ex. 1005 at 4:17–22; *see also id.* at Abstract, 2:1–7, 3:59–62, 4:55–58.

Patent Owner responds that "[w]hile Garfinkle may have the *capability* of providing samples of information, the lack of flagging specific to correlation means that the human user is the one determining 'correlation.'" Prelim. Resp. 25 (emphasis in original). This is essentially the same as Patent Owner's counter-argument for element 1[a]. In addition, the Garfinkle system is not merely *capable* of providing samples, but actually does provide such samples in response to human user input:

> Along with the listing of the video products, conveniently an indication can be made as to whether or not the catalog store 22 includes for the product a trailer, a lead-in, a critic's review, or the like. A cursor 53 can be manipulated by the user via the input device 28 to command the microprocessor 20 to address and fetch from the catalog store 26 the material called for by means of the cursor 53. The user can also order a desired video product by pointing with the cursor to the desired product and entering an appropriate command[.]

IPR2024-00736
Patent 7,574,725 B2

Ex. 1005 at 3:59–4:1 (Garfinkle). Additionally, nothing in the Specification or in the language of claim 1 precludes human interaction with the server system over the communications network of claim 1. Accordingly, we determine that Petitioner would likely establish that Garfinkle discloses claim element 1[d].

### f. 1[e]

Element 1[e] reads: "downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material[.]" Ex. 1001 at 16:40–46. Petitioner contends that this element is disclosed in Garfinkle as well. Pet. 27–28. Garfinkle provides that "[v]ideo products are downloaded by the central station from the product store 12 to a selected user site 18 in response to a download request from that particular user site." Ex. 1005 at 3:11–14 (Garfinkle); *see also id.* at 2:67–3:2 ("Preferably, data is downloaded from the central station to the user sites in a compressed digital data stream[.]")

Patent Owner argues that "[w]hile trailers are provided in Garfinkle, "correlated information," as recited in claim 1, cannot fairly be said to be disclosed by Garfinkle for the reasons discussed above." Prelim. Resp. 27. For the reasons discussed *supra* § II.D.2.b, we determine that Petitioner would likely establish that Garfinkle discloses claim element 1[e].

### g. 1[f]

Element 1[f] reads:

IPR2024-00736
Patent 7,574,725 B2

> providing said correlated information in a digital format
> corresponding to said advertising material that is associated
> with said multimedia material to said purchasers from said
> server system over said communication network, allowing
> purchasers to locally market and sell said multimedia material,
> said purchasers downloading said correlated information in a
> digital format corresponding to said advertising material that is
> associated with said multimedia material, said purchasers
> storing the downloaded correlated information in a digital
> format corresponding to said advertising material[.]

Ex. 1001 at 16:47–57. Petitioner contends that this element is disclosed by the combination of Garfinkle and Kosten. Pet. 28–32. As discussed *supra* §§ II.D.2.d and II.D.2.f in connection with elements 1[c] and 1[e], Garfinkle discloses providing "related materials" such as a trailer, a lead-in, and critical comments, sending them from central station 10 to user sites 18 over communications link 16. "[T]he catalog data is periodically downloaded to each of the user sites 18 where it is stored in the user site catalog store 22[.]" Ex. 1005 at 4:41–49 (Garfinkle). Petitioner asserts that Kosten supplies the remaining limitation of element 1[e], "allowing purchasers to locally market and sell said multimedia material[.]" Pet. 29–31.

Kosten teaches that distribution is "not only the vital link between the studios and exhibitors and, by extension, the audience, but also a key component of the revenue stream and the business model of these industries." Ex. 1007, 52 (Kosten). Petitioner argues that "[b]ecause Kosten discloses that distribution is 'a key component of the revenue stream and the business model,' and identifies advertising as '[a]dditional revenue generation,' a POSITA would have understood that Kosten's theaters locally market and sell tickets to the exhibition of multimedia material." Pet. 30. In fact, during prosecution the Examiner adopted as admitted prior art that "it is

24

IPR2024-00736
Patent 7,574,725 B2

notoriously well known in the art for patrons to pay an admission fee to attend presentations at a movie theater so that a movie theater may generate revenue and thus continue to provide screening services to patrons." Ex. 1004, 229; *see also id.* at 225, 267 ('725 prosecution history). Thus, Petitioner argues, a person of ordinary skill in the art would have been motivated to implement Garfinkle's system to allow purchasers to engage in Kosten's business application of the system "to locally market and sell said multimedia material." Pet. 29. "Because Garfinkle discloses a system allowing a purchaser to download a movie to a 'user site,' such as a theater, for display, it would have been obvious for the purchaser to locally market and sell admissions to the movie's exhibition." *Id.*

Patent Owner disagrees that there would have been a motivation to combine the teachings of Kosten and Garfinkle by using Kosten's "theater" as a "User Site" in Garfinkle's system. Prelim. Resp. 28, 31–32. As Patent Owner explains, "Satellite transmission is itself quite expensive, so applying it to Garfinkle is not an automatic conclusion. Indeed, the whole point of Garfinkle is that by storing a lead-in locally, expensive services like satellite transmission may be avoided." *Id.* at 31. Patent Owner argues that Garfinkle, a video-on-demand system, actually teaches away from making the combination in the following passage:

> Even with data compression, a sizable memory is required at the user site to store even a single video product, such as a movie. Therefore, it is practical only to store one or at most a few video products at the user site at any given time. A need arises, therefore, to provide a user interface to the large number of video products available at the central station without the need for a relatively costly two-way wireless, interactive satellite network.

Ex. 1005 at 1:42–50 (Garfinkle); *see* Prelim. Resp. 32.

IPR2024-00736
Patent 7,574,725 B2

The passage cited by Patent Owner appears in Garfinkle's description of the prior art and distinguishes the Garfinkle system from U.S. Patent No. 5,291,554 to Morales, which relied on "a two-way interactive wireless satellite network." Ex. 1005 at 1:30–33. In the detailed description of a preferred embodiment of the Garfinkle invention, however, Garfinkle expressly provides that communications link 16 may be, among other possible choices, "a radio frequency wireless communications link of the type used in satellite-to-earth communications[.]" *Id.* at 2:61–63. Thus, Garfinkle contemplates the possibility of using satellite transmission to implement the preferred embodiment. This is the opposite of teaching away from combining the Garfinkle distribution system with the satellite-based business application disclosed in Kosten. For the purposes of our Decision on Institution we conclude that there is a reasonable likelihood that Petitioner would establish that the combination of Garfinkle and Kosten discloses claim element 1[f].

> h. *1[g]*

Claim element 1[g] comprises the following limitations: (1) "said purchaser is an exhibitor exhibiting said multimedia material . . . in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor"; and (2) "said advertising material . . . being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed." Ex. 1001 at 16:58–17:2. Petitioner contends that Garfinkle alone or in view of Kosten discloses this element. Pet. 32–36.

First, as discussed *supra* § II.D.2.g in connection with element 1[f], the Examiner adopted as admitted prior art that "it is notoriously well known

IPR2024-00736
Patent 7,574,725 B2

in the art for patrons to pay an admission fee to attend presentations at a movie theater[.]" Ex. 1004, 229; *see also id.* at 225, 267 ('725 prosecution history). Kosten's Figure also illustrates a public theater exhibiting films to paying customers. Ex. 1007, 54 (Kosten). With regard to the possibility that "said purchaser" is "a broadcast exhibitor[,]" Petitioner has provided a declaration asserting that "the projection of a movie in a theater is a form of broadcasting the content to those within visual range of the screen as the movie projector modulates light that reflects off the screen and into the eyes of the viewers." Ex. 1002 ¶ 96 (Houh Decl.).

Second, Petitioner argues that Kosten discloses showing a movie's advertising material at a time or place different from that of the movie. Pet. 36. Specifically, Kosten discloses that "[e]xhibitors could turn theatre lobbies into smart advertising networks, targeting digital trailers and ad spots based on the demographic of their community and the film itself—no longer will they be stuck with standard trailers attached to each celluloid print." Ex. 1007, 54. Petitioner asserts that "[a] POSITA would have been motivated to use Kosten's movie theater as a user site in Garfinkle's system and exhibit advertising materials in the theater lobby or on theater screens at a different time or place than the associated movie." Pet. 36.

Patent Owner disputes that Garfinkle discloses "marketing or exhibition, or even distribution, as recited in Claim 1[.]" Prelim. Resp. 30. According to Patent Owner,

> Garfinkle has nothing to do with 'exhibition' . . . . The meaning
> of the term 'exhibition' in the film industry is well-defined and
> broadly understood to be the process of showing the finished
> film to audiences. . . . In contrast, the display of the film in
> Garfinkle is to the customer.

27

IPR2024-00736
Patent 7,574,725 B2

*Id.* at 29. In support of this statement, Patent Owner cites to the "Glossary of Claim Terms" discussed *supra* § II.C. As discussed above, the glossary dates from a later period than the effective filing date of the '725 patent and therefore is not good evidence of the meaning of the disputed terms to one of ordinary skill in the art at the time the invention was made. Moreover, the page containing the definition of "exhibition" is not included in the excerpt provided as Exhibit 2004. Thus, as the record currently stands there is no evidence to support Patent Owner's proposed understanding of the term "exhibition." There is, however, intrinsic evidence that the "exhibitor" of claim 1 may either exhibit multimedia material in a public theater *or* may be "a broadcast exhibitor[.]" Ex. 1001 at 16:58–63. As discussed *supra* § II.C, Patent Owner's proposed definition of the term "exhibiting" appears to be too narrow.

At this stage of the proceeding, Petitioner has produced evidence to support its claim that the combination of Garfinkle and Kosten discloses all aspects of the limitation "said purchaser is an exhibitor exhibiting said multimedia material . . . in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor[.]" Patent Owner has not produced evidence to the contrary. Over the course of the trial, it may be necessary to determine the meaning of the term "broadcast exhibitor," based on a complete record and briefing by the parties, as well as whether the combination of Garfinkle and Kosten adequately discloses exhibition by a "broadcast exhibitor." Given the current state of the record, however, for the purposes of our Decision on Institution we conclude that there is a reasonable likelihood that Petitioner would establish that the combination of Garfinkle and Kosten discloses claim element 1[g].

IPR2024-00736
Patent 7,574,725 B2

In conclusion, for the reasons discussed above we determine that there is a reasonable likelihood that Petitioner would prevail with respect to its challenge of the patentability of claim 1 in light of Garfinkle in view of Kosten. *See* 35 U.S.C. § 314(a). Consequently, we determine to institute an *inter partes* review based on the grounds asserted in the Petition.

### 3. *Analysis of Claims 4–7 and 9*

We have reviewed Petitioner's contentions with respect to claims 4–7 and 9, which depend from claim 1, and we determine that the Petition provides a sufficient showing, at this stage of the proceeding, that the combination of Garfinkle and Kosten discloses the subject matter of these claims. *See* Pet. 36–40. Patent Owner does not present any arguments specifically addressing claims 4–7 and 9. *See* Prelim. Resp. 44..

### E. *Ground 2: Obviousness Under 35 U.S.C. § 103(a) Over Garfinkle in View of Kosten and Allen*

Petitioner asserts that claim 11 of the '725 patent is unpatentable under 35 U.S.C. § 103(a) over Garfinkle and Kosten (summarized above, *see supra* § III.D.1) in view of Allen. Pet. 40–46; *see* Ex. 1006 (Allen). We begin by summarizing aspects of Allen below.

### 1. *Allen*

Allen discloses a system in which remote sites consisting of either video retail stores or a cable television head end allow customers to preview and order movies for rental and sale from video kiosks. The selected movie is then either retrieved from local cache storage or downloaded from a central distribution site for manufacturing onto a blank or reused videotape. Ex. 1006 Abstract (Allen). The invention in Allen is "a system for capturing,

29

IPR2024-00736
Patent 7,574,725 B2

storing and retrieving movies recorded in a video format and stored in a compressed digital format at a central distribution site." *Id.* at 3:19–22. "Also captured by the video capture center are materials associated with each movie such as movie previews, movie labels, movie sell–through artwork in digital, analog and photographic forms." *Id.* at 9:16–21. The digitized versions of the movies, and the associated artwork and previews, are all identified and tracked through a relational database[.]" *Id.* at 9:24–29, 9:55–59.

### 2. *Analysis of Claim 11*

We have reviewed Petitioner's contentions with respect to claim 11, which depends from claim 1, and we determine that the Petition provides a sufficient showing, at this stage of the proceeding, that the combination of Garfinkle, Kosten, and Allen discloses the subject matter of the claim. Pet. 40–46. Patent Owner does not present any arguments specifically addressing claim 11. *See* Prelim. Resp. 44.

### F. *Ground 3: Obviousness Under 35 U.S.C. § 103(a) Over Allen in View of Budow*

Petitioner asserts that claims 1, 4, 6–7, 9, and 11 of the '725 patent are unpatentable under 35 U.S.C. § 103(a) over Allen (summarized above, *see supra* § III.E.1) in view of Budow. Pet. 46–70; *see* Ex. 1008 (Budow). We summarize aspects of Budow below and then address the parties' arguments.

### 1. *Budow*

Budow discloses a system for streaming multimedia to rooms in hospitality establishments. Specifically, the invention is "[a]n interactive video services system for enabling store and forward distribution of digitized

IPR2024-00736
Patent 7,574,725 B2

video programming[.]" Ex. 1008, Abstract. "[E]ncoded and compressed
digital video signals are transmitted via satellite link from a centrally located
uplink site to a plurality of hospitality establishments[.]" *Id.* at 2:62–67.
"[D]ata can be transmitted to customers' rooms and broadcast on in-room
TVs in the form of barker screens and advertisements, which may be
transmitted from the systems control computer in place of standard
broadcast advertising." *Id.* at 4:2–5.

   2. *Analysis of Claim 1*

   We have reviewed Petitioner's contention that the combination of
Allen and Budow renders claim 1 of the '725 patent unpatentable for
obviousness. Pet. 46–70. According to Petitioner, Allen teaches each
limitation of claim 1 except for methods and processes of marketing and
distributing multimedia materials, which Petitioner asserts are taught by
Budow. *See* Pet. 47 ("Budow also discloses methods of locally marketing
and selling multimedia material, including advertisements"), 50
("[A]dapting Allen's system to incorporate Budow's methods and processes
of marketing and distributing multimedia materials would be within a
POSITA's capability.") Petitioner's declarant asserts that "Allen's 'central
site'/'host data center 10' . . . operates similarly to Budow's 'distribution
center 2a' . . . , and Allen's 'retail outlets 20' . . . correspond to Budow's
'hospitality establishments[.]'" Ex. 1002 ¶ 118 (Houh Decl.); *see* Ex. 1006
Fig. 21 (Allen); Ex. 1008 Fig. 1 (Budow). Petitioner contends that Allen and
Budow "provide complementary solutions for distributing digital multimedia
and associated advertising materials from a centralized station to remote
sites using a public communications system. . . . A POSITA seeking to
decrease the cost and effort of distributing multimedia and associated

IPR2024-00736
Patent 7,574,725 B2

advertising materials would have known of and consulted these proposed solutions." Pet. 46–47.

We have also reviewed Patent Owner's response to Petitioner's contentions. Prelim. Resp. 35–44. Patent Owner's principal objections to Petitioner's argument that claim 1 is unpatentable over Allen and Budow are that: (1) Allen's system, which manufactures VHS copies of movies for sale at a retail outlet, is not involved in exhibition and is therefore non-analogous prior art; (2) while Petitioner calls both Allen and Budow "distribution systems," the two references "only involve *file transport*. This distinction is not trivial because, as a result of that inadequacy, neither Allen nor Budow deal with exhibition as recited in the claims"; and (3) combining Allen and Budow is "unsound" because they are dissimilar: "Allen deals with remote manufacturing, while Budow deals with simple video-on-demand in a trunk and branch network." Prelim. Resp. 36–38 (emphasis in original). These arguments are based on Patent Owner's proposed interpretation of the terms "exhibition" and "distribution" in the context of the film industry. As previously discussed, we have determined Patent Owner's proposed claim constructions for these terms to be overly narrow, and therefore we do not find these arguments persuasive.

We conclude that at this stage of the proceeding, Petitioner has provided a sufficient showing that the asserted combination of Allen and Budow discloses the subject matter of claim 1. We include claim 1 in the instituted *inter partes* review in the context of this asserted ground as well as in the context of Ground 1, discussed *supra* § II.D. *See SAS*, 138 S. Ct. at 1354, 1359–60; 37 C.F.R. § 42.108(a).

IPR2024-00736
Patent 7,574,725 B2

    *3. Analysis of Claims 4, 6–7, 9, 11*

    We have reviewed Petitioner's contentions with respect to claims 4, 6–7, 9, and 11, all of which depend from claim 1, and we determine that the Petition provides a sufficient showing, at this stage of the proceeding, that the combination of Allen and Budow discloses the subject matter of these claims. *See* Pet. 67–70. Patent Owner does not present any arguments specifically addressing the applicability of Allen and Budow to claims 4, 6–7, and 9. *See* Prelim. Resp. 44.

    Regarding claim 11, Petitioner argues that Allen discloses "an accounting and transaction engine for monitoring and reporting marketing and sales data of multimedia and advertising materials[.]" Pet. 41, 70; *see* Ex. 1006 at 3:48–51 (Allen). Patent Owner disagrees, maintaining that

> [w]hile Allen at 11:17–20 states '[w]ith this facility, studios can monitor their individual financial data, sales . . . and promotion results,' there is no 'automatically collecting sales information from exhibitor recipients of . . . multimedia material and providing sales and marketing data, specific to said . . . multimedia material, to exhibitors based upon information from . . . exhibitors.' as recited in claim 11.

Prelim. Resp. 43–44. This is a dispute best resolved at trial on a complete record.

### G. *Ground 4: Obviousness Under 35 U.S.C. § 103(a) Over Allen in View of Budow and Kosten*

    Petitioner asserts that claim 5 of the '725 patent is unpatentable under 35 U.S.C. § 103(a) over Allen (summarized above, *see supra* § III.E.1) in view of Budow (summarized above, *see supra* § III.F.1) and Kosten (summarized above, *see supra* § III.D.1). Pet. 70–76. We have reviewed Petitioner's contentions with respect to claim 5, which depends from

IPR2024-00736
Patent 7,574,725 B2

claim 1, and we determine that the Petition provides a sufficient showing, at
this stage of the proceeding, that the combination of Allen, Budow, and
Kosten discloses the subject matter of the claim. *See id.* Patent Owner does
not present any arguments specifically addressing claim 5. *See* Prelim.
Resp. 44.

### III. DISCRETIONARY DENIAL UNDER SECTION 325(d)

We next consider whether we should exercise our discretion under
35 U.S.C. § 325(d) to deny institution. Patent Owner argues that the facts
support discretionary denial because, according to Patent Owner: (1) the
asserted prior art is cumulative of the art considered by the Office during
examination; and (2) Petitioner has not identified any Office error. Prelim.
Resp. 44–65.

*A. Legal Standard*

Institution of *inter partes* review is discretionary. *See Harmonic Inc.
v. Avid Tech., Inc*., 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is
permitted, but never compelled, to institute an IPR proceeding."); 35 U.S.C.
§ 314(a). Section 325(d) provides that the Director[4] may elect not to institute
a proceeding if the challenge to the patent is based on matters previously
presented to the Office.

35 U.S.C. § 325(d) states, in pertinent part:

> In determining whether to institute or order a proceeding under
> this chapter, chapter 30, or chapter 31, the Director may take
> into account whether, and reject the petition or request because,
> the same or substantially the same prior art or arguments
> previously were presented to the Office.

---

[4] The Board institutes trial on behalf of the Director. 37 C.F.R. § 42.4(a).

IPR2024-00736
Patent 7,574,725 B2

35 U.S.C. § 325(d). Thus, there are two separate issues for the Director to consider: whether the petition presents the same or substantially the same art previously presented to the Office, and whether the petition presents the same or substantially the same arguments previously presented to the Office. *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 7–8 (Feb. 13, 2020). If the answer to either inquiry is yes, then the Board acting on behalf of the Director may decline to institute an IPR proceeding, unless a petitioner demonstrates that the Office erred in a manner material to the patentability of the challenged claims. *Id*.

Whether proffered art or arguments are "the same or substantially the same" as art or arguments previously presented to the Office is a highly factual inquiry that may be resolved by considering the non-exclusive factors set forth in *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 (Dec. 15, 2017) (precedential as to § III.C.5, first paragraph). These are: (a) the similarities and material differences between the asserted art and the prior art involved during examination; (b) the cumulative nature of the asserted art and the prior art evaluated during examination; (c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection; (d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art; (e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and (f) the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments. *Id.*, Paper 8 at 17–18; *see Advanced Bionics*, Paper 6 at 9 n.10. If, after review of factors (a), (b), and (d), we determine that the

IPR2024-00736
Patent 7,574,725 B2

same or substantially the same art or arguments previously were presented to the Office, then, and only then, do we consider factors (c), (e), and (f), which relate to whether the Office erred in a manner material to the patentability of the challenged claims. *Advanced Bionics*, Paper 6 at 10.

B. *Summary of the Prosecution History*

The '725 patent issued from U.S. Application No. 09/840,283, filed on April 23, 2001. *See* Ex. 1001, codes (21), (22). The Allen reference asserted in the current Petition appeared in the Examiner's search history during prosecution, but there is no evidence that the Examiner gave it any consideration, and it is not listed among the "References Cited" by the '725 Patent. *See* Ex. 1004, 138 ('725 patent prosecution history); Ex. 1006 (Allen); Ex. 1001, code (56) ('725 patent). The other prior art references cited in the Petition—Garfinkle, Kosten, and Budow—do not appear in the prosecution history at all.

During prosecution, the Examiner rejected claims of the '725 patent in three Non-Final and three Final Office Actions, resulting in a total of six rounds of claim amendments. *See generally* Ex. 1004. In the third Final Office Action, the Examiner rejected the claims that eventually issued as claims 1, 4–6, and 11 under 35 U.S.C. § 103(a) as being unpatentable over US 2002/0162113 A1 (Oct. 31, 2002) ("Hunter") in view of Applicant's own originally filed specification and US 5,918,213 (June 29, 1999) ("Bernard"). Ex. 1004, 447, 507; *see* Ex. 2002 (Hunter); Ex. 2001 (Bernard). The remaining two challenged claims, claims 7 and 9, were added in the applicant's final amendment filed on April 3, 2009, and were never the subject of a rejection. Ex. 1004, 487–488, 507.

IPR2024-00736
Patent 7,574,725 B2

*C. Analysis*

Patent Owner argues that the prior art asserted in the Petition is cumulative of three references involved in the examination of the '725 patent: Hunter, Bernard, and US 2004/0093608A1 (May 13, 2004) ("Sprogis"). Prelim. Resp. 64. We summarize aspects of the prior art before the Examiner and then address the parties' arguments regarding our discretion to deny institution in this proceeding.

*1. Prior Art Before the Examiner*

The main reference discussed by the Examiner, Hunter, teaches remote programming of digital billboards by advertisers, as well as applying the same technology to display digital movies in theaters. Ex. 2002 (Hunter). Hunter discloses that "operators of digital movie theaters have ongoing, continuous access to movies that can be ordered in digital form for display on selected screens at their theaters at selected times." *Id.*, Abstract. It does not, however, disclose sending advertising material to a digital theater in addition to digital movies. For that element of claim 1, the Examiner relied on Bernard.

Bernard discloses "automated remote previewing and purchasing of music, video, software, and other multimedia products" without interacting with a human operator. Ex. 2001, Title, Abstract. During prosecution, "Bernard was introduced solely to teach providing samples of a product to potential purchasers[.]" Ex. 1004, 444–445 (Nov. 25, 2008 Final Office Action).

The third reference, Sprogis, discloses "providing advertisement and other information to audiences in a theatre environment[.]" Ex. 1003 ¶ 2. It was indisputably considered by the Examiner. However, the Patent Owner

IPR2024-00736
Patent 7,574,725 B2

has not provided any reason why it believes any reference applied by the Petitioner is cumulative to the disclosure of Sprogis.

2. *Analysis Under Advanced Bionics*

The Board may decline to institute a proceeding if the same, or substantially the same, prior art was presented to the Office during examination. 35 U.S.C. § 325(d); *Advanced Bionics*, Paper 6 at 7–8. Here, none of the prior art raised in the Petition was discussed during examination. Only one of the references, Allen, appears in the prosecution history at all, and then only as one of many entries in the Examiner's search history. *See* Ex. 1004, 138 ('725 patent prosecution history). In addition, none of the references raised in the Petition are related in any way to Hunter or Bernard. For example, they do not share a written description or a common inventor or assignee. Even if all of the references pertain to the same field (which Patent Owner disputes, *see*, *e.g.*, Prelim. Resp. 60), prior art cited in a petition for *inter partes* review and art cited during prosecution of the challenged patent is always likely to relate to the same subject matter as the claims at issue. That fact alone cannot be sufficient to show that the additional references are cumulative of the art previously presented to the Office.

Patent Owner alleges that Petitioner's asserted combinations of prior art "involve[] nothing more than hindsight picking and choosing of modules, reengineering some of those modules to fit the claim language, redefining terms to fit the claim language, and then filling in holes with speculation[.]" Prelim. Resp. 33. Petitioner correctly responds that

> [i]t is not enough to merely contend that "fragments" or
> "elements" of the asserted prior art references are cumulative of
> prior art references before the Examiner during prosecution. . . .

IPR2024-00736
Patent 7,574,725 B2

> Instead, *Advanced Bionics* requires that the asserted references,
> as a whole and in the proposed grounds, must be "the same or
> substantially the same art" as those presented during
> prosecution.

Prelim. Reply 6. Petitioner argues that "Because PO has failed to identify
any reference that satisfies this standard, the Board should not exercise its
discretion under §325(d) to deny institution." *Id.* We agree with Petitioner
that Patent Owner has not established that any of Garfinkle, Kosten, Allen,
or Budow are substantially the same art as either Hunter or Bernard.

In addition to considering whether the same *prior art* was presented to
the Office during examination, the Board may decline to institute a
proceeding if the same, or substantially the same, *arguments* were
previously made to the Office. 35 U.S.C. § 325(d); *Advanced Bionics*, Paper
6 at 7–8. The analysis corresponds to *Becton, Dickinson* factor (d), "the
extent of the overlap between the arguments made during examination and
the manner in which petitioner relies on the prior art." *Becton, Dickinson*,
IPR2017-01586, Paper 8 at 17–18.

We find little or no overlap between the arguments asserted in the
Petition and the arguments made during examination. Petitioner's Grounds 1
and 2, for example, assert that Garfinkle discloses receiving, storing, and
transferring both multimedia material *and* associated advertising material, as
well as providing samples to potential purchasers. *See supra* §§ II.D, II.E. In
the Examiner's rejection of claims 1, 4–6, and 11, however, two references
were needed to supply all of the claim elements disclosed in the single
Garfinkle reference. Ex. 1004, 447–450 ('725 prosecution history).
Specifically, the Examiner found that Hunter discloses dissemination of
multimedia material, but *not* advertising material. *Id.* at 448. Bernard, on the

IPR2024-00736
Patent 7,574,725 B2

other hand, discloses providing samples of multimedia content to potential purchasers. *Id.* at 449. The Examiner had to combine Hunter with Bernard, as well as with the applicant's own originally filed Specification, to find prior disclosure of all of the elements that Petitioner alleges are present in Garfinkle.

As another example, in Grounds 3 and 4 Petitioner relies on Budow for its teaching of displaying advertisements at a different time or place than the display of multimedia material. *See supra* §§ II.F, II.G. Patent Owner has not shown Budow to be cumulative of any previously considered reference. During prosecution, the Examiner did not cite to any specific language in the prior art disclosing the limitation allegedly taught by Budow, but instead stated that the limitation was "encompasse[d]" in the combination of Hunter and Bernard, "as the very purpose of advertisement materials is to promote a product such that a consumer would be stimulated to purchase it, which by necessity results in displaying the advertisement at a different time or place, otherwise it could hardly be called an advertisement." Ex. 1004, 445 ('725 prosecution history).

Petitioner has relied on different art to make different arguments than those that were at issue during examination of the '725 patent. After considering *Becton, Dickinson* factors (a), (b), and (d), we find that the same or substantially the same art or arguments were *not* previously presented to the Office. *See Becton, Dickinson*, IPR2017-01586, Paper 8 at 17–18. Because the first part of the framework set forth in *Advanced Bionics* is not satisfied here, we need not reach the issue of "whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims." *Advanced Bionics*, Paper 6 at 8–9. When considering

IPR2024-00736
Patent 7,574,725 B2

the Petition as a whole, we find that it does not sufficiently implicate the concerns addressed by Section 325(d) to warrant discretionary denial.

## IV. CONCLUSION

For the foregoing reasons, we determine that Petitioner has demonstrated that there is a reasonable likelihood that it would prevail in proving the unpatentability of at least one of the challenged claims of the '725 patent. We thus institute an *inter partes* review of all of the challenged claims of the '725 patent on all grounds asserted in the Petition. *See* 37 C.F.R. § 42.108(a).

Any findings or conclusions in this Decision are made only for the purposes of institution and are not dispositive of any issue. We have not made a final determination with respect to the patentability of any challenged claim. Our final determination will be based on the record as fully developed during trial, including any evidence or argument timely presented by the parties under our Rules.

## V. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of claims 1, 4–7, 9, and 11 of U.S. Patent No. 7,574,725 is instituted with respect to all grounds of unpatentability set forth in the Petition; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial commences on the entry date of this Decision.

IPR2024-00736
Patent 7,574,725 B2

FOR PETITIONER:

Xin-Yi Zhou
William M. Fink
Benjamin Haber
Patric Reinbold
O'MELVENY & MYERS LLP
vzhou@omm.com
tfink@omm.com
bhaber@omm.com
preinbold@omm.com


FOR PATENT OWNER:

Anthony H. Handal
Monami Roy
HANDAL & MOROFSKY LLC
handal@handalglobal.com
mroy@handalglobal.com